# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF VERMONT

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Hermitage Inn Real Estate | ) | Case No.:  19-10214 |
| Holding Company, LLC. | ) | Involuntary Chapter 7 |
| Debtor | ) | |

---

## EMERGENCY MOTION UNDER 11 USC § 303(f) TO KEEP STATE COURT APPOINTED RECEIVER IN PLACE DURING THE GAP PERIOD TO PRESERVE AND MAINTAIN ESTATE ASSETS OR IN THE ALTERNATIVE TO APPOINT AN INTERIM TRUSTEE UNDER 11 USC § 303(g) TO PRESERVE AND MAINTAIN ESTATE ASSETS DURING THE GAP PERIOD.

Berkshire Bank moves under Vt. LBR 9075-1 and 11 USC § 303(f) to keep the state court appointed receiver in place during the gap period to to preserve the *status quo* maintaining estate assets. Copies of the two state court orders appointing the Receiver are attached as Exhibits A and B. ("Receiver") The Receiver has been in place since June 6, 2018.

In the alternative, Berkshire Bank moves under Vt. LBR 9075-1 and 11 USC § 303(g) for the appointment of an interim trustee during the gap period to preserve the *status quo* maintaining estate assets

and for that interim trustee to be the Receiver appointed in the

Berkshire Bank state court foreclosure.

The Receiver, Alan Tantleff of FTI Consulting, Inc. is well

qualified in his role.  Attached as Exhibit C is the Affidavit of Alan

Tantleff that was filed in the state court foreclosure action in support

of the motion for him to be appointed receiver that sets forth his

qualifications.

### Memorandum

The grounds for the motion are that Petitioners filed this

involuntary Chapter 7 Petition on May 22, 2019.  During the Gap period,

the Debtor is authorized by 11 USC § 303(f) to continue to operate its

business,  and use,  acquire or dispose of property as if an involuntary

petition had not been filed, unless the Court orders otherwise.  The Court

is requested to enter an emergency order keeping the Receiver in place

during the gap period.

Without that order, the Receiver is arguably stayed by 11 USC §

362(a)(4) from exercising control over property of the Estate that is

created by the filing of the involuntary petition. Mr. Barnes and the

Debtor are arguably free to resume misappropriating Estate assets

during the Gap period as they did prior to the appointment of the

Receiver in the Berkshire Bank state court foreclosure action. The Receiver could be powerless to stop them. The underlying state court foreclosure is replete with creditor claims that allege mismanagement and misappropriation by Mr. Barnes and the Debtor. Keeping the Receiver in place during the Gap period would prevent that reoccurrence and maintain the *status quo*.

The Estate consists of real and personal property that make up the Hermitage Resort located in Wilmington and Dover, VT.  Most of the the Resort property is subject to Berkshire Bank's Mortgage and Security Agreement from Hermitage Inn Real Estate Holding Company, LLC and and Security Agreement from Hermitage Club, LLC.  Virtually all the remaining Debtor real property taxed by the town of Wilmington and town of Dover, VT is mortgaged to Berkshire Bank. There are a few vacant land parcels that are not.

The Resort's real and personal property is plastered with Notice Against Trespass Orders to keep James Barnes from entering the subject property and removing Receivership Assets without the Receiver's permission. (Exhibit D)

Regardless of whether the Gap period is 21 days or two years while the involuntary is contested, the Receiver should remain in place

to preserve the *status quo* and protect the Estate from mismanagement by Mr. Barnes and the Debtor.  A contest is possible. For example, at least one of the petitioners is arguably a 100% secured judgment lien creditor. Another petitioner arguably contracted with Hermitage Club, LLC not the Debtor. Mr. Barnes has a long history of being confusing about the entity he was dealing through.

The Resort property mortgaged to Berkshire Bank consists of hundreds of acres, with a massive base lodge club house, a mid mountain lodge and summit lodge uphill at the ski mountain, and lodging establishments known as the Hermitage Inn and the Snow Goose Inn in Dover, VT and Horizon Inn in Wilmington, VT, the ski lifts, and along with personal property. The Hermitage ski area has been closed since March 2018 when the Vermont Department of Taxes shut it down from operations for failing to pay taxes. The Receiver has been maintaining it in a moth ball state under the state court order.

The Receiver has overseen the properties since his appointment in June of last year and is the best person to maintain the status quo during the gap period.  He is familiar with the properties and has the processes in place to do that. The interim trustee powers and duties

would essentially parallel those under the state court receivership order.

## Emergency Relief

Berkshire Bank satisfies the requirements for emergency relief under Vt. LBR 9075-1 for the following reasons:

1.    The filing of the involuntary petition on May 22, 2019 was beyond the Bank's control.

2.    There is no petition or list of creditors with contact information that would allow the Bank to give notice. Nor is there sufficient time to give that notice given the opportunity for Mr. Barnes to do mischief during the suddenly created Gap period. Please do not put the fox back in charge of the hen house for any part of the Gap period however long that may be.

3.    The Receiver in place is the best person to preserve the status quo maintaining estate assets during the gap period.

## Conclusion

The Court should grant the Motion on an emergency basis and keep the state court appointed receiver in place during the Gap period to preserve the status quo and maintain estate assets.

In filing this Motion, Berkshire Bank reserves all rights, including, without limitation, the right to respond to validity, jurisdiction and venue of this proceeding.

Dated at Rutland, Vermont this 24th day of May 2019.

Berkshire Bank

By:   /s/Elizabeth A. Glynn
        James B. Anderson, Esq.
        Elizabeth A. Glynn, Esq.
        Ryan Smith & Carbine, Ltd.
        PO Box 310
        Rutland, Vermont  05702-0310
        Its Attorney
        (802) 786-1055
        jba@rsclaw.com

8582-071/917489

STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
| Windham Unit | Docket No. 63-2-18 Wmcv |



Berkshire Bank,
    Plaintiff

    v.

Hermitage Inn Real Estate Hold-,
Hermitage Club, LLC,
James R. Barnes,
309 Rte 100 Dover LLC,
BSA Architects, Inc. d/b/a,
D/B/A Amerifab Mr. Steel Acquisition
Corp.,
Thomas Whit Armstrong, Jr.,
Elizabeth Armstrong,
PJB Home Center, Inc. d/b/a,
Green Mountain Power Corp.,
Michael N. Fayette,
M Fayette Carpentry LLC,
Stephen Kunkle,
Daniel V. Lane,
John H. Lane,
Lane Plumbing & Heating,
Southworth Electrical, Inc.,
Swan Electric, Inc.,
SVT Masonry, Inc.,
Vermont Department of Taxes,
Seth Goodman,
Jennifer Goodman,
Craig Doersch Painting LLC,
Mountain Glass & Lock Corporatio,
Vareschi Plumbing and Heating,
Manchester Carpet Care Inc.,
Windham Architectural Metals,
Sysco Albany, LLC,
Greenfield Glass Co. Inc.,
Austin Designs, Inc.,
Iron Horse Roofing of Londonderr,
Reinhart Food Service, LLC,
Gordon Bristol,
RTM Capital Partners, INC,
LPV, 15-Hermitage, LLC,
Matthew Curtis,

**DECISION ON MOTION**

FILED

1

MAY 1 8 2018

Vermont Superior Court
Windham Unit

Pioneer Timber Frames, LLC,
Trinity Engineering & Technical,
Metropolitan Golf Association,
Fred Hamblet, LLC,
Town of Wilmington,
Wilmington Water District,
Joyce Land Surveying Corp.,
Tyler Dickson,
Rose Stewart Dickson,
Chamonix Townhouse Homeowner's A,
Brown's Country Services, LLC,
Pamela Keefe,
        Defendants

## RULING ON PLAINTIFF BERKSHIRE BANK'S MOTION
## FOR
## APPOINTMENT OF A RECEIVER

Plaintiff Berkshire Bank seeks appointment of a Receiver to protect and preserve the subject property in this foreclosure and replevin action. Defendants Hermitage Inn Real Estate Holding Company, LLC (HIREHC), Hermitage Club LLC, and James Barnes (collectively, the Hermitage Defendants) oppose the motion. The Hermitage Defendants lack sufficient resources to adequately protect and preserve the subject property and the motion for appointment of a Receiver is, thus, **GRANTED**.

### PROCEDURAL HISTORY

On February 23, 2018, Plaintiff filed this foreclosure and replevin action against the Hermitage Defendants and 45 other named defendants. On April 16, 2018, Plaintiff filed a motion pursuant to V.R.C.P. 66 seeking appointment of a Receiver during the pendency of this action. On April 18, 2018, the court ordered that any response or opposition to the motion for appointment of a Receiver be filed on or before April 27, 2018.

Only the Hermitage Defendants filed a response. They opposed the appointment of a Receiver asserting that such an appointment was "unnecessary at this time." The Hermitage Defendants stated that they "have secured a signed term sheet providing for a financial closing no later than May 15, 2018, by which Plaintiff will be paid." Objection at ¶¶ 1-2. A heavily redacted Term Sheet regarding "the principal terms of a [a] proposed loan to be made to [HIREHC]" was attached. Term Sheet at 1.[1] Defendants[2] additionally submitted an affidavit of Defendant Barnes and Interim-President Robert Rubin stating that "the buildings and assets of the Hermitage Club are receiving full security tours with daily check

---

[1] Plaintiff's Exhibit 1.

[2] Unless specified otherwise, "Defendants," as used in this opinion, will refer to the Hermitage Defendants.

2

FILED

MAY 1 8 2018

Vermont Superior Court
Windham Unit

points that are conducted by local employees ...." Affidavit at ¶ 3. The Hermitage Defendants requested that the court deny Plaintiff's motion "or, in the alternative, postpone such appointment until after June 1, 2018."[3]

The court held a hearing on Plaintiff's motion on May 10, 2018. Plaintiff presented testimony from Peter Landauer, a First Vice President with Berkshire Bank. Mr. Landauer has been assigned to the Hermitage matter since August 2016 as a result of an increase in the risk profile of the loans. The Hermitage Defendants called Howard "Trip" Morse as a witness. Mr. Morse is an insurance adjuster and a member of the Hermitage Club.

FINDINGS OF FACT[4]

Defendants HIREHC, Hermitage Club, and 309 Rte. 100 Dover LLC[5] are defendant mortgagors in this action for foreclosure and replevin. Defendants are in default on obligations exceeding $17,000,000. A Construction Loan Agreement, Construction Mortgage and Mortgage Deed provide that Lender/Mortgagee may seek appointment of a Receiver. Plaintiff's Exhibit 2.

In addition to being in default on the mortgages and the loan agreement, the foreclosure complaint lists 35 liens for bills and claims against HIREHC. These total more than $12,000,000. Plaintiff's Exhibit 4.

The Hermitage property subject to Plaintiff's mortgages and security agreements is in the Towns of Wilmington[6] and Dover. The property consists of an alpine ski area with lifts and trails, together with a private club resort community that includes a base lodge, a mid-mountain lodge, a summit lodge, a golf club and golf course, the Hermitage Inn, the Horizon Inn, the Snow Goose Inn, and the Doveberry Inn, homes in various stages of construction, together with other buildings, roads, utilities, water rights, related infrastructure and operations for the ski area, and acreage approved for development. There is also personal property situated on the real property, including ski lifts, and ski operation equipment. The total geographic area subject to Plaintiff's mortgages exceeds 838 acres and has an assessed value of more than $33,000,000.

---

[3] At the hearing on the motion, the Hermitage Defendants requested that any appointment be delayed until later in the summer.

[4] It is well settled that the form and quantum of evidence required for appointment of a receiver is a matter of judicial discretion. 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973); *Resolution Tr. Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 51 (N.D. Ohio 1992); *Commodity Futures Trading Comm'n v. Comvest Trading Corp.*, 481 F. Supp. 438, 441 (D. Mass. 1979). Indeed, an evidentiary hearing is not required if the record discloses facts sufficient to support the appointment. *U.S. v. Mansion House Center North Redevelopment Co.*, 419 F. Supp. 85 (E.D.Mo. 1976). The findings are based on the testimony presented at the hearing as well as the affidavits submitted in support of and in opposition to the motion.

[5] On May 8, 2018, the court entered a default judgment against Defendant 309 Rte 100 Dover, LLC.

[6] A portion of the ski area is on land leased from the Town of Wilmington.

3

FILED

MAY 2 8 2019

Vermont Superior Court
Windham Unit

The Hermitage is not a going concern. Defendants HIREHC and Hermitage Club ran out of cash during the First Quarter of 2018. There are unpaid bills, taxes and lease payments. The annual lease payment due on February 1, 2018, to the Town of Wilmington for the leased portion of the ski area was not made. Plaintiff made the lease payment to the Town of Wilmington in March 2018 for the period February 1, 2018, to January 31, 2019, in the amount of $83,851 to cure the default and preserve the ski area lease. Plaintiff paid the Town of Dover about $74,000 of delinquent real estate taxes in March 2018 to avoid a tax sale. The Town of Wilmington has filed some 34 tax liens totaling about $814,000 against HIREHC. Plaintiff has recently paid the Town of Wilmington $660,321.58 to forestall a tax sale. In April Plaintiff paid Suburban Propane $48,259.19 for an emergency fuel delivery. Plaintiff has recently paid Green Mountain Power $82,554.01 to keep power on in response to a disconnect notice. The Vermont Department of Taxes shut down The Hermitage Club— for a third time—on March 30, 2018. The company was ordered not to conduct any business.

Only a skeleton crew of a few employees remain onsite. Some of the subject properties have been subject to minimal daily inspections during April 2018.[7]

Plaintiff has concerns about insurance on the property and has, thus, force-placed insurance. The Hermitage Defendants also have an insurance policy in place. However, the Hermitage policy expires on June 4, 2018, unless further payments are made.

The term sheet submitted by the Hermitage Defendants addressed a proposed loan from NorthOne Capital partners, LLC, to HIREHC. No competent evidence was presented at the hearing to support a finding that the proposed loan to HIREHC has been made.[8] Indeed, by its terms the proposal has expired. Neither Defendant James Barnes nor any other representative of the potential lender or borrower testified at the hearing. There is no evidence to support a finding that the Hermitage Defendants have adequate resources to preserve and protect the subject properties during the pendency of this foreclosure action. To the contrary, the evidence supports and the court finds that the Hermitage Defendants do not have adequate resources to preserve and protect its land holdings.

CONCLUSIONS OF LAW

I.      Standard for appointment of a Receiver

Plaintiff seeks appointment of a receiver in this foreclosure action. Such an appointment— an exercise of the court's equitable powers—is "an extraordinary remedy traditionally

---

[7] The Hermitage Defendants submitted Property Check List sheets showing that building checks had occurred. No testimony was presented regarding the nature of the property check. The properties and dates of the checks identified are 24 West Main Street and Whippletree for April 9-19 and 21-27, Sawmill for April 9-12, and White House, Nordic Hills, Hermitage Inn, Snow Goose, Horizon and Doveberry for April 9-27. Defendants' Exhibit A.

[8] The court notes that the Hermitage Defendants' request that any order of appointment be delayed until late summer rather than June 1, 2018, is additional support for the conclusion that the proposed loan has not been made and, indeed, is not expected to be made in the near future

FILED

MAY 1 8 2018

Vermont Superior Court
Windham Unit

reserved to the courts." *O'Rourke v. Lunde,* 2014 VT 88, ¶ 26. See also *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316 (8th Cir. 1993) ("A receiver is an extraordinary equitable remedy that is only justified in extreme situations"); *In re Armienti,* 309 A.D.2d 659, 661 (N.Y.App.Div.2003) ("The drastic remedy of the appointment of a receiver is to be invoked only where necessary for the protection of the parties.... There must be danger of irreparable loss"). Indeed, the remedy should be invoked with the "utmost caution" and "is justified only where there is a clear necessity to protect a party's interest in property, [and] legal and less drastic equitable remedies are inadequate." *Netsphere, Inc. v. Baron,* 703 F.3d 296, 305 (5th Cir. 2012) (quoting 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (3d ed.2012)).

The primary objective of a receivership is "the care and custody of the property which is the subject of the ... proceeding" pending determination of the issues in the litigation. *Clifford v. W. Hartford Creamery Co.,* 103 Vt. 229, 153 A. 205, 209 (1931). By placing the property under the control of the court, the property will be "preserve[d] ... to answer the final decree which may be made in the action." *Id.* See also *Gordon v. Washington,* 295 U.S. 30, 37 (1935).

The factors to be considered by the court in considering whether to appoint a receiver include factors similar to those to be considered by a court in issuing a preliminary injunction.

> Factors weighed by courts in determining whether a receiver should be appointed have included fraudulent conduct on the part of the defendant; imminent danger that property would be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Commodity Futures Trading Comm'n v. Comvest Trading Corp.,* 481 F. Supp. 438, 441 (D. Mass. 1979). See also *Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 241–42 (5th Cir. 1997); *Aviation Supply Corp.,* 999 F.2d at 316–17; 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983.

The receiver's authority and possessory rights in the property are derived from the appointing court. *In re Dawley,* 99 Vt. 306, 131 A. 847, 851 (1926); *Underhill v. Rutland R. Co.,* 90 Vt. 462, 98 A. 1017, 1020 (1916). See also *Booth v. Clark,* 58 U.S. 322, 331 (1854) ("The receiver is but the creature of the court"). "The receiver is a neutral court officer appointed by the court." *Sterling v. Stewart,* 158 F.3d 1199, 1201 n. 2 (11th Cir. 1998).

II.     Plaintiff has met its burden for appointment of a Receiver

Plaintiff asserts that collateral of this size, complexity and value requires a Receiver to manage and preserve during the foreclosure and replevin process. The collateral for the defaulted loans is of substantial size, complexity and value. The property needs to be protected from theft and vandalism.

FILED

MAY 1 2 2019

Vermont Superior Court
Windham Unit

Plaintiff has established a likelihood of success on the merits in the foreclosure action. The Hermitage Defendants are in default of their obligations to Plaintiff. Furthermore, the evidence established that the Hermitage Defendants have been unable to pay utility and tax obligations during 2018 and no evidence suggested that they presently have an ability to meet such obligations.[9] Furthermore, the Hermitage Defendant's sole witness at the hearing acknowledged that the present insurance policy expires on June 4, 2018.

The Hermitage Defendants' objection to the motion relied heavily on the possibility of a substantial loan that would enable them to "satisfy the financial obligations owed to Plaintiff." Objection at ¶ 2. No evidence supports a finding that the loan has been made. Simply, there is no evidence to support a finding that the Hermitage Defendants have financial resources adequate to support and maintain the subject property during the pendency of this foreclosure action.

The subject property is not a discrete single building—it involves various buildings and other assets spread over 838 acres with an assessed value of more than $ 33,000,000. The court cannot find that partial periodic inspections by a "skeleton crew" with no assurance that taxes will be paid, that power will be maintained at the buildings and that insurance coverage (beyond force-placed insurance) will be maintained on the property is adequate in light of the unique nature of this property. Notwithstanding the absence of damage or theft to date, there is a substantial danger of such loss occurring in the future.

The Hermitage Defendants have, effectively, mothballed the subject property while seeking to obtain additional financing. The harm to these defendants from appointment of a Receiver is insubstantial in comparison to the potential harm to Plaintiff. The Hermitage Defendants are not making use of the property in any substantive way. The potential harm to Plaintiff is, in comparison, significant. The subject property is the sole collateral available.

Appointment of a Receiver will ensure the care and custody of the property subject to the receivership proceeding to preserve it to answer the final decree which may be made in this action. *Clifford v. W. Hartford Creamery Co.*, 153 A. at 209.

III.    The Proposed Receiver

Plaintiff has proposed Alan Tantleff of FTI Consulting, Inc., as the Receiver. Mr. Tantleff is clearly qualified to act as a Receiver. Plaintiff's Exhibit 3. Mr. Tantleff has demonstrated the ability to manage resorts like the Hermitage in receivership. Mr. Tantleff and FTI Consulting have managed over 53 major resort and hospitality properties in receivership or debt restructuring - these include the Talisker Club Receivership, the Yellowstone Club Restructuring, and the restructuring of the Sea Island Club debt.

The court will appoint Mr. Tantleff as the Receiver.

---

[9] Courts have considered the inability to pay real property taxes owed with respect to a building placing the building at risk of being sold at a tax foreclosure proceeding as a factor in receivership proceedings. See, e.g., *Lefebvre v. Shea*, 212 A.D.2d 884, 885 (N.Y.App.Div. 1995).

FILED

MAY 1 8 2018

Vermont Superior Court
Windham Unit

IV.   Terms of the Appointment

"The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court." *Booth v. Clark*, 58 U.S. at 331. Plaintiff has submitted a proposed order appointing the Receiver. The court directs that Plaintiff submit an amended proposal consistent with this order by May 24, 2018. The Hermitage Defendants may file any objection to any particular provision in the amended proposed order by May 29, 2018.

    a.   Description of the Subject Property

The order must clearly describe the property that is subject to the receivership.

    b.   Description of the Receiver's Powers and Duties

The proposed order includes some duplication in the description of duties in various paragraphs. The order must clearly define the duties of the Receiver. The order proposes to maintain the property in a "mothballed" condition. See Proposed Order at ¶ 18.E.3. At the hearing, there was some suggestion that the property may need to be prepared for the 2018/19 ski season if this matter is not resolved before then. If Plaintiff intends that the subject property be open for that season, the order should address such a possibility. There was also discussion at the hearing of the need to groom golf course grasses to maintain the value of the course for next golf season. If any grass care by the receiver is contemplated, Plaintiff should include language sufficient to authorize such activity in the description of the receiver's duties.

    c.   Priority of Payments to Receiver

Plaintiff proposes to pay the Receiver and then recover these costs, subject to approval by the court, from the proceeds of the judicial sale. See Proposed Order at ¶ 17.

"[T]he [court's] power to award priority to receivership expenses is limited to such expenditures as are necessarily incurred in the care and preservation of the property..." This is because "the power of the court extends only to the custody and preservation of the property." *Westinghouse Elec. Mfg. Co. v. Barre & Montpelier Traction & Power Co. et. al.*, 98 Vt. 130 (1924). Indeed, in the *Westinghouse* case, the Court, reviewing the expenses incurred by the receiver, gave priority to one set of expenses (the payment of taxes), but declined to do so for another (the payment of a road paving contract).

Here the court does not have sufficient evidence that Mr. Tantleff's proposed services will indeed be only those which are necessary for the care and preservation of the Hermitage. In fact, there is little to no evidence in the record of what work will be performed by Mr. Tantleff. There is evidence, however, that Mr. Tantleff will be paid $32,500/month for the first two months and $16,500 for each month thereafter to serve as the Receiver. And, his firm is to receive a 6% "administrative fee" over the life of the contract. Without knowing what work Mr. Tantleff will perform, the Court cannot know whether those expenses will be "necessarily incurred in the care and preservation of the property."

FILED

MAY 2 4 2019

Vermont Superior Court
Windham Unit

7

This is a concern for the court. A receiver acts as the court's representative. Yet Mr. Tantleff did not attend the hearing in which his appointment was argued, and in which a significant contract for his services was put before the court for its approval. And, though it is possible that the judicial sale will pay off all of the lien holders and everyone will win in this case, the court must prepare for another scenario where the Receiver gets paid but others do not.

Under the proposed appointment order, Plaintiff and Mr. Tantleff have incentives that do not align with the standard under Vermont law for granting priority to a Receiver's expenses. To the contrary, under Plaintiff's proposal, in which *all* expenses incurred by Mr. Tantleff would be automatically given priority status, Plaintiff has the incentive to incur unnecessary, though perhaps useful services from Mr. Tantleff to enhance the value of a property on which it has the largest and top-priority lien.[10]

Therefore, though the court believes that the evidence supports the appointment of a Receiver, and that Mr. Tantleff is qualified to serve as the Receiver in this case, Vermont law demands that the court amend the proposed order to ensure that before any significant expenses are incurred, all parties involved understand that only those expenses which are necessary to the preservation of the Hermitage will be given priority. Any unnecessary expenses may not be reimbursed at all after a judicial sale or may not be given priority among the liens.

### d.   Legal Representation for Receiver

Plaintiff proposes that the Receiver be allowed to employ Ryan Smith & Carbine, Ltd., "to represent the Receiver in this action." Proposed Order at ¶ 16. The firm represents Plaintiff. Again, while it may be that the interests of Plaintiff, the Receiver and other parties align, the court must consider the possibility that conflicting interest may occur.

"The doctrine, relative to receivers, of strict accountability, and of opposition to divided loyalties, is prophylactic; it aims not merely to punish actual evil in cases where it occurs but to avoid the tendency to evil in other cases." *Phelan v. Middlestates Oil Corp.,* 154 F.2d 978, 1001 (2d Cir. 1946). To avoid any appearance of a conflict, the Receiver may not retain Plaintiff's counsel for representation in this action.

### e.   Dissolution of the Receivership

Plaintiff and the Hermitage Defendants addressed the possibility of dissolution of the receivership if the proposed loan occurred. The court directs that the order provide a mechanism for the court to dissolve the receivership.

## ORDER

1)   Plaintiff's motion for appointment of a Receiver is granted.

---

[10] Further clarity regarding the powers and duties of the receiver would limit the possibility for such potentially unnecessary expenditures.

FILED

MAY 2 3 2019

Vermont Superior Court
Windham Unit

2) Alan Tantleff of FTI Consulting, Inc., is appointed as Receiver.

3) Plaintiff shall file a proposed order of appointment by May 24, 2018.

4) The Hermitage Defendants may file any objection to the proposed order by May 29, 2018.

Electronically signed on May 17, 2018 at 02:08 PM pursuant to V.R.E.F. 7(d).


John R. Treadwell
Superior Court Judge


As to the facts:


Patricia W. Duff
Assistant Judge

Lamont Barnett
Assistant Judge


5/18/18 – Filed and forwarded to counsel by x-mail.

Notifications:
Elizabeth A. Glynn (ERN 1594), Attorney for Plaintiff Berkshire Bank
Robert M. Fisher (ERN 4228), Attorney for Defendant Hermitage Inn Real Estate
Robert M. Fisher (ERN 4228), Attorney for Defendant Hermitage Club, LLC
Robert M. Fisher (ERN 4228), Attorney for Defendant James R. Barnes
Defendant, 309 Rte 100 Dover LLC
Andre D. Bouffard (ERN 1017), Attorney for Defendant BSA Architects, Inc. d/b/a, Bull Stockwell
Defendant, Mr. Steel Acquisition Corp
Robert F. O'Neill (ERN 2991), Attorney for Defendant Thomas Whit Armstrong, Jr.
Robert F. O'Neill (ERN 2991), Attorney for Defendant Elizabeth Armstrong
Mark L. Zwicker (ERN 3625), Attorney for Defendant PJB Home Center, Inc. d/b/a Perkins Home
Defendant, Green Mountain Power Corp.
Sharon L. Annis (ERN 4574), Attorney for Defendant Michael N. Fayette, Jr.
Sharon L. Annis (ERN 4574), Attorney for Defendant M Fayette Carpentry LLC

FILED

MAY 1 8 2018

Vermont Superior Court
Windham Unit

9

Sharon L. Annis (ERN 4574), Attorney for Defendant Stephen Kunkle d/b/a Stephen Kunckle

Walter G. French (ERN 5104), Attorney for Defendant Daniel V. Lane

Walter G. French (ERN 5104), Attorney for Defendant John H. Lane III

Walter G. French (ERN 5104), Attorney for Defendant Lane Plumbing & Heating

Defendant, Southworth Electrical, Inc.

Defendant, Swan Electric, Inc.

Christopher S. Dugan (ERN 3509), Attorney for Defendant SVT Masonry, Inc.

Elizabeth M. Hannon (ERN 4808), Attorney for Defendant Vermont Department of Taxes

David M. Pocius (ERN 1492), Attorney for Defendant Seth Goodman

David M. Pocius (ERN 1492), Attorney for Defendant Jennifer Goodman

Christopher S. Dugan (ERN 3509), Attorney for Defendant Craig Doersch Painting LLC

Christopher W. Blanchard (ERN 3624), Attorney for Defendant Mountain Glass & Lock Corp

Christopher S. Dugan (ERN 3509), Attorney for Defendant Vareschi Plumbing and Heating

~~Defendant, Manchester Carpet Care, Inc.~~

~~Defendant, Windham Architectural Metals~~

~~Defendant, Sysco Albany, LLC~~

~~Defendant, Greenfield Glass Co. Inc.~~

Christopher S. Dugan (ERN 3509), Attorney for Defendant Austin Designs, Inc.

Amanda T. Rundle (ERN 1111), Attorney for Defendant Iron Horse Roofing of Londonderry

Adam R. Mordecai (ERN 6192), Attorney for Defendant Reinhart Food Service, LLC

Christopher S. Dugan (ERN 3509), Attorney for Defendant Gordon Bristol d/b/a Gordon Bristol

Erin Miller Heins (ERN 1600), Attorney for Defendant RTM Capital Partners, INC

Erin Miller Heins (ERN 1600), Attorney for Defendant LPV, 15-Hermitage, LLC

Erin Miller Heins (ERN 1600), Attorney for Defendant Matthew Curtis

~~Defendant, Pioneer Timber Frames, LLC~~

Defendant, Trinity Engineering & Technical Services LLC

~~Defendant, Metropolitan Golf Association~~

~~Defendant, Fred Hamblet, LLC~~

David M. Pocius (ERN 1492), Attorney for Defendant Pamela Keefe as trustee for Carol H. Butler

Edward G. Adrian (ERN 4428), Attorney for Defendant Town of Wilmington

Alexander D. Shriver (ERN 1115), Attorney for Defendant Wilmington Water District

Defendant, Joyce Land Surveying Corp.

David M. Pocius (ERN 1492), Attorney for Defendant Tyler Dickson

David M. Pocius (ERN 1492), Attorney for Defendant Rose Stewart Dickson

Richard C. Carroll (ERN 2890), Attorney for Chamonix Townhouse Homeowner's Association,

~~Defendant, Brown's Country Services, LLC~~

David M. Pocius (ERN 1492), Attorney for Intervenor TFT Holdings, LLC

John J. Kennelly (ERN2039 ), Attorney for Interested Person Cold Brook Fire District No. 1

FILED

MAY 2 8 2018

Vermont Superior Court
Windham Unit

STATE OF VERMONT

SUPERIOR COURT                              CIVIL DIVISION
Windham Unit                              Docket No. 63-2-18 Wmcv

Berkshire Bank,
    Plaintiff

**EXHIBIT**
**B**

        v.

Hermitage Inn Real Estate Hold-,
Hermitage Club, LLC,
James R. Barnes,
309 Rte 100 Dover LLC,
BSA Architects, Inc. d/b/a,
D/B/A Amerifab Mr. Steel Acquisition
Corp.,
Thomas Whit Armstrong, Jr.,
Elizabeth Armstrong,
PJB Home Center, Inc. d/b/a,
Green Mountain Power Corp.,
Michael N. Fayette,
M Fayette Carpentry LLC,
Stephen Kunkle,
Daniel V. Lane,                              ENTRY ORDER
John H. Lane,
Lane Plumbing & Heating,
Southworth Electrical, Inc.,
Swan Electric, Inc.,
SVT Masonry, Inc.,
Vermont Department of Taxes,
Seth Goodman,
Jennifer Goodman,
Craig Doersch Painting LLC,
Mountain Glass & Lock Corporatio,
Vareschi Plumbing and Heating,
Manchester Carpet Care Inc.,
Windham Architectural Metals,
Sysco Albany, LLC,
Greenfield Glass Co. Inc.,
Austin Designs, Inc.,
Iron Horse Roofing of Londonderr,
Reinhart Food Service, LLC,

1

| Gordon Bristol, | |
|---|---|
| RTM Capital Partners, INC, | |
| LPV, 15-Hermitage, LLC, | |
| Matthew Curtis, | |
| Pioneer Timber Frames, LLC, | |
| Trinity Engineering & Technical, | |
| Metropolitan Golf Association, | |
| Fred Hamblet, LLC, | |
| Town of Wilmington, | |
| Wilmington Water District, | |
| Joyce Land Surveying Corp., | |
| Tyler Dickson, | |
| Rose Stewart Dickson, | |
| Chamonix Townhouse Homeowner's A, | |
| Brown's Country Services, LLC, | |
| Pamela Keefe, | |
|       Defendants | |

## OPINION AND ORDER APPOINTING FTI CONSULTING, INC., BY AND THROUGH ITS AGENT, ALAN TANTLEFF, AS RECEIVER

### INTRODUCTION

Plaintiff Berkshire Bank seeks appointment of a Receiver to protect and preserve a substantial expanse of real property in the Towns of Wilmington and Dover, Vermont,[1] currently owned by the Hermitage Defendants,[2] but which is the subject of this foreclosure proceeding. The Court, having reviewed the briefs and conducted a hearing on May 10, 2018, previously granted Plaintiff's motion for appointment of FTI Consulting, Inc., through its agent, Alan Tantleff to serve as Receiver. See Entry Order, issued May 18, 2018.[3] In that Entry, the Court requested that Plaintiff submit a proposed order of appointment with

---

[1] According to Plaintiff Berkshire Bank, these holdings are "not a discrete single building- [they] involve various buildings and other assets spread over 838 acres with an assessed value of more than $ 33,000,000." Pltf's Proposed Order at 9.

[2] As it did in the May 18, 2018 Entry Order, here the Court, unless otherwise specified, refers to James Barnes, Hermitage Inn Real Estate Holding Company, LLC., and Hermitage Club LLC as the "Hermitage Defendants."

[3] The legal reasoning in that entry order electing to appoint Mr. Tantleff is hereby incorporated into this Order in which the Court enumerates his responsibilities, the procedures which the Court will employ to oversee the execution of those responsibilities, and provisions for the potential reimbursement of Mr. Tantleff's expenses through a future judicial sale.

2

several specifications: (a) Description of the Subject Property; (b) Non-Duplicative Description of the Receiver's Powers and Duties; (c) Procedure and Standard for Determining Priority of Payments to Receiver; (d) Legal Representation of Receiver; (e) Procedure and Legal Standard for Dissolution of the Receivership. Berkshire Bank filed its proposed order on May 25, 2018. The Hermitage Defendants filed several objections to aspects of the proposed order on May 29, 2018. Berkshire Bank filed a reply to the Hermitage Defendants' objections on June 1, 2018.[4] Defendant BSA Architects, Inc., filed a response to Berkshire Bank's Proposed Order on June 4, 2018, and two days later Berkshire Bank filed a reply to that response.

---

[4] For now, the Hermitage Defendant's objections have been granted in part and denied in part, consistent with the order issued below. With respect to the specific objections, this court's rulings are as follows:

  (1) Exclude vacant lands and those subject to claims for equitable title from the receivership. **DENIED.** All vacant lands shall be secured only as necessary to preserve and maintain them for auction and the same goes for any lands subject to claims of equitable title.
  (2) Refrain from order that the Receiver may take custody of Hermitage Defendants' business records and emails. **GRANTED.** To whatever extent any records are housed on the Subject Properties when the Receiver takes possession, the Receiver shall secure and preserve them, as outlined below. But there is no need, based on the information before the Court, to have the Receiver commandeer the Hermitage Defendants' email accounts and change the Hermitage Defendants' passwords.
  (3) Refrain from ordering the Receiver to "coordinate with Plaintiff." **GRANTED.** This is vague language. The Court will not regulate the Receiver's communications, as necessary, to accomplish the tasks set forth in this order or any future order(s).
  (4) Refrain from ordering that the Receiver may change passwords and take over all computer records and data without (a) meeting with the Hermitage Defendants' technology director, and (b) ensuring that the Hermitage Defendants may continue in their attempt to restructure. **GRANTED.** The Receiver shall make reasonable efforts to accommodate the Hermitage Defendants' need for office equipment, including computers, to continue in their restructuring efforts.
  (5) Avoid duplication of duty description. **GRANTED.** This was part of the Court's previous entry order.
  (6) Only approve Receiver's fees that are reasonably necessary for the preservation of the Subject Lands. **GRANTED IN PART.** The Court will not give priority to any such fees that are not reasonably necessary to preserve and maintain the Subject Lands.
  (7) Refrain from any authority granted to the Receiver that would impede the Hermitage Defendants' attempt to obtain bridge financing, including Receiver control over Defendants' bank accounts. **GRANTED.** Nothing in this order is intended to impede the Hermitage Defendants' efforts. The Court has not granted the Receiver access to or control over the Defendants' bank accounts, as there is no evidence suggesting that is reasonably necessary to preserve and maintain the Subject Properties.

3

## ORDER APPOINTING RECEIVER

FTI Consulting, Inc., and Alan Tantleff, serving as its agent, is hereby appointed to serve as the Receiver in this foreclosure action. As Receiver, FTI must preserve and maintain the value of the Subject Properties in anticipation of a possible judicial sale. The "Subject Properties" are defined as follows:

a) LANDS SUBJECT TO RECEIVER'S CONTROL

The legal description(s) for the lands for which Mr. Tantleff is to serve as receiver is contained in Exhibit B of the Complaint in this action, understanding that this description has been amended by a series of documents, as explained in this footnote.[5]

---

[5] The original legal description is in the Construction Mortgage and Security Agreement from Hermitage Inn Real Estate Holding Company, LLC ("HIREHC") to Berkshire Bank dated September 30, 2013 and recorded in Book 306, Page 504 of the Wilmington Land Records and Book 320, Page 398 of the Dover Land Records. But it has been amended by the following records:

(a) Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated April 30, 2014 and recorded with the Dover Land Records in Book 324, Page 656-662 and recorded with the Wilmington Land Records in Book 312, Page 250-256;

(b) Second Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated November 12, 2014, recorded with the Wilmington Land Records in Book 314, Page 431;

(c) Third Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated December 3, 2014, recorded with the Dover Land Records in Book 327, Page 380 and recorded with the Wilmington Land Records in Book 315, Page 230-266;

(d) Fourth Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated December 4, 2015, recorded with the Dover Land Records in Book 333, Page 561and recorded with the Wilmington Land Records in Book 322, Page 575-579;

(e) Fifth Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated June 28, 2016, recorded with the Dover Land Records in Book 337, Page 204-211 and recorded with the Wilmington Land Records in Book 326, Page 438-445;

(f) Sixth Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated February 1, 2017, recorded with the Dover Land Records in Book 341, Page 227 and recorded with the Wilmington Land Records in Book 331, Page 468;

(g) Seventh Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated February 10, 2017, recorded with the Dover Land Records in Book 341, Page 311-320 and recorded with the Wilmington Land Records in Book 332, Page 1; and

(h) Eighth Amendment of Mortgage from HIREHC in favor of Berkshire Bank dated July 18, 2017, recorded with the Dover Land Records in Book 343, Page 512-518 and recorded with the Wilmington Land Records in Book 335, Page 17-23.

See Exhibit B of the Complaint filed in this action for further detail.

4

In plain English, this order covers the following lands, structures, and rights:[6]

1.  Hermitage ski area leased lands, Wilmington, VT (252 acres +/-);

2.  Hermitage ski area lands owned by Hermitage Inn Real Estate Holding Company, LLC, located partly in Wilmington and partly in Dover, VT (410.58 acres +/-);

3.  Base lodge, including, without limitation, dining facilities, lounge and fitness and recreational facilities; Mid-mountain lodge, including, without limitation, dining facilities, Summit lodge including, without limitation, dining facilities, Wilmington, VT;

4.  Roads, infrastructure, water rights within the lands described here;

5.  Hermitage Golf Club with clubhouse and amenities, Wilmington, VT, with Ironwood and Spruce Village parcels (Parcel #1: 90.76 acres +/-; Parcel #2: 20.49 acres +/-; Parcel #3: 32.16 acres +/-);

6.  Hermitage Inn parcel: 25 Handle Road, Dover, VT (90 acres +/- with Inn);

7.  Snow Goose Inn: 259 Route 100, Dover, VT (1.54 acres +/- with Inn);

8.  Horizon Inn: 861 VT RTE 9 E, Wilmington, VT (11.80 acres +/- with Inn);

9.  Doveberry Inn: Dover, VT as described in the mortgage from 309 Rte 100 Dover LLC to Berkshire Bank dated February 10, 2017 and recorded in Book 341, Page 322 of the Dover Land Records, with an address of 284 Route 100 (See Exhibit L of the Complaint);

10. Parcels described as (i) Old Powderhorn Village – 4.84 acres +/-, (ii) Summit - estimated 10.01 acres +/-; (iii) High Country – 15.82 acres +/-; (iv) Fawn Ridge – 16.54 acres +/-).

---

[6] The Court notes that this plain English description does not supersede in any way the legal description of the Subject Properties set forth in Exhibit B as amended. Defendant BSA Architects, Inc., objects to the inclusion of this Summary Description. That objection is **DENIED**. Based on the information before the Court at this time, Exhibit B to the Complaint, as amended by the above instruments, defines the security for Plaintiff's loan. The Summary Description in this Order, however, is provided to the Receiver to clarify his duties at this early stage of the case. If further discovery reveals that the Summary Description is inaccurate, as officers of the Court, counsel shall notify the Court of the inaccuracy. V.R.C.P. 11(b)(3).

11. Excluding: Premises mortgaged to RCN Capital, LLC by Hermitage Inn Real Estate Holding Company, LLC, believed to be:
   - 8 Hayloft Mountain Lane a/k/a 36 Stag's Leap;
   - 11 Hayloft Mountain Lane a/k/a 38 Stag's Leap;
   - 18 Haystack Mountain Lane;

12. Chamonix townhouse units mortgaged to Berkshire Bank that purchaser defendants want to complete their purchases of to acquire legal title, being (i) 3 Garmisch Court, Unit #401; (ii) 3 Garmisch Court, Unit #402; (iii) 6 Garmisch Court, Unit #502; (iv) 6 Garmisch Court, Unit #504; (v) 5 Garmisch Court, Unit #603; (while units are mortgaged to Berkshire Bank, the purchasers are claiming equitable title to these units and that they are maintaining those units)

13. Personal property of Hermitage Inn Real Estate Holding Company, LLC and Hermitage Club, LLC f/k/a HCOC LLC, including, all personal property as described in the Construction Mortgage and Security Agreement of Hermitage Inn Real Estate Holding Company, LLC and Security Agreement of Hermitage Club, LLC (Reference is made to Exhibits B and G to the Complaint in further aid of the description of the personal property).

14. Includes without limitation, all fixtures, machinery, equipment located in or upon or affixed to the Premises or Improvements, including, without limitation, any and all (i) heating, lighting, refrigerating, ventilating, air conditioning, air cooling, fire extinguishing, plumbing, communications and power equipment and apparatus, (ii) gas, water and electrical equipment, (iii) elevators, escalators, switchboards, engines, motors, tanks, pumps, partitions, conduits, ducts and compressors, (iv) electrical and/or gas appliances, incinerators, carpeting, furniture and furnishings, draperies, storm windows and doors, screens and awnings, vending machines, televisions, video and audio equipment, restaurant and bar equipment and fixtures, pool and recreational equipment, and ski rental equipment, and (v) accounts, (vi) ski lifts and ski operation equipment.

This property is referred to below as the "Subject Properties." The Court will now describe the powers and duties of the Receiver to preserve and maintain the value of the Subject Properties during this foreclosure action.

b) DESCRIPTION OF THE RECEIVER'S POWERS AND DUTIES

**Pay Necessary Bills**: the Receiver shall pay all necessary bills, including debts, and incur needed costs that, if not incurred, could reduce or lead to a reduction in the value of the Subject Properties at auction. "Necessary Bills" shall include taxes, assessments, lease

6

payments on the ski areas, insurance costs, and utilities. As explained below, to obtain priority over other lienholders, only necessary charges are to be incurred by the Receiver.[7] "Necessary Bills" also includes reasonable staff salaries and contracts for labor to (i) clean the Subject Properties as needed; (ii) provide a skeletal security staff; (iii) conduct an initial inspection and inventory of the buildings and grounds and reasonably periodic inspections thereafter; (iv) maintain the golf course grasses to preserve its value for next season; (v) maintain, in accordance with accounting standards and practices, the books and records of the Subject Properties, during the Receivership; (vi) maintain mechanical equipment on the subject properties, as needed.

**Secure the Subject Properties**: the Receiver shall provide reasonably necessary security and take all reasonably necessary steps with staff sufficient to prevent theft, vandalism, damage by people, pests, or weather to the Subject Properties.

"Reasonably Necessary Security" includes conducting an initial inspection and inventory of the properties; periodically re-examining the properties to ensure they are indeed being properly preserved and maintained, and; reporting any missing or damaged property to the proper authorities and this Court, as needed. These inspections may include necessary fire and life safety inspections for structures.

"Reasonably Necessary Security" also includes taking possession of and, as needed locking, all buildings and lands from access by the public. Vacant land, such as that in the Summit, High, Country, and Fawn Ridge, shall be secured only to whatever extent security is necessary to maintain and preserve its value. The same is true of the Chamonix Townhouse Units: the Receiver shall possess, maintain, and secure only those units that are subject to Berkshire Bank's mortgage liens, and shall only secure those that require security.

The Receiver shall inspect, secure, store, and itemize, as necessary, personal property located inside of buildings on the Subject Properties. This includes liquor, non-perishable food items, and personal property, such as golf clubs and skis, of the Hermitage Club members. It also includes any cash found on the Subject Properties.

The Receiver shall secure and preserve all paper records and devices such as computers or hard-drives on the Subject Properties that might store records. But the Hermitage Defendants may access these records to whatever extent they might need to do so during these proceedings, to conduct their normal business activities.

---

[7] For example, a reasonable level of utility service must be obtained by the Receiver to avoid property damage, such as frozen pipes in the winter, or, potentially, mold in the wet months. And some ongoing utility service may also be necessary to provide tolerable working conditions for necessary staff, such as running water. Limited, necessary air conditioning charges may have to be incurred; but there is no need, without an additional showing, for entire buildings to be kept at 68 degrees Fahrenheit during summer months.

Although any employee data records, guest data records, and marketing records that the Receiver finds on the Subject Properties shall be secured and preserved, the Receiver shall not review any such records to any extent more than is necessary to identify them as personal proprietary data. This is to maintain the privacy of the subjects of those records.

Without further order of this Court, the Receiver shall not concern itself with any intellectual property belonging to the Hermitage Defendants. To whatever extent any patent, copyright, trademark, or other such property belonging to the Hermitage Defendants is found in the Subject Properties, the Receiver shall notify the Hermitage Defendants.

The Receiver shall inform emergency responders in the areas of the Subject Properties of the status of the Subject Properties during this receivership. The Receiver also shall notify the appropriate first responders in case of emergency.

**Maintain the Subject Properties and Business Viability:** the Receiver shall only provide reasonably necessary maintenance of the Subject Properties, and shall only preserve businesses on the Subject Properties in a "moth ball" state, until further order of this Court.

"Reasonably Necessary Maintenance" includes landscaping of any golf course(s) only as necessary to maintain their value as a working golf course for next season, summer of 2019. The Receiver shall also perform any reasonably necessary maintenance on the ski areas with the goal of allowing a future potential auction purchaser to re-open for parts of the 2018-2019 ski season.

"Reasonably Necessary Maintenance" also includes cleaning the buildings and grounds of the Subject Properties, disposing of any perishable food and all other refuse, and maintaining a reasonable level of cleanliness on the Subject Properties during the receivership. Because the buildings are to be "moth-balled," by definition, the buildings and grounds need not be maintained in pristine condition.

**Report to the Court:** the Receiver shall prepare a budget and report to the Court explaining the services it has rendered in a narrative form. Although hourly billing statements such as those used in the legal industry are not required, the Receiver shall only obtain priority status for charges that are reasonably necessary to preserve and maintain the value of the Subject Properties. If the Court cannot make such a determination, based on the information provided to it, for a particular charge, or set of charges, then it will not grant that charge priority.

**Apply to the Court for Additional Authority:** the Receiver shall notify the Court if it requires additional authority to secure and maintain the Subject Properties. In any such notification it shall explain its rationale for requiring additional authority.

8

c)  COURT PROCEDURE FOR DETERMINING PRIORITY OF RECEIVER COSTS

Initially, for two months, the Court will review all expenses and costs incurred by the
Receiver to determine whether they are reasonably necessary for the preservation of the
Subject Lands, on a monthly basis. Thereafter review shall occur on a quarterly basis. The
first three deadlines for review are therefore as follows:

- Friday, July 6, 2018
- Monday, August 6, 2018
- Monday, November 5, 2018

The Receiver shall submit a budget to the Court, a list of expenses incurred and tasks
completed, and a narrative explaining the reasoning for those tasks and expenses. Although
hourly billing statements such as those used in the legal industry are not required, the
Receiver shall only obtain priority status for charges that are reasonably necessary to
preserve and maintain the value of the Subject Properties. If the Court cannot make such a
determination, based on the information provided by the Receiver, then it will not grant
that charge priority over the other liens.

d)  LEGAL REPRESENTATION OF RECEIVER

If, in the Receiver's estimation, it requires legal counsel, it may, with the Court's approval,
enter a fee agreement for the provision of legal services. The Receiver may not engage
counsel for any party to this proceeding, as explained in this Court's previous entry order.

e)  DISSOLUTION OF THE RECEIVERSHIP

i)      This receivership shall be dissolved upon the payment in full of all secured
        debt the Hermitage Defendants owe Plaintiff.

ii)     It also shall be dissolved upon stipulation to do so by the Hermitage
        Defendants and the Plaintiff.

iii)    It shall also be dissolved upon the termination of these proceedings.

iv)     And it shall be dissolved upon a showing by the Hermitage Defendants that
        they have become capable of maintaining and preserving the value of the
        Subject Properties for the balance of these proceedings.

Electronically signed on June 06, 2018 at 08:37 PM pursuant to V.R.E.F. 7(d).

_John R. Treadwell_

John R. Treadwell, Superior Court Judge

9

**EXHIBIT**

C

## STATE OF VERMONT

SUPERIOR COURT
WINDHAM UNIT

CIVIL DIVISION
Docket No. 63-2-18 Wmcv

BERKSHIRE BANK,

     Plaintiff

  vs.

HERMITAGE INN REAL
ESTATE HOLDING COMPANY, LLC; *et al.*

     Defendants

### **AFFIDAVIT**

I, Alan Tantleff, being duly sworn, depose and say as follow:

1.   I am a senior managing director at FTI Consulting.

2.   FTI Consulting professionals have served as court-appointed trustees, examiners and receivers (and their advisors) in judicial foreclosure proceedings, Chapters 7 and 11 bankruptcy and forfeiture matters.

3.   I am recognized by the New York State Judiciary as a Part 39 certified receiver.

4.   FTI Consulting handled the Talisker Club Receivership, the Yellowstone Club Restructuring, and the restructuring of the Sea Island Club debt, to name a few.  I personally have been appointed by the courts as a Keeper (Receiver) of the Staybridge Suites Baton Rouge, Lousiana, and a federal receiver on a portfolio

of 8 Embassy Suites located throughout the United States under Nesbitt Portland, LLC, et al. I have assisted in the foreclosure proceedings of other large hotels and resorts, including the Four Seasons Las Colinas (Dallas) hotel and golf resort, the W San Diego Hotel, the St. Regis Monarch Beach (California) Golf Resort and numerous others.  Similarly, I have worked representing lenders and other constituents in the Mountain Creek (New Jersey) Ski Resort, the Westin Tucson, Westin Hilton Head and other prominent hotels and resorts.

5.   I have the experience and ability to manage a high end private club resort like the Hermitage in receivership.

6.   It will not take 100 hours to get familiar with the assets of Hermitage Inn Real Estate Holding Company, LLC, Hermitage Club, LLC and 309 Rte 100 Dover LLC, mortgaged to Berkshire Bank.  I am familiar with many of the issues here and am experienced in acting quickly and undertaking such tasks necessary to preserve and protect the collateral.

7.   I plan to be onsite at the Hermitage the day after I am appointed to secure the assets.

8.   I plan look to the local employees already onsite who are familiar with the operations.

9.   I plan to meet with those employees upon my appointment and will make determinations after that as to what is in the best interest of the receivership, cognizant of cost.

10.   I have read the *Emergency Motion for Appointment of Receiver* with a view towards the administrative powers granted the Receiver. ("*Motion to Appoint Receiver*")

11.   In supplement to the powers requested in the *Motion to Appoint Receiver*, I request the Court include in its Order appointing a receiver the power and authority specifically for the following:

A.   Secure Real and Personal property pledged to Berkshire Bank:

1.   Ascertain cash levels
2.   Change signatures on bank accounts, passwords, etc.
3.   Secure liquor inventory
4.   Secure computer data
5.   Clean refrigerators, food, etc.
6.   Inspect Property
7.   Inventory Property
8.   Inventory advance reservations and deposits; cancel as needed
9.   Change locks as necessary
10.  Inventory Personal Property left by members (ie. golf clubs, skis)

B.   Prepare budget

C.   Report monthly to the Court as required by the Court

D.   Oversee labor

1.   Groundskeepers
2.   Engineering and Maintenance
3.   Security
4.   Accounting
5.   Interview employees

      6.     Retain and pay employees through payroll
            necessary to preserve collateral

E.    Ongoing

      1.     Pay utilities, taxes, water, ground rent, labor
      2.     Periodically inspect the property
      3.     Maintain property in a "mothballed" condition

*[Remainder of Page Intentionally left blank]*

By: _____
    Alan Tantleff

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES,
SS

Sworn to before me this ___8th___ day of May, 2018.

_____
Notary Public Signature

My Commission
Expires            ___9/30/18___
                     Date

See attached

JOAN WOJNAR
Commission # 2084180
Notary Public - California
Los Angeles County
My Comm. Expires Sep 30, 2018

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of Los Angeles _____ }

On  5/8/18  before me,  Joan Wojnar, Notary Public
(Here insert name and title of the officer)

personally appeared  Alan Tantleff _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Joan Wojnar_ _____
Notary Public Signature          (Notary Public Seal)

JOAN WOJNAR
Commission # 2084180
Notary Public - California
Los Angeles County
My Comm. Expires Sep 30, 2018

---

## ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual (s)
- ☐ Corporate Officer

    _____
    (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
    - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
    - ❖ Indicate title or type of attached document, number of pages and date.
    - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-9865

TO:    James R. Barnes, individually and as duly
authorized agent of Hermitage Inn Real Estate
Holding Company LLC, and Hermitage Club LLC
c/o Robert Fisher, Esq.
Fisher & Fisher
114 Main Street
PO Box 621
Brattleboro, VT 05302-0621
rmfisher@sover.net



## NOTICE AGAINST TRESPASS

Pursuant to 13 V.S.A. §3705(c), you are hereby notified by Alan Tantleff Receiver for Hermitage Inn Real Estate Holding Company LLC and Hermitage Club LLC under the Receivership Order of the Vermont Superior Court, Civil Division, Windham Unit entered June 6, 2018, in Docket No. 63-2-18 Wmcv and attached hereto "(Receivership Order)" that you are not allowed to be present upon the Subject Properties as defined by the Receivership Order for the purpose of entering any locked or unlocked buildings and removing personal property, or entering any open part of the Subject Properties and removing personal property, without the prior written permission of the Receiver. Your further unauthorized presence on these Subject Properties as defined by the Receivership Order will be considered a trespass and may subject you to civil and criminal prosecution.

A person shall be imprisoned for not more than one year or fined not more than $500.00 or both, if, without legal authority or consent of the person in lawful possession, he enters or remains on any land, or enters a building other than a residence, whose access is normally locked, whether or not the access is actually locked, as to which such notice against trespass is given.

Dated at _New York_ , _New York_ this 18th day of February 2019.

Alan Tantleff
FTI Consulting, Inc.
3 Times Square Fl 9
New York, NY 10036
Alan.Tantleff@fticonsulting.com
(212) 499-3613

8582/1-895314