**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| In re:<br><br>Hermitage Inn Real Estate Holding Company, LLC<br><br>Putative Debtor | Chapter 7<br><br>Involuntary Case No. 19-10214 (CAB) |

### MOTION OF *AD HOC* COMMITTEE MEMBERS OF HERMITAGE INN REAL ESTATE HOLDING COMPANY, LLC TO INTERVENE IN BANKRUPTCY CASE PURSUANT TO BANKRUPTCY RULES 1018 AND 2018

The *Ad Hoc* Committee of Members (the "*Ad Hoc* Committee" or the "Committee") of Hermitage Inn Real Estate Holding Company, LLC ("HIREHCO" or the "Debtor"), by their attorneys, Downs Rachlin Martin, PLLC and Robinson & Cole LLP, hereby seek entry of an order, pursuant to Rules 1018 and 2018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), permitting the *Ad Hoc* Committee to intervene in this involuntary chapter 7 case, and in any other related cases that come before this Court.[1] In support of this Motion, the *Ad Hoc* Committee respectfully represent as follows:

### PRELIMINARY STATEMENT

The *Ad Hoc* Committee is comprised of more than 187 individuals who paid membership fees and dues (collectively in the millions of dollars) in order to access the Debtor's alpine private ski area with lifts and trails, together with a private club resort community that includes a large luxury base lodge, mid-mountain lodge, the Hermitage Golf Course and several

---

[1] Two related voluntary chapter 11 cases have been filed by HIREHCO and one of its affiliates in the District of Connecticut, and this Court is expected to determine as required by Bankruptcy Rule 1014(b) whether those cases should be transferred to this Court.

inns, among other property, including properties in various stages of construction (collectively the "Facilities").

Under the Debtor's business model, the members were the primary source of the Debtor's operating revenue. In addition to membership dues and user fees and mandatory, minimum food and beverage revenue generated by the membership, the Debtor actively and aggressively solicited and received millions of dollars from the members in the form of debt financing, including the "100 Club Membership" debt solicitation in 2013 and 2014. Moreover, the Debtor was one of, if not the largest, real estate developer in Wilmington and Dover, Vermont. Naturally, the members were the largest consumers of real property and real estate development projects that the Debtor sold. It follows, then, that the *Ad Hoc* Committee's membership includes owners and lessors of real property in and around the Facilities, as well as members who hold secured and unsecured claims flowing from failed real estate transactions. The *Ad Hoc* Committee is also comprised of two equity interest holders.

More critical is the fact that the members have been the historic lifeblood of the Facilities and, if the Facilities are ever to reopen in the future under the same or similar business model, the members will be crucial to its success. This point cannot be lost as consideration of the Committee's intervention is considered.

In forming the *Ad Hoc* Committee, the members have pooled their resources to create a singular voice to participate and be heard in matters arising in the Debtor's bankruptcy case. The *Ad Hoc* Committee is able to efficiently and effectively represent and give voice to the unique interests of the members, which will not otherwise be adequately represented by any other party. Additionally, the *Ad Hoc* Committee's intervention will not cause delays or be unduly burdensome. Quite the contrary, the *Ad Hoc* Committee is interested in the expeditious administration of this case, a fulsome sale process that maximizes value to the estate and triggers

the accelerated reopening of the Facilities. Permitting intervention status for the Committee will likely improve efficiency of the bankruptcy proceedings, as well, and bring additional value to the estate through its advocacy and wealth of knowledge regarding various aspects of the Debtor's business and the Facilities. Accordingly, the *Ad Hoc* Committee should be permitted to intervene under Bankruptcy Rule 2018 or, in the alternative, Bankruptcy Rule 1018.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought in this Motion are 11 U.S.C. 105(a) and Bankruptcy Rules 2018 and 1018.

## FACTUAL BACKGROUND

3. The Debtor owns and formerly operated the Facilities in the Towns of Wilmington and Dover, Vermont. *See* Declaration of Timothy Treanor ("Treanor Decl."), ¶ 4.

4. A common thread running through the ranks of the *Ad Hoc* Committee is that each member paid money in consideration of being granted rights to various levels of use of the Debtor's Facilities. Many of the members of the *Ad Hoc* Committee have enjoyed and utilized the Facilities for many years and their membership, user and similar fees constitute a large source of revenue for the Debtor's business. *Id.*, ¶ 5. These dues and fees will also be critical if a prospective purchaser of the Facilities adopts the Debtor's business model and maintains a private membership business model in the future, which the *Ad Hoc* Committee supports.

5. Additionally, the Debtor solicited and received millions of dollars from the members in the form of debt financing. *Id.*, ¶ 6. By way of example, and not limitation,

3

between 2012 and 2014, the Debtor borrowed money from the membership through the sale of "100 Club Memberships" *Id*. To become a "100 Club Member" the members each loaned $100,000 to the Debtor, which the Debtor agreed to repay on the fifth anniversary of the sale, absent the right of the Member, exclusively, to convert the loan into an equity interest. One of the Debtor's largest pool of unsecured creditors are those members who purchased 100 Club Memberships, but who did not convert those 100 Club Memberships to equity. *Id.* These members hold millions of dollars of claims against the Debtor arising from the "100 Club Memberships" *Id*.

6. The Debtor was also engaged in the development of real estate, including single family homes and townhomes that were located in and around the Facilities that the Debtor marketed, sold and/or leased the members. Members of the *Ad Hoc* Committee own or lease real estate in and around the Facilities, and some members hold secured and unsecured claims against the Debtor arising from real estate transactions that have not come to fruition. *Id.*, ¶ 7.

7. There are also two (2) members of the *Ad Hoc* Committee who have made equity investments in the Debtor and officially hold membership interests in the Debtor, a Connecticut limited liability company. *Id.*, ¶ 8.

8. Due to the loss of all confidence in the ability of Mr. Barnes to lead a restructuring of the Debtors, approximately 187 members have organized themselves into an Ad Hoc Committee to advocate for the collective interests of the members in any efforts to restructure the Hermitage Club, including in cases filed by the Petitioning Creditors or the Debtors under the Bankruptcy Code. *Id*., ¶17.

9. As will be discussed below, the *Ad Hoc* Committee easily meets the requisite cause to be permitted "intervenor" status in this case. The *Ad Hoc* Committee represents the collective interest of its members, with counsel engaged to represent that collective interest,

4

not the individual interests or claims of specific members, which they have agreed must be represented separately.

## LEGAL STANDARD

10. Intervention in a chapter 7 bankruptcy case is governed by Rule 2018(a) of the Bankruptcy Rules, which provides that "[i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Rule 2018(a) allows intervention into the case, even if no particular proceeding or contested matter is then currently pending. *In re Torrez*, 132 B.R. 924, 936 (Bankr. E.D. Cal. 1991). The general case law dealing with Bankruptcy Rule 2018(a) "authorizes a very broad and elastic interpretation as to those entities entitled to party in interest status or intervenor status—in the discretion of the court to suit the particular case before it." *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546, 554 (Bankr. D.N.H. 1988). Indeed, courts within the Second Circuit have concluded that Rule 2018 should be given "a liberal construction." *In re Ionosphere Club,* 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989).[2] As a general proposition, the Bankruptcy Code and Rules afford parties a broad ability to appear and be heard in bankruptcy cases. *See, generally, In re PM Cross, LLC*, No. BR 13-11075-BAH, 2013 WL 6048810, at *2 (Bankr. D.N.H. Nov. 15, 2013)(noting the broad ability to appear and be heard in a chapter 11 case).

---

[2] Because no order of relief has been entered in this Case at the time of the filing of the Motion, in an abundance of caution, the *Ad Hoc* Committee also moves to intervene under Bankruptcy Rules 1018 and 7024 and Rule 24 of the Federal Rules of Civil Procedure. Under Federal Rule 24(b), permissive intervention is also given a liberal construction. *See Ionosphere Clubs*, 101 B.R. at 853. Moreover, as with Rule 2018, courts applying Rule 24 consider the interest of the intervening party and whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." *See In re Charter Co.*, 50 B.R. 57, 63 (Bankr. W.D. Tex. 1985); *see also In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997) (courts consider the same factors under either Rule 1018 or 2018); *In re Adilace Holdings, Inc.*, 548 B.R. 458, 462 (Bankr. W.D. Tex. 2016)("The standards under Rule 2018 and FRCP 24 overlap.")

5

11. In evaluating a motion to intervene, bankruptcy courts consider two factors: (1) whether the intervenor's rights are already adequately represented; and (2) whether the requested intervention would result in undue delay or prejudice to the original parties. *In re City of Bridgeport,* 128 B.R. 686, 688 (Bankr. D. Conn. 1991). No one factor is dispositive, as courts have "the discretion to balance the needs of a potential intervenor against any delay or prejudice which would result from intervention." *Barrick Group,* 98 B.R. at 135. Given the liberal construction that must be given to Rule 2018, "cause" authorizing intervention may include, but not be limited to, an economic or similar interest in the case or one of its aspects, or precedential ramifications spawned from an aspect or issue arising in the case. *See, generally, Pub. Serv. Co. of New Hampshire*, 88 B.R. at 551.

## ARGUMENT

### I. The *Ad Hoc* Committee Members Have a Substantial Interest in the Debtor's Estate and the Outcome of the Proceedings.

12. The *Ad Hoc* Committee includes members who have paid dues and fees and have utilized the Facilities from their birth, who own and lease real property in Wilmington and Dover, Vermont, who have secured and unsecured claims against the Debtor, and who hold equitable interests in the Debtor. *See* Treanor Decl., ¶¶ 4-8. The members of the *Ad Hoc* Committee are diverse, yet hold a unique interest in seeing the expeditious administration of this case, including a fulsome and accelerated sale process that maximizes value to the estate and supports the reopening of the Facilities. Indeed, the Committee's substantial interest in the Facilities, its active and formal participation in the case, and its link to the Facilities' future will send an emphatic message to the chapter 7 trustee, as well as prospective investors and buyers, that the highest and best value for the facilities can be obtained with the support of the members. Moreover, allowing intervention by the Committee will improve efficiency of the

bankruptcy proceedings, and bring additional value to the estate through its advocacy and wealth of knowledge regarding various aspects of the Debtor's business and the Facilities.

13. Under similar circumstances, courts have granted motions to intervene. In *In re First Interregional,* the district court allowed intervention in a situation analogous to the present case. 218 B.R. 731. In that case, the Chapter 11 trustee sought to intervene in a proceeding under the Security Investors Protection Act, which was required to be conducted as a liquidation under Chapter 7. *See id.* at 746. The district court concluded that the trustee had an interest in the resolution of the liquidation proceeding, had valuable knowledge of the issues, and could provide a "wealth of information" to the parties that would greatly benefit the estate. *Id.* at 739.

14. Other bankruptcy courts have permitted intervention of entities like the *Ad Hoc* Committee who represent groups of parties whose interests are implicated by a bankruptcy filing. In *In re Sea Island Co.*, 2014 WL 3767431 (Bankr. S.D. Ga. Jul. 30, 2014), the bankruptcy court permitted a property owners association to intervene in a bankruptcy proceeding in order to ensure that the interests of the association's members were protected during the proceedings. *Id.* at *3-4. Also, in *Public Service Co. of New Hampshire,* the bankruptcy court granted intervenor status to two consumer advocate groups in a bankruptcy case filed by a public utility company. *Id.* at 548-49. The court concluded that the consumer advocate groups could properly represent the interests of the public ratepayers and could "provide some aid to this court by evaluating various reorganization proposals from their respective viewpoints and special expertise." *Id.* at 556-58.

15. Thus, intervention by the *Ad Hoc* Committee is appropriate as it represents the combined interests of various members, has the ability to protect these interests, and can provide specialized expertise and information to the Court and the parties.

**II.        The *Ad Hoc* Committee is Not Adequately Represented By Any Other Parties.**

16.    Intervention of the *Ad Hoc* Committee is also necessary because no other party can adequately represent the collective rights and interests of the members. Above all, these members have a unified desire to see the estate expeditiously administered and the Facilities reopened as quickly as possible, preferably utilizing the Debtor's historic business model. Accordingly, the members of the *Ad Hoc* Committee stand in a unique position and their interests cannot be represented by the chapter 7 trustee, or any other creditor. *See In re George Rodman*, 33 B.R. 348, 350 (Bankr. W.D. Okla. Sept. 30, 1983) (permitting intervention of creditor's committee under Rule 24 standard, in part because committee had unique interest that was otherwise not represented).

17.    Although the chapter 7 trustee will be incentivized to maximize the value of the Debtor's estate or advocate for an expeditious sale process, or both, the *Ad Hoc* Committee is not representative of a chapter 7 trustee's typical constituency; the *Ad Hoc* Committee is not singularly comprised of trade creditors, employees, general unsecured creditors, equity holders, state and local taxing authorities, or judgment creditors. Neither the chapter 7 trustee, nor the aforesaid parties in interest, may understand that a successful sale process must factor in the "sum of the parts" and appreciates that the "highest and best value" includes a sale formula that incorporates the active participation of the membership.

18.    The *Ad Hoc* Committee's participation is not only necessary to represent the interests of the members, but it is also important to the resolution of the bankruptcy proceedings. The members, as well as individuals who are similarly situated, represent the primary source of revenue for the Debtor's operations and likely represent the best opportunity

8

for the Debtor or a new acquiring entity to maximize the value of the estate. Indeed, the value of the Facilities will be greatly enhanced if potential bidders knew that membership support was inextricably linked to a sale of the assets as a whole.

19. Further, to the extent the Debtor may seek to convert this involuntary chapter 7 to a voluntary chapter 11, the success of any rehabilitation, which will also likely contemplate a sale process, is similarly dependent on the active participation of the members.

**III.** **No Prejudice or Undue Delay Would Result from Granting the *Ad Hoc* Committee Intervenor Status.**

20. There is no prejudice or undue delay that would result from allowing the *Ad Hoc* Committee to participate in the Debtor's bankruptcy case. In the first instance, this motion was filed early in the proceedings and does not impose any delay upon the timely adjudication of any pending matters.

21. Moreover, the *Ad Hoc* Committee is structured in a manner typical of the type of loosely affiliated groups that are commonplace in many cases filed under the Bankruptcy Code. *See In In re Washington Mut., Inc.*, 419 B.R. 271 (Bankr. D. Del. 2009) (ad hoc committees are loose affiliation of interested parties who join "at-will" and present positions that all members agree to). The *Ad Hoc* Committee's participation in this case is premised on expediting—and not delaying—the efficient administration of this case. To be sure, the *Ad Hoc* Committee's participation will likely <u>increase efficiency</u> due in part to the wealth of institutional knowledge that they can share with the Court, the chapter 7 trustee, and other parties in interest in these collective proceedings.

**IV.** **The *Ad Hoc* Committee Has "Party in Interest" Status to Participate in Proceedings Arising in the Case.**

22. Intervention of the *Ad Hoc* Committee should also be permitted because it constitutes a "party in interest", which has the statutory right to participate and be heard on

9

issues that have and are likely to arise in the proceedings. The term "parties in interest" is not defined by the Bankruptcy Code; however courts have previously held that an *ad hoc* committee representing creditors or equity holders may constitute "parties in interest." *See, generally, In re SunEdison, Inc.*, 556 B.R. 94, 105 (Bankr. S.D.N.Y. 2016) ("shareholders may still be heard individually or as one or more ad hoc committees because they are parties in interest in the case"); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 700 (Bankr. C.D. Cal. 2008) (upon conclusion that committee was a party in interest, court held "Ad Hoc Committee may continue to appear and be heard on any issue in the case").

23. By way of example, and not limitation, parties in interest have the statutory right to seek the transfer of venue of a bankruptcy from one district to another, irrespective of which chapter the case was initially filed. *See* Fed. R. Bankr. P. 1014(a)(providing that any "party in interest" may move to transfer venue) Insofar as the Debtor has filed a chapter 11 case in Connecticut on May 28, 2018, the interest of justice and the convenience of the parties support the transfer of that case and an affiliate's companion case from the District of Connecticut to the District of Vermont. As Bankruptcy Rule 1014(a) permits *any* party in interest to seek the transfer, it follows that the *Ad Hoc* Committee should be recognized as a party in interest with standing to participate in any venue transfer dispute.

24. For these reasons, as well, the *Ad Hoc* Committee should be permitted intervenor status in these collective proceedings because it is a party in interest.

V. **GOOD CAUSE EXISTS FOR THE COURT TO ALLOW THE *AD HOC* COMMITTEE TO PARTICIPATE IN THE BANKRUPTCY PROCEEDINGS.**

25. With 187 members (and growing), the *Ad Hoc* Committee represents the broadest existing spectrum of membership and can operate as a singular voice of these members in these collective bankruptcy proceedings. Additionally, the Committee's

economic and other interests are unique and cannot be meaningfully represented by any other parties, including the chapter 7 trustee. Further, participation by the *Ad Hoc* Committee will not be unduly burdensome and, in fact, will create efficiencies in the proceedings by allowing the members to express their positions and concerns regarding the dissipation of the Debtor's assets and/or the potential restructuring of the Debtor's business. These members have a wealth of knowledge about the Debtor, the Facilities, and themselves, which will benefit all parties and the Court in resolving the issues in this case. For these reasons, as well as the reasons advanced in Section I through IV, *supra,* sufficient cause exists to permit the *Ad Hoc* Committee to intervene in these collective chapter 7 proceedings.

## CONCLUSION

**WHEREFORE**, the *Ad Hoc* Committee respectfully moves the Court to: (i) enter an order granting the *Ad Hoc* Committee intervenor status and allowing it to participate generally in the bankruptcy proceedings and (ii) grant such other and further relief to the *Ad Hoc* Committee as the Court may deem proper.

Dated: May 29, 2019

Ad Hoc Committee of Members of Hermitage Inn Real Estate Holding Co., LLC

By:/s/ Andre D. Bouffard
    Andre D. Bouffard
    Downs Rachlin Martin PLLC
    199 Main Street, PO Box 190
    Burlington, Vermont 05402-0190
    Tel: 802-863-2375
    Fax: 802-862-7512
    E-mail: abouffard@drm.com

    -and-

    Patrick M. Birney (*Pro Hac Vice* Admission Pending)
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, Connecticut 06103

Tel: 860-2275-8275
Fax: 860-275-8299
E-mail: pbirney@rc.com

**CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing document was filed electronically on May 29, 2019, with the United States Bankruptcy Court for the District of Vermont, and has been served on the parties in interest via email by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

      */s/* Andre Bouffard
      Andre Bouffard

19303963.1
19308349.1