UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

---------------------------------------------------------x
 :
In re:                                  :    INVOLUNTARY CHAPTER 7
                                        :
HERMITAGE INN REAL ESTATE               :
HOLDING COMPANY, LLC                    :    CASE NO. 19-10214
                                        :
           Alleged Debtor               :
---------------------------------------------------------x

## MOTION FOR ORDER TRANSFERRING VENUE

Hermitage Inn Real Estate Holding Company LLC ("HIREHCO"), the alleged debtor and respondent in this involuntary proceeding under Chapter 7 of the United States Bankruptcy Code, by and through its undersigned counsel, pursuant to 28 U.S.C. §1412 and Fed. R. Bankr. P. 1014(b), hereby moves this Court for an order pursuant to 28 U.S.C. §1412 and Fed. R. Bankruptcy Pro. 1014(b) transferring the venue of this case to the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Motion"). In support of this Motion, HIREHCO respectfully represents the following:

1.      On May 28, 2019 (the "Petition Date"), HIREHCO and the Hermitage Club, LLC (the "Club") (jointly, the "Debtors"), filed voluntary petitions for relief (the "Connecticut Cases") under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Connecticut Bankruptcy Court").

2.      Six days prior to the Petition Date, on May 22, 2019, three petitioning creditors, Bobbi Resek ("Resek"), Dan Solaz ("Solaz") and Lakeland Bank ("Lakeland") (collectively, the "Petitioning Creditors") filed an involuntary petition against HIREHCO in the United States Bankruptcy Court for the District of Vermont (the "Vermont Bankruptcy Court"). No order for relief has entered in this case.

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. On May 29, 2019, the Vermont Bankruptcy Court and Connecticut Bankruptcy Court entered a Joint Preliminary Case Management Order in this case and the Connecticut Cases which, among other things, stays the Connecticut cases for a period of ten (10) days or as provided in a further Court order and indicates that the Vermont Bankruptcy Court will determine the appropriate venue of the HIREHCO bankruptcy proceeding.

5. HIREHCO, a Connecticut limited liability company, was formed in 2007 to purchase the Hermitage Inn in Dover, Vermont. In 2011, HIREHCO expanded its operations and purchased the nearby Haystack Mountain ski resort and an adjacent 18-hole Desmond Muirhead-designed championship golf course. The Club, also a Connecticut limited liability company, was organized at that time with the intent to develop it into a private, members-only facility. The project went through a rapid expansion period in the subsequent years, resulting in a private year-round resort with golf and ski facilities, a clubhouse, and state-of-the-art facilities (the "Resort").

6. HIREHCO contends that this involuntary petition was improperly filed by the Petitioning Creditors to jump ahead of the Debtors' anticipated filing of the Connecticut Cases. Bobbi Resek is not a creditor of HIREHCO. She has an alleged contract with the Club, a separate legal entity, and a Debtor in the Connecticut cases. In addition, Dan Solaz is a secured creditor by virtue of the writ and order recorded by him against real property owned by HIREHCO and located in Wilmington, Vermont, at Book 338, Pages 565 – 66 of the Wilmington Land Records.

7. The Debtors have filed petitions for reorganization in the Connecticut Bankruptcy Court. Each of the Debtors is organized under the laws of the State of Connecticut, maintains a

principal place of business in the State of Connecticut, and maintains many of their books and records within the State of Connecticut.

8. The Debtors intend to expeditiously proceed with the Connecticut Bankruptcy Cases. They have retained the undersigned firm, Neubert, Pepe & Monteith, P.C. ("NPM"), as counsel to represent them as bankruptcy counsel in the Connecticut Bankruptcy Court. NPM is a Connecticut law firm, based in New Haven, Connecticut. NPM has been engaged by the Debtors for several weeks and has become immersed in the Debtors' bankruptcy issues and the background leading up to the filing of the Connecticut Bankruptcy Cases. The Debtors' limited resources will be further stretched if new Vermont counsel has to be retained and must engage in the arduous task of getting up to speed on the Debtors' background and the process going forward.

9. As part of their efforts to expeditiously proceed with a chapter 11 reorganization, the Debtors have, subject to bankruptcy court approval, entered into a commitment to obtain post-petition financing in the amount of $1,750,000 (the "DIP Financing") from Restructured Opportunity Investments, Inc. ("DIP Lender"). ROI is a Connecticut based lender and has retained Connecticut counsel to represent its interests. The Debtors could not succeed in their Chapter 11 cases absent the working capital loan from the DIP Lender. The DIP Loan includes an extremely tight operational budget. On May 29, 2019, the Debtors filed a motion for approval of the DIP Financing in each of the Connecticut Bankruptcy Cases (the "DIP Motion"). A copy of the DIP Motion is attached hereto and made a part hereof as Exhibit A.

10. As set forth more fully in the DIP Motion, the terms of the DIP Financing require the appointment of a Jonathan Joslow as Chief Restructuring Officer (the "CRO") of the Debtors within thirty days of the Petition Date. The CRO is an experienced turnaround management

3

professional with substantial experience advising troubled companies. A copy of the CRO's curriculum vitae is attached hereto and made a part hereof as <u>Exhibit B</u>.

11. Because the success of the Debtors' reorganization efforts is directly related to the speed and efficiency of the bankruptcy process, Mr. Joslow has spent time and effort preparing for his anticipated role as CRO in order to "hit the ground running" upon his appointment.

12. The Debtors' goal is and has been to engage and focus their efforts and limited resources to achieve a speedy reorganization for the benefit of all their creditors. Engaging in battles on multiple fronts will drain limited resources and is likely to impede a successful reorganization to the detriment of the Debtors, their creditors and the estates. The Connecticut cases include both HIREHCO and the Club, each integral to the reorganization efforts of the Resort as a whole. The Vermont Bankruptcy Court has jurisdiction of HIREHCO alone, separating it from its subsidiary and operating entity, the Club.

13. Some of the HIREHCO creditors are also creditors of the Club and will be forced to take actions to protect their interests in both venues, making the process more burdensome and inconvenient to the creditors. Additionally, many of the HIREHCO creditors live or are based in Connecticut and the New York metropolitan area. The Vermont Bankruptcy Court is a long distance for them to travel in order to fully participate in HIREHCO's bankruptcy proceeding.

### Relief Requested

14. Pursuant to 28 U.S.C. § 1412, "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

15. Fed. R. Bank. P. 1014(b) provides that in the event petitions commencing case under the Code are filed in different districts, "the court in the district in which the first-filed

4

petition is pending may determine, in the interest of justice or for the convenience of the parties, the district or districts in which any of the cases should proceed." The Vermont Bankruptcy Court is the court of first-filing and, therefore, the appropriate forum for the determination of this Motion to transfer venue.

16.   "Venue motions are entrusted to the discretion of the court and are to be decided upon the particular facts of each case, in light of the broad purposes of convenience and fairness." *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 149 Bankr. 365, 368 (Bkrtcy. S.D.N.Y 1993); see also *In re Vienna Park Properties,* 125 Bankr. 84, 86 (S.D.N.Y. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). The burden is on the movant to show by a preponderance of the evidence that the venue transfer is warranted. See *In re Manville Forest Products Corp.* 896 F.2d 1384, 1390 (2d. Cir. 1990).

### Interest of Justice

17.   The interest of justice standard under 28 U.S.C. § 1412 "contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *Manville Forest Products.*, 896 F.2d at 1391.

18.   "A debtor's choice of forum is entitled to great weight if venue is proper." *In re Enron Corp.*, 274 Bankr. 327, 343 (Bkrtcy. S.D.N.Y. 2002); *see also In re Windtech,* 73 Bankr. 448 (Bkrtcy. D. Conn. 1987); *In re Caesars Entertainment Operating Co.*, Case. No. 15-10047, ECF No. 227 (J. Gross) (Bkrtcy. D. Del. 2015) (attached hereto as Exhibit C). The Debtors have elected to file their Chapter 11 cases in Connecticut. They had retained NPM prior to the Petition Date and counsel spent a considerable amount of time at significant cost preparing the Debtors'

5

cases for the filing of the Connecticut Cases. If the HIREHCO case is to proceed in Vermont, it would substantially increase the amount of time, and commensurately the amount of fees, incurred by counsel with the increased burden of travel time and the increased cost of retaining local counsel.

19. HIREHCO's choice of venue should be given great weight by this Court. The interest of justice supports transferring this case to HIREHCO's choice of venue, the Connecticut Bankruptcy Court.

### Convenience of the Parties

20. Courts have generally applied a six-factor test to determine whether the convenience of the parties mitigates in favor of a venue transfer. The factors, known as the "*Corco* Factors," are: "(1) proximity of creditors of every kind to the court; (2) proximity of the debtor; (3) proximity of witnesses who are necessary to the administration of the estate; (4) the location of the debtor's assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration in the event of liquidation." *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979); *Enron*, 274 Bankr. at 342; *In re DHP holdings II Corp.*, 435 Bankr. 264, 275 (Bkrtcy. D. Del. 2010).

21. "[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *Commonwealth Oil Refining, 598* F.2d at 1247. In *Windtech*, the court noted: "On the basis of economy and efficiency, Connecticut is clearly a district more appropriate .... The debtor's office and all of its records are in Connecticut. The debtor's accountants, with knowledge of its finances and tax returns, and the attorneys who have handled most of its transactions are located in Connecticut. The one person with the most information about all of the debtor's operations, an essential witness in any

6

proceeding, is ... a Connecticut resident. It would be extremely expensive to have the estate fund [his] transportation and lodging if this case were transferred to California." 73 Bankr. at 451.

22. The *Corco* Factors weigh heavily in favor of granting this Motion and transferring venue to the Connecticut Bankruptcy Court. The Connecticut Bankruptcy Court is (i) the Debtors' preferred venue; (ii) in closer proximity to the majority of Debtors' creditors; (iii) in closer proximity to most of the Debtors' books and records; (iv) in closer proximity to the parties necessary to the administration of the estate, including ROI, their DIP lender; (v) in closer proximity to the Resort; and (vi) a more cost-effective location.

23. (a) Proximity of the creditors. The creditors of the HIREHCO estate are a geographically diverse group, but a large percentage of the creditors, including members of the Resort, reside or are based in Connecticut and the metropolitan New York area. HIREHCO's primary secured lender, Berkshire Bank, is a Massachusetts bank represented by bankruptcy counsel with offices in Boston and Hartford, Connecticut. HIREHCO's DIP Lender is based in Connecticut and has retained Connecticut counsel to represent it in these proceedings.

Each Debtor filed its list of twenty largest unsecured creditors in the Connecticut Bankruptcy Cases, copies of which are attached hereto and made a part hereof as Exhibit D. Of the twenty largest unsecured creditors in the HIREHCO case, only **two** reside or are located in Vermont (only **one** of the twenty largest unsecured creditors in the Club case resides or is located in Vermont). Of the remaining largest unsecured creditors in the HIREHCO case, eight are located or reside in Connecticut, with an additional six from New York and Massachusetts.

(b) Proximity to offices and books and records. The corporate headquarters and the majority of the books and records for HIREHCO are located in Connecticut. HIREHCO's

7

principal, James Barnes, resides in Connecticut and has conducted the business of HIREHCO from Connecticut for many years.

(c) <u>Closer proximity to necessary parties</u>. As noted above, Mr. Barnes resides in Connecticut and would be a necessary witness at many proceedings. The Debtors' proposed CRO lives in Connecticut and would be a necessary witness at many proceedings. In addition, the DIP Lender, and its principal, are located in Connecticut. The Debtors' bankruptcy counsel and counsel to the DIP Lender are all based in Connecticut.

(d) <u>Closer proximity to the assets</u>. The Resort is located in southern Vermont, in the towns of Wilmington and Dover. The Connecticut Bankruptcy Court is located less than one-hundred miles from the Resort and is closer to the Resort property than the Vermont Bankruptcy Court's location in Burlington, Vermont.

(e) <u>More cost-effective location</u>. The Connecticut Bankruptcy Court would be the most cost-effective location for the HIREHCO bankruptcy proceedings. The HIREHCO estate has limited resources and will have a significant burden if it is forced to pursue its reorganization efforts in Vermont. The Debtors have spent weeks planning, negotiating with the DIP Lender and Berkshire Bank, and preparing bankruptcy budgets before filing their Connecticut cases in the Connecticut Bankruptcy Court. The issue of where to file was fully considered and in the exercise of their sound business judgment, the Debtors determined that the Connecticut Bankruptcy Court was the most cost-effective location to file their cases.

The CRO to be appointed pursuant to the DIP Financing resides in Connecticut. It is anticipated that, upon appointment, he will lead the Debtors' reorganization efforts. It is evident that the Connecticut Bankruptcy Court would be a more convenient venue for the CRO and it is equally evident that the CRO has an immediate ability to step into the role of restructuring officer.

Maintaining Vermont venue may result in the need for the Debtors to retain an alternative CRO, who would be required to do his/her own due diligence to obtain the knowledge and expertise necessary to take on this role.

24. "Where the case is initially brought in a proper venue, the debtor's choice of forum is entitled to great weight." *In re Suntech Power Holdings Co.*, 520 Bankr. 399, 420 (Bkrtcy. S.D.N.Y. 2014); *In re Rehoboth Hospitality, LP*, 2011 Bankr. LEXIS 3992, at *10 (Bkrtcy. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum."); *In re Uslar*, 131 Bankr. 22, 23 (Bkrtcy. E.D. Pa. 1991) ("unless the balance is strongly in favor of transferring venue, the debtor's choice of forum should rarely be disturbed").

25. "In *Corco*, the Fifth Circuit found that the heart of the reorganization proceeding is formulating a financial plan of arrangement acceptable to all relevant parties." *Enron*, 275 Bankr. at 348. Similarly, the Debtors seek in the Connecticut Bankruptcy Cases the opportunity to reorganize their debts, pay their creditors and successfully emerge from bankruptcy in rapid order. Their ability to do so depends upon minimizing costs and moving the cases. It is the desire of the Debtors to use the next several weeks to meet with members of the Resort and negotiate the terms of a plan of reorganization.

26. The interest of justice and the convenience of the majority of the parties would be best served by a transfer of venue to the United States Bankruptcy Court for the District of Connecticut.

WHEREFORE, HIREHCO, the alleged debtor herein, respectfully requests that the Court grant its motion and transfer venue of this case to the United States Bankruptcy Court for the District of Connecticut and for such other and further relief as the Court deems just, proper and necessary.

Dated: May 31, 2019  
    New Haven, Connecticut

ALLEGED DEBTOR,  
HERMITAGE INN REAL ESTATE  
HOLDING COMPANY, LLC

By: __/s/_____  
Thomas P. Simon, Esq.  
McCormick, Fitzpatrick,  
Kasper & Burchard, P.C.  
40 George Street  
Burlington, Vermont  05401  
(802) 863-3494  
tps@mc-fitz.com

and

Douglas S. Skalka, Esq. (ct00616)  
NEUBERT, PEPE & MONTEITH, P.C.  
195 Church Street  
New Haven, Connecticut 06510  
(203) 821-2000  
dskalka@npmlaw.com