## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

—————————————————————x
:
In re:                                            :      CHAPTER 11
                                                  :
HERMITAGE INN REAL ESTATE                         :
HOLDING COMPANY, LLC,                             :      CASE NO.  19-10214 (CAB)
                                                  :
          Debtor.                                 :
—————————————————————x
                                                  :
HERMITAGE INN REAL ESTATE                         :
HOLDING COMPANY, LLC                              :
                                                  :
          Movant,                                 :
                                                  :
v.                                                :
                                                  :
15-HERMITAGE, LLC, A&W REALTY LLC,                :
ALBERT SUBBLOIE, ANN COLEMAN,                     :
ATOMIC PROFESSIONAL AUDIO INC,                    :
AUSTIN DESIGN INC.,                               :
BERKSHIRE BANK,                                   :
BROWNS COUNTRY SERVICES LLC,                      :
BSA ARCHITECTS, INC.,                             :
BUILDERS SERVICES, INC.,                          :
CAROL H. BUTLER TRUST,                            :
CHARLES COLLINS & ANA CLADERA,                    :
COLDBROOK FIRE DISTRICT NO. 1,                    :
CRAIG DOERSCH PAINTING, LLC,                      :
DAN AND JOHN LANE                                 :
dba LANE PLUMBING & HEATING, INC.                 :
DAN MCLEOD,                                       :
DAN SOLAZ, DAVID MANNING INC,                     :
DELL FINANCIAL SERVICES LLC,                      :
DONALD JABRO,                                     :
FISHER AND FISHER LAW OFFICES,                    :
FRED H. HAMBLET, LLC,                             :
GORDON BRISTOL CONSULTING, LLC                    :
GREEN MOUNTAIN POWER CORP,                        :
GREENFIELD GLASS COMPANY,                         :
GRENOBLE GROUP,                                   :
HARRINGTON ENGINEERING INC.,                      :
INTERNATIONAL FINANCIAL SVCS CORP                 :
IRON HORSE STANDING SEAM                          :

1

ROOFING CO,                                    :
JOYCE LAND SURVEYING CORP,                      :
KEY DRILLING & BLASTING SVCS,                   :
LAKELAND BANK,                                  :
LPV,                                            :
MACROLEASE CORPORATION,                         :
MANCHESTER CARPET CARE INC.,                    :
MATTHEW CURTIS,                                 :
METROPOLITAN GOLF ASSN,                         :
MICHAEL FAYETTE                                 :
dba MFAYETTE CARPENTRY, LLC,                    :
MICHAEL FAYETTE STEPHEN KUNKLE                  :
dba STEPHEN KUNKLE CARPENTRY,                   :
MOUNTAIN GLASS AND LOCK CORP,                   :
MR STEEL ACQUISITION CORP.,                     :
NEC FINANCIAL SERVICES LLC,                     :
NORDIC VALLEY PROPERTIES LLC,                   :
NORTHERN BUILDING SUPPLIES, INC,               :
NS LEASING, LLC,                                :
OAKLEAF MARINE MANAGEMENT CORP,:
PIONEER TIMBER FRAMES LLC,                      :
PJB HOME CENTER, INC.,                          :
PLIMPTON EXCAVATING LLC,                        :
RCN CAPITAL LLC,                                :
RCN CAPITAL LLC, ATIMA,                         :
REINHART EQUIPMENT,                             :
REINHART FOODSERVICE, LLC,                      :
ROBERT FISHER,                                  :
RTM CAPITAL PARTNERS, INC.,                     :
SETH AND JENNIFER GOODMAN,                      :
SHEFFIELD FINANCIAL,                            :
SOUTHWORTH ELECTRICAL INC,                      :
SPRUNG STRUCTURES,                              :
SQUIRE CAPITAL, STEPHEN KUNKLE,                 :
STEPHEN KUNKLE                                  :
dba STEPHEN KUNKLE CARPENTRY,                   :
SVT MASONRY INCORPORATED,                       :
SWAN ELECTRIC, INC.,                            :
SYSCO ALBANY, LLC,                              :
TEREX FINANCIAL SERVICES, INC.,                 :
TEREX FINANCIAL SERVICES, INC.,                 :
TFT HOLDINGS, LLC,                              :
THE INN AT SAWMILL FARM, LLC,                   :
THOMAS WHIT & ELIZ ARMSTRONG,                   :
TRINITY ENGINEERING &                           :
TECHNICAL SERVICES, LLC,                        :

TRIPLE T TRUCKING,                          :
TRUE WORLD FOODS BOSTON, LLC,               :
TYLER AND ROSE DICKSON,                     :
VARESCHI PLUMBING & HEATING,                :
VERMONT DEPARTMENT OF TAX,                  :
W&W BUILDING SUPPLY,                        :
WALKER KIMBALL,                             :
WESTERN EQUIPMENT FINANCE, INC,             :
WINDHAM ARCHITECTURAL METALS,               :
                                            :
              Respondents.                  :
_____x
_____x
                                            :
In re:                                      :   CHAPTER 11
                                            :
HERMITAGE CLUB, LLC                         :   CASE NO.  19-10276 (CAB)
                                            :
              Debtor.                       :
_____x
                                            :
HERMITAGE CLUB, LLC                         :
                                            :
              Movant,                       :
                                            :
v.                                          :
                                            :
                                            :
BERKSHIRE BANK,                             :
CORPORATION SERVICE CO, AS REP,             :
DELL FINANCIAL SERVICES, LLC,               :
INTERNATIONAL FINANCIAL SVCS CORP           :
NEC FINANCIAL SERVICES LLC,                 :
REINHART FOODSERVICE, LLC,                  :
SYSCO ALBANY, LLC,                          :
TCF EQUIPMENT FINANCE,                      :
WEBBANK,                                    :
              Respondents.                  :
_____x

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §105(a), 364(c) and (d), (II) AUTHORIZING DEBTOR TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION INCLUDING SENIOR FIRST PRIORITY LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER PURSUANT TO 11 U.S.C. §364(d),**

## AND (IV) SCHEDULING A FINAL HEARING AND (V) GRANTING RELATED RELIEF

Upon the motion, dated July 3, 2019 (the "Motion"), of Hermitage Inn Real Estate

Holding Company, LLC (hereafter "HIREHCO") and Hermitage Club, LLC (hereafter "HCL"

and collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "Case"), for interim and final orders under sections 105, 361,

362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States

Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9014 of the Federal

Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and the Local Rules of

Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of

Vermont (the "Local Bankruptcy Rules"), seeking, *inter alia*:

(a)      authorization for the Debtors to obtain postpetition financing (collectively, the "Postpetition Financing" or the "DIP Facility") up to a maximum outstanding principal amount of $1,750,000 in accordance with, the Debtor-In-Possession Loan and Security Agreement among the Debtors, as borrowers, and Restructured Opportunity Investors, Inc. and its designee and/or assigns, as lender (the "Lender") (the "DIP Loan Agreement"), together with such other documents and agreements required by the Lender (the "DIP Loan Documents").

(b)      authorization for the Debtors to obtain from the Lenders on the Initial Funding Date and from time to time thereafter pending the Final Hearing (as defined below) advances ("Loans") in amounts not to exceed a maximum outstanding principal amount of $1,000,000 (the "Interim Amount") in accordance with the DIP Loan Agreement and this Interim Order;

(c)      authorization for the Debtors to obtain from the Lenders upon entry of the Final Order, advances in amounts not to exceed a maximum outstanding principal amount of $1,750,000 (the "Total Commitment" or "Lender Debt") in accordance with the DIP Loan Agreement, the DIP Loan Documents and the Final Order;

(d)      authorization for the Debtors to execute and deliver the DIP Loan Agreement and the DIP Loan Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(e)      authorization for the Debtors to grant to the Lender assurances for the full and timely repayment of the Loan by granting to the Lender (i) pursuant to section 364(c)(I)

of the Code, a superpriority administrative expense claim (a "Superpriority Administrative Expense Claim") having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code; and (ii) pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, senior first priority liens on, and security interests in, any and all of the Debtors' assets and personal property excluding recoveries from avoidance actions under Chapter 5 of the Bankruptcy Code;

(f)      Authorization for the Debtors to grant to the Lender a first priority mortgage on all Real Property (as hereafter defined) owned by Debtors, assignment of leases and rents, and environmental indemnity;

(g)      authorization for the Debtors to use and operate their assets, including the Cash Collateral (as defined below) and approving the grant of adequate protection to the Respondents above (as defined below) as provided herein;

(h)      scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the Interim Order, among other things, authorizing the Debtors, on an interim basis, to borrow the Interim Amount under this Interim Order, the DIP Loan Agreement and the DIP Loan Documents; and

(i)      scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the Postpetition Financing, and establishing notice procedures in respect of the Final Hearing.

The Debtors having requested in the Motion that pending the Final Hearing on the

Motion, a hearing be scheduled to consider entry of this Interim Order; and notice of such

hearing having been given to (a) the U.S. Trustee; (b) counsel to the Lender (as defined below);

(c) counsel to Respondent Berkshire Bank; (d) counsel to each of the Respondents identified

above, and their counsel if known; (e) counsel to the Ad Hoc Committee; and (f) the twenty

largest unsecured creditors of each of the Debtors (collectively, the "Notice Parties"); and it

appearing that on the record made in the Case and after considering the Debtors' immediate need

for interim financing, no other or further notice need be given; and the Lender having agreed to

provide the Postpetition Financing in accordance with the DIP Loan Agreement and this Interim

Order.

NOW, THEREFORE, upon the Motion and the record of the Interim Hearing held before the Court on July ___, 2019; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

Based upon the record presented to the Court, it appears that:

A.      Filing. On May 28, 2019, (the "Filing Date"), each of the Debtors filed a voluntary petition for reorganization in the United States Bankruptcy Court, District of Connecticut, under chapter 11 of the Bankruptcy Code. On May 22, 2019, an involuntary petition by petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. (the "Bankruptcy Code") filed by Bobbi Resek, Dan Solaz and Lakeland Bank (collectively, the "Petitioning Creditors") against HIREHCO (the "Involuntary Case") in this Court. On June 19, 2019, this Court entered a Memorandum of Decision Determining Vermont to be the Proper Venue for Three Hermitage Cases (ECF No. 91) and an Order Determining Vermont to be the Proper Venue for Three Hermitage Cases (ECF No. 92)(the "Venue Order"). Pursuant to the terms of the Venue Order, the Chapter 11 Cases were transferred to this Court. By Order of this Court dated June 28, 2019, the Involuntary Case was converted to a case under Chapter 11  and  the Chapter 11 case of HIREHCO was consolidated therewith and is pending as a Chapter 11 case in this Court,  Case No. 19-10214. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Debtors' Pre-Petition Secured Debt

(i)      Prepetition Senior Credit Documents with Berkshire Bank.

1.      HIREHCO, as borrower, is a party to a construction loan agreement and related documents dated September 30, 2013 pursuant to which Berkshire Bank ("Berkshire") extended a secured financing facility to HIREHCO in the original principal sum of $20,000,000, as evidenced by a certain Second Amended and Restated Promissory Note in the original principal amount of $15,000,000; as further evidenced by that certain Third Amended and Restated

Promissory Note dated June 28, 2016 in the original principal amount of $1,000,000 and as further evidenced by that certain Promissory Note dated as of July, 2017 in the original principal amount of $1,100,000, all as secured by a Construction Mortgage and Security Agreement dated September 30, 2013 and recorded in the Town of Wilmington and the Town Dover Land Records on real property owned by HIREHCO and located in the Towns of Wilmington and Dover, VT, (the "Real Property", and all of the Berkshire Loans are collectively the "Berkshire Loan Facility").

2.      A portion of the real property secured by the Berkshire Loan Facility is leased by the Debtor from the Town of Wilmington and the Wilmington Water District.  The Town of Wilmington and the Wilmington Water District, as Landlord under the ground lease entered into a certain Ground Lease Consent and Recognition Agreement dated March 9, 2015 and recorded in the Wilmington Land Records consenting to the Berkshire Loan Facility.

3.      HCL and HIREHCO granted to Berkshire a security interest in all of their respective personal property to secure the indebtedness under the Berkshire Loan Facility by Security Agreements each  dated September 30, 2013.  In order to perfect the security interests, Berkshire filed UCC financing statements with the Connecticut Secretary of State.

4.      On December 3, 2014, HIREHCO, the Club  and James R. Barnes entered into a Second Amended and Restated Construction Loan Agreement, as amended by First Amendment of Loan Agreement and Other Loan Documents dated June 28, 2016, Second Amendment of Loan Agreement and Other Loan Documents dated February 10, 2017, Third Amendment of Loan Agreement and other Loan Documents dated June 14, 2017 and Fourth Amendment of Loan Agreement and Other Loan Documents dated July 18, 2017 to secure the Berkshire Loan Facility.

5.      By Amended and Restated Payment and Completion Guaranty dated December 3, 2014, as amended, James R. Barnes executed a guaranty of the obligations of HIRECHO to Berkshire.

6.      Berkshire declared a default under the Berkshire Loan Facility and the parties entered a certain Forbearance Agreement dated December 30, 2016 as amended by Second Amendment to Forbearance Agreement dated July 18, 2017 and as further amended by Amended and Restated Forbearance Agreement dated November 30, 2017.

7.      As of the Petition Date, the Debtors were indebted to Berkshire in the approximate amount of $19 million dollars with such amounts secured by first priority liens on the Debtors assets with the exception of Permitted Liens (as defined in the Berkshire Loan Documents).

8.      **Involuntary Liens and Encumbrances on the Debtors' Real Property.**  The following liens are recording against the Debtors' real property, which liens are subsequent and subordinate to the liens of Berkshire.  The following entities may claim an interest in such property (collectively, the "Prepetition Involuntary Liens"):

a.      BSA Architects, Inc. d/b/a Bull Stockwell Allen may claim an interest in the Real Property by virtue of a Mechanic's Lien dated June 24, 2016 in the amount of $338,717.81 and recorded on June 27, 2016 in the Town of Dover Land Records, and that certain Writ of Attachment and Order of Approval dated August 31, 2016 and recorded in the Town of Wilmington and Town of Dover Land Records and that certain Judgment order to Stipulation dated February 8, 2017 in the amount of $430,000 and recorded in the Wilmington Land Records and the Dover Land Records.

b.      MR Steel Acquisition Corp. d/b/a Ameri-Fab may claim an interest in the Real Property in the amount of $58,750.00 by virtue of a Notice of Mechanics Lien dated February 13, 2017 and recorded in the Wilmington Land Records.

c.      Thomas Whit Armstrong, Jr. and Elizabeth Armstrong may claim an interest in the Real Property by virtue of a Writ of Attachment and order of Approval dated April 20, 2017 in the amount of $227,186.36 and by Order dated October 23, 2017 in the amount of $198,242.12 recorded in the Wilmington Land Records.

d.      PJB Home Center, Inc. d/b/a Perkins Home Center may claim an interest in the Real Property by virtue of a Mechanics Lien dated May 10, 2017 in the amount of $4,093.35 recorded in the Wilmington Land Records  and a Notice of Mechanics Lien dated May 10, 2017 in the amount of $30,645.19 recorded in the Wilmington Land Records and a Contractor's Lien dated May 8, 2017 in the amount of $7,556.11, recorded in the Dover Land Records.

e.      Green Mountain Power Corporation may claim an interest in the Real Property by virtue of a Stipulated Writ of Attachment dated June 12, 2017 in the amount of $257,628.11 recorded in the Wilmington Land Records.

f.      Michael Fayette d/b/a MFayette Carpentry, LLC may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien in the amount of $18,844.00 recorded on July 6, 2017 in the Wilmington Land Records.

g.      Stephen Kunkle d/b/a Stephen Kunkle Carpentry may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien in the amount of $19,140 recorded on July 6, 2017 in the Wilmington Land Records.

h.      Dan and John Lane d/b/a Lane Plumbing & Heating, Inc. may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien dated July 6, 2017 in the amount of $68,504.33 recorded in the Wilmington Land Records.

i.      Southworth Electrical, Inc. may claim an interest in the Real Property by virtue of a Memorandum of Lien dated July 10, 2017 in the amount of $66,090.44 recorded in the Wilmington Land Records.

j.      Swan Electric, Inc. may claim an interest in the Real Property by virtue of a Notice of Contractor's Lien dated July 10, 2017 in the amount of $62,510.60 recorded in the Wilmington Land Records.

k.      SVT Masonry Incorporated may claim an interest in the Real Property by virtue of a Judgment in the amount of $103,719.21 recorded on May 30, 2018 in the Wilmington Land Records and relating to a Notice of Lien dated July 14, 2017 in the amount of $89,950 recorded in the Wilmington Land Records.

l.      Seth Goodman and Jennifer Goodman may claim an interest in the Real Property by virtue of a Writ of Attachment dated July 21, 2017 in the amount of $986,495.21 recorded in the Wilmington Land Records.

m.      Craig Doersch Painting, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated August 2, 2017 in the amount of $76,834.00 recorded in the Wilmington Land Records.

n.      Mountain Glass & Lock Corporation may claim an interest in the Real

Property by virtue of a Notice of Claim of Lien dated August 11, 2017 in the amount of $44,872.50 and by Stipulated Writ of Attachment dated November 8, 2017 in the amount of $54,057.02 recorded in the Wilmington land Records.

o.     Vareschi Plumbing & Heating may claim an interest in the Real Property by virtue of a Notice of Lien dated August 17, 2017 in the amount of $15,220.00 recorded in the Wilmington Land Records.

p.     Manchester Carpet Care, Inc. may claim an interest in the Real Property by virtue of a Notice of Lien dated August 9, 2017 in the amount of $39,875.09 recorded in the Wilmington Land Records.

q.     Windham Architectural Metals may claim an interest in the Real Property by virtue of a Notice of Lien dated October 4, 2017 in the amount of $16,209.16 recorded in the Wilmington Land Records.

r.     Sysco Albany, LLC may claim an interest in the Real Property by virtue of a Judgment Order dated August 31, 2017 in the amount of $23,541.61 recorded in the Wilmington Land Records.

s.     Greenfield Glass Company may claim an interest in the Real Property by virtue of a Notice of Lien dated October 24, 2017 in the amount of $4,928.88 recorded in the Wilmington Land Records.

t.     Austin Design Inc. may claim an interest in the Real Property by virtue of a Notice of Lien dated October 24, 2017 in the amount of $20,501.25 recorded in the Wilmington Land Records.

u.     Iron Horse Standing Seam Roofing Co. a/k/a Iron Horse Roofing Co. may claim an interest in the Real Property by virtue of a Preliminary Lien Notice dated November 27, 2017 in the amount of $25,631.11 recorded in the Wilmington Land Records.

v.     Reinhart FoodService, LLC may claim an interest in the Real Property by virtue of a Writ of Attachment dated November 27, 2017 in the amount of $1,587,448.10 recorded in the Wilmington and Dover Land Records.

w.     Reinhart FoodService LLC may further claim an interest in the Real Property by virtue of a Writ of Attachment dated January 25, 2018 in the amount of $1,587,448.10 recorded in the Wilmington and Dover Land Records.

x.     Gordon Bristol d/b/a Gordon Bristol Consulting, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated December 18, 2017 in the amount of $57,080.58 recorded in the Wilmington Land Records.

y.     Michael Fayette and Stephen Kunkle d/b/a Stephen Kunkle Carpentry may claim an interest in the Real Property by virtue of a Writ of Attachment and Order of Approval dated January 2, 2018 in the amount of $30,959.55 recorded in the Wilmington Land Records.

z.     Pioneer Timber Frames LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated January 5, 2018 in the amount of $16,520.00 recorded in the Wilmington Land Records.

aa.     Trinity Engineering & Technical Services, LLC may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien dated January 16, 2018 in the amount of

$13,557.75 recorded in the Wilmington and Dover Land Records.

bb.     Trinity Engineering & Technical Services, LLC may further claim an interest in the Real Property by virtue of a Notice of Mechanic's Lien dated January 16, 2018 in the amount of $9,743.65 recorded in the Dover Land Records.

cc.     Metropolitan Golf Association may claim an interest in the Real Property by virtue of a Judgement Order dated October 30, 2017 and certified on January 16, 2018 in the amount of $50,358.84 recorded in the Wilmington Land Records.

dd.     Pamela Keefe, Trustee of the Carol H. Butler Trust may claim an interest in the Real Property by virtue of a Writ of Attachment dated January 30, 2018 in the amount of $1,092,993.16 recorded in the Wilmington Land Records.

ee.     Fred H. Hamblet, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated April 13, 2017 in the amount of $21,990.00 recorded in the Dover Land Records.

ff.     Joyce Land Surveying Corp. may claim an interest in the Real Property by virtue of a Notice of Contractors Lien dated February 5, 2018 in the amount of $7,374.98 recorded in the Wilmington and Dover Land Records.

gg.     Tyler Dickson and Rose Stewart Dickson may claim an interest in the Real Property by virtue of a Writ of Attachment dated February 9, 2018 in the amount of $1,005,000.00 recorded in the Wilmington Land Records.

hh.     Brown's Country Services, LLC may claim an interest in the Real Property by virtue of a Notice of Lien in the amount of $150,382.86 recorded on February 21, 2018 in the Wilmington Land Records.

ii.     Dan Solaz may claim an interest in the Real Property by virtue of a  Writ and Order in the amount of $314,000.00 recorded on February 26, 2018 in the Wilmington Land Records.

jj.     Plimpton Excavating, LLC may claim an interest in the Real Property by virtue of an Order in the amount of $37,102.84 recorded on August 9, 2018 in the Wilmington Land Records relating to a Mechanic's Lien   recorded on March 7, 2018 in the Wilmington Land Records.

kk.     Key Drilling & Blasting Services, Inc. may claim an interest in the Real Property by virtue of a Mechanic's lien in the amount of $66,600.00 recorded on March 7, 2018 in the Wilmington Land Records.

ll.     Builders Services, Inc. may claim an interest in the Real Property by virtue of an interest recorded on March 12, 2018 at Book 347, Page 247 of the Dover Land Records.

mm.     Harrington Engineering, Inc. may claim an interest in the Real Property by virtue of an interest in the amount of $39,953.59 recorded on March 12, 2018  at Book 339, Page 159 of the Wilmington Land Records and recorded on March 9, 2018 at Book L11, Page 404 of the Dover Land Records.

nn.     Ann Coleman may claim an interest in the Real Property by virtue of a lien in the amount of $1,670.44 recorded on March 12, 2018 in the Wilmington Land Records.

oo.    Northern Building Supplies, Inc. may claim an interest in the Real Property by virtue of an Order in the amount of $151,744.44 recorded on July 2, 2018 in the Wilmington Land Records and relating to a Mechanic's Lien in the amount of $121,999.13 recorded on March 13, 2018 in the Wilmington Land Records and recorded on March 6, 2018 in the Dover Land Records.

pp.    Triple T Trucking may claim an interest in the Real Property by virtue of a Mechanic's Lien in the amount of $34,634.31 recorded on March 20, 2018 in the Wilmington and Dover Land Records.

qq.    Triple T Trucking may claim a further interest in the Real Property by virtue of a Mechanic's Lien in the amount of $1,981.50 recorded on March 20, 2018 in the Wilmington Land Records.

rr.    Dan Solaz may claim a further interest in the Real Property by virtue of a Writ in the amount of $314,000 recorded on April 2, 2018 relating to a Mechanic's Lien recorded on March 21, 2018 in the Wilmington Land Records.

ss.    Charles T. Collins and Ana Cladera may claim an interest in the Real Property by virtue of a Judgment in the amount of $1,107,192.00 recorded on June 29, 2018 in the Wilmington Land Records relating to a Write recorded on March 21, 2018 in the Wilmington Land Records.

tt.    David Manning, Inc. may claim an interest in the Real Property by virtue of an Order in the amount of $34,805.97 recorded on August 29, 2018 in the Wilmington Land Records relating to a Mechanic's Lien recorded on April 6, 2018 in the Wilmington Land Records.

uu.    TFT Holdings, LLC may claim an interest in the Real Property by virtue of a Judgment in the amount of $1,458,249.00 recorded on June 29, 2018 in the Wilmington Land Records relating to a Writ recorded on April 9, 2018 in the Wilmington Land Records.

vv.    Cold Brook Fire District may claim an interest in the Real Property by virtue of a lien in the amount of $255.42 recorded on May 10, 2018 in the Wilmington Land Records.

ww.    Atomic Professional Audio, Inc. may claim an interest in the Real Property by virtue of a Judgment in the amount of $71,372.96 recorded on June 21, 2018 in the Wilmington Land Records.

xx.    True World Foods Boston LLC may claim an interest in the Real Property by virtue of an Order in the amount of $10,790.58 recorded on August 9, 2018 in the Wilmington Land Records.

yy.    Cold Brook Fire District may claim a further interest in the Real Property by virtue of a lien in the amount of $6,250.00 recorded on August 15, 2018 in the Wilmington Land Records.

9.    **Tax Liens on the Debtors' Real Property.**  The State of Vermont Department of Taxes may claim an interest in the Real Property by virtue of (i) a State Tax Lien dated July 25, 2017 in the amount of $185,239.07 and recorded in the Wilmington Land Records; (ii) a State Tax

Lien dated September 7, 2017 in the amount of $114,450.24 and recorded in the Wilmington Land

Records; (iii) a State Tax Lien dated September 13, 2017 in the amount of $299,151.87 and

recorded in the Wilmington Land Records; (iv) a State Tax Lien dated August 10, 2017 in the

amount of $185,897.61 and recorded in the Wilmington Land Records; and (v) a State Tax Lien

dated October 20, 2017 in the amount of $4,396.90 and recorded in the Wilmington Land Records

(collectively, the "Tax Liens").

      10.    **Mortgages Affecting the Debtors' Real Property**. In addition to the mortgages

held by Berkshire, the following entities hold mortgages secured by the Real Property

(collectively, the "Prepetition Subordinate Mortgages"):

      a.    Donald and Savannah Jabro may claim an interest in the Real Property by
virtue of a mortgage securing the original principal amount of $450,000.00 which mortgage was
recorded on May 1, 2017 in the Wilmington Land Records.

      b.    Fisher & Fisher Law Offices may claim an interest in the Real Property by
virtue of a mortgage securing the original principal amount of $143,727.72 which mortgage was
recorded on November 17, 2017 in the Wilmington Land Records.

      c.    RTM Capital Partners, Inc., LPV, 15-Hermitage, LLC and Matthew Curtis
may claim an interest in the Real Property by virtue of a mortgage deed securing the original
principal amount of $2,080,527.77, which mortgage was recorded on December 20, 2017 in the
Wilmington Land Records.

      11.    In addition to the liens affecting the Real Property, there are liens affecting the

Personal Property assets of the Debtors.  The following is a schedule of liens affecting the Personal

Property assets (collectively, the "Personal Property Liens"):

      a.    Barnstormer Summit Lift, LLC may claim an interest in the Personal
Property owned by HIREHCO (the "Barnstormer Collateral") by virtue of Original Financing
Statement No. 0003128812 recorded with the Connecticut Secretary of State and Original
Financing Statement No. 16-300965 recorded with the Vermont Secretary of State;

      b.    Berkshire Bank may claim an interest in the Personal Property owned by
the Debtors by virtue of Original Financing Statement Nos. 0002961631 and 0002993655 recorded
with the Connecticut Secretary of State;

      c.    Corporation Service Company, as Representative may claim an interest in
the Personal Property owned by HIREHCO by virtue of Original Financing Statement No.

0003016672 recorded with the Connecticut Secretary of State;

       d.     Dell Financial Services, LLC may claim an interest in the Personal Property owned by the Club virtue of Original Financing Statement No. 0002956221 recorded with the Connecticut Secretary of State;

       e.     International Financial Services Corporation may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement No. 0003021288 recorded with the Connecticut Secretary of State and Original Financing Statement No. 14-274506 recorded with the Vermont Secretary of State;

       f.     Lakeland Bank may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003103361 recorded with the Connecticut Secretary of State;

       g.     Macrolease Corporation may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003021633 recorded with the Connecticut Secretary of State;

       h.     NEC Financial Services, LLC may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement Nos. 0003057636, 0003059810, 0003093807, and 0003095460 recorded with the Connecticut Secretary of State;

       i.     Nordic Valley Properties, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 14-277361 recorded with the Vermont Secretary of State;

       j.     NS Leasing, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement Nos. 16-301105 and 17-309506 recorded with the Vermont Secretary of State;

       k.     RCN Capital, LLC, ATIMA may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003026452 recorded with the Connecticut Secretary of State and Original Financing Statement No. 14-275621 recorded with the Vermont Secretary of State;

       l.     Reinhart Foodservice, LLC may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement No. 0003214434 recorded with the Connecticut Secretary of State and Writ of Attachment 17-325079 recorded with the Vermont Secretary of State;

       m.     Sysco Albany, LLC may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement No. 0003176847 recorded with the Connecticut Secretary of State;

       n.     TCF Equipment Finance division of TCF National Bank may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement

Nos. 0003060165 and 0003122563 recorded with the Connecticut Secretary of State;

o.    Terex Financial Services, Inc. may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003161474 recorded with the Connecticut Secretary of State and Original Financing Statement No. 17-310389 recorded with the Vermont Secretary of State;

p.    The Inn at Sawmill Farm, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement Nos. 15-278506 and 15-278507 recorded with the Vermont Secretary of State;

q.    Webbank may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement No. 0003019760 recorded with the Connecticut Secretary of State; and

r.    Western Equipment Finance, Inc. may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003159592 recorded with the Connecticut Secretary of State.

12.    The (i) Berkshire Loan Facility; (ii) the Prepetition Involuntary Liens; (iii) the Prepetition Subordinated Mortgages; and (iv) the Personal Property Liens are hereinafter collectively referred to as the "Prepetition Secured Debt".

13.    As of the Petition Date, the Debtors have aggregate unsecured debts (excluding claims by members of the Resort) totaling approximately $4.5 million, for merchandise, utilities, professional fees, insurance, and employee-related expenses.

14.    As of the Petition Date, the Debtors assert the value of their assets are $$50,000,000, and exceed the value of the Prepetition Secured Debt.

C.    Need for Postpetition Financing and Use of Prepetition Collateral

15.    The Debtors own and operate a four-season private membership only ski and golf club located in Wilmington, Vermont and known as The Hermitage Resort.  The Debtors' assets include The Hermitage Inn, The Haystack Mountain Ski Resort and adjacent 18-hole championship golf course and real estate designed to be developed into a private, member only resort with 450 private homes and condominiums.

16.     The Debtors have an immediate need to obtain the Postpetition Financing and to use their assets including any and all cash receipts ("Cash Collateral") which is the subject to the liens of Pre-Petition Secured Creditors. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Postpetition Financing and the Debtors' use of its cash receipts.  The ability of the Debtors to pay employees, maintain insurance and business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' ability to restart operations. Without the Postpetition Financing and the Debtors' use of its assets, including any cash receipts, the operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their creditors and estates would result. The purpose of the Postpetition Financing and the Debtors' use of cash collateral will thus be to preserve, maintain and enhance the going concern value of the Debtors.

D.       No Credit Available on More Favorable Terms. Given the Debtors' financial condition, financing arrangements, and capital structure, as well as the uncertain timing of collections of membership dues, the Debtors do not have sufficient cash to fund their businesses and are otherwise unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon all pre-petition and post-petition assets pursuant to section 364(c) and (d) of the Bankruptcy Code, such that Lender be granted pursuant to 11 U.S.C. §364(d) a senior first priority blanket lien on all assets of the Debtors estates. The Debtors

are unable to obtain the necessary postpetition financing that they need on terms more favorable than those provided by the Postpetition Financing.

E.      Need to Grant Superpriority Administrative Expense Claim and Priming Liens. The Debtors are unable to obtain an adequate unsecured credit facility allowable under section 503(b)(1) of the Bankruptcy Code and must grant to the Lender a Superpriority Administrative Expense Claim as contemplated by section 364(c)(1) of the Bankruptcy Code and liens as contemplated by section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code. The Lender has conditioned all loans and advances to be made under the DIP Loan Agreement upon the grant to the Lender of: (a) a Superpriority Administrative Expense Claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all expenses of any kind or nature whatsoever specified in sections 503(b) and 507(b) of the Bankruptcy Code; and (b) subject to the Carveout (defined below), in accordance with section 364(c)(2), (3) and (d) of the Bankruptcy Code, senior first priority liens on and security interests in all of the Debtors' assets, excluding the Barnstormer Collateral and recoveries from avoidance actions under Chapter 5 of the Bankruptcy Code.

F.      DIP Facility. Pursuant to the DIP Facility, the Lender has agreed to provide a Loan to the Debtors in amounts not to exceed the maximum outstanding principal amount at any one time of (i) following entry of the Interim Order and prior to entry of the Final Order, $1,000,000 in accordance with the DIP Loan Agreement, the DIP Loan Documents, the Budget (as defined below) and this Interim Order, and (ii) upon entry of the Final Order, up to $1,750,000, in accordance with the DIP Loan Agreement, the DIP Loan Documents, the Budget and the Final Order.

G.      As further adequate protection to the Lender, the following benchmarks, which are included in the DIP Loan Documents, are conditions to the DIP Facility and are as follows (the "Benchmarks"):

1.      Within ten (10) days of the entry of this Interim Order, Debtors must file an application to seek approval to retain Jonathan A. Joslow, or such other professional acceptable to Lender, as Chief Restructuring Officer, and seek a hearing on the Court approval of such retention within twenty one (21) days of filing such application;

2.      The Debtors must convene a meeting of the membership of HTC on or before July 19, 2019 with the result being that at least sixty-five percent (65%) of existing members commence paying one hundred percent (100%) of their monthly dues on or before confirmation of a Plan;

3.      Debtors must commence making monthly interest payments from the Interest Reserve on the first of the month succeeding the Closing Date; and

4.      The Debtors shall have filed a Plan of Reorganization, in form and substance satisfactory to Lender, within one hundred twenty (120) days of the filing date, and such Plan must be confirmed within sixty (60) days from the filing of the Plan.

H.      <u>Business Judgment and Good Faith</u>. The terms of the Postpetition Financing are at least as favorable to the Debtors as those available from alternative sources. The terms of the Postpetition Financing have been negotiated in good faith and at arm's length between the Debtors and the Lender, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are fair and reasonable under the circumstances, and are enforceable in accordance with applicable law. The credit extended to the Debtors by the Lender under the Postpetition Financing and this Interim Order shall be deemed to have been extended

in "good faith" as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

I.      Need for Immediate Approval. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed. The Debtors have no alternative source of financing to meet their immediate and projected obligations, including payroll and other operating expenses, and consequently, it is essential that the Court approve the interim financing contemplated hereby on an immediate basis. Consummation of the Postpetition Financing and authorization of the use of the cash receipts (including Cash Collateral) in accordance with the terms of this Interim Order are therefore in the best interests of the Debtors' estates and are consistent with the Debtors' exercise of their fiduciary duties.

J.      Jurisdiction and Venue. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This Interim Order is entered in a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K) and (M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

K.      Notice. Notice of the Motion, the relief requested therein, and the Interim Hearing was served by the Debtors on the Notice Parties. The notice provided of the Motion and the Interim

Hearing is sufficient and adequate notice and no further notice of the relief sought at the Interim

Hearing is necessary or required.

L.       Record. The record adequately demonstrates the need for the Court to have conducted the

Interim Hearing on the notice provided because of the potential for immediate and irreparable

harm to the Debtors, their assets, businesses and estates. Based on the record, pursuant to

sections 105, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), notice of the

Interim Hearing was adequate as set forth herein and on the record.

Based upon the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as

follows:

### Approval and Authorization.

1.       Motion Granted. The Motion is granted as to the Debtors' request for interim relief with

respect to the Postpetition Financing to the extent provided herein. Any objections to the interim

relief sought in the Motion with respect to the entry of this Interim Order that have not been

previously withdrawn, waived or settled, and all reservations of rights included therein, are

hereby denied and overruled.

2.       Approval of Documents. The Postpetition Financing, the DIP Loan Agreement and the

DIP Loan Documents including the Benchmarks are hereby approved subject to the terms of this

Interim Order including the Interim Amount. The failure to reference or discuss any particular

provision of the DIP Loan Agreement or any DIP Loan Document shall not affect the validity or

enforceability of any such provision.

3.       Authorization to Execute and Deliver Documents. The Debtors are expressly authorized,

empowered and directed to do and perform all acts to make, execute, deliver and implement the

DIP Loan Agreement and the DIP Loan Documents, and any other document required to be

executed and delivered in connection therewith. Upon execution and delivery of the DIP Loan

Agreement and the DIP Loan Documents, the DIP Loan Agreement and the DIP Loan

Documents shall constitute valid, binding and non-avoidable obligations of the Debtors,

enforceable against the Debtors in accordance with the terms thereof and of this Interim Order.

No obligation, payment, transfer or grant of security under the DIP Loan Agreement and the DIP

Loan Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable or

recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including

without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any

applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or

similar statute or common law), or subject to any defense, reduction, setoff, recoupment or

counterclaim. The Debtors are authorized and directed to pay all principal, interest, fees, costs

and other expenses that may be required or necessary for the Debtors to perform all of their

obligations under the DIP Loan Agreement, the DIP Loan Agreement, the DIP Loan Documents

and this Interim Order without any further order or approval of the Court.

4.      <u>Authorization to Borrow; the Budget</u>. Good and sufficient cause has been shown for the

entry of this Interim Order. The Debtors are authorized and empowered to borrow funds pursuant

to the DIP Loan Agreement and the DIP Loan Documents up to the Interim Amount pending the

Final Hearing for the purposes permitted under the DIP Loan Agreement and the DIP Loan

Documents and this Interim Order, all in accordance with the budget attached to this Order (the

"Budget").

5.      <u>Amendments</u>. The Lender and the Debtors may amend, modify, supplement or waive any

provision of the DIP Loan Agreement and the DIP Loan Documents if such amendment,

modification, supplement or waiver is not material (in the good faith judgment of the Lender and

the Debtors), without any need to apply to, or receive further approval from, the Court. Any

material amendment, modification, supplement or waiver shall be in writing, signed by the

parties and subject to approval by the Court on appropriate notice.

**Use of Collateral (Including Cash Collateral).**

7.      Use of Collateral (Including Cash Collateral). The Debtors are

authorized to use funds from the DIP Facility and cash collateral during the period from the

Filing Date until the earlier of the Termination Date (as defined in the DIP Loan Agreement) and

an Event of Default for the same purposes as set forth in and in accordance with this Interim

Order, the DIP Loan Agreement, the DIP Loan Documents and the Budget.

8.      Payment of Interest, Fees, Etc. The Debtors shall pay to the Lender

interest as provided in this Interim Order, the DIP Loan Agreement and the DIP Loan

Documents in accordance with the procedures herein and therein set forth (and the Lender shall

be permitted to charge such amounts to the DIP Facility). In consideration of the financial and

other accommodations to be made by the Lender under this Interim Order, the DIP Loan

Agreement and the DIP Loan Documents, the Debtors are hereby authorized and directed,

without further order of the Court, to pay to the Lender all fees and charges as set forth herein

and in the DIP Loan Agreement and the DIP Loan Documents and to reimburse the Lender for

all reasonable out of pocket expenses and professional fees and related disbursements incurred

by the Lender in connection with the preparation of the DIP Loan Agreement and the DIP Loan

Documents or in connection with or related to the Debtors, the Case or the DIP Facility;

provided that the Lender shall provide a copy of any invoices (redacted with respect to privileged

matters) for their professional fees and expenses to counsel for the Debtors, counsel for the

Official Committee of Unsecured Creditors, once appointed (the "Committee"), and the Office of

United States Trustee, and in absence of an objection filed with this Court within 10 days after

receipt of such invoices, the Debtors are authorized and directed to pay the amount of such

invoices or Lender may pay such invoices from the DIP Facility. In the event there is an

objection filed with this Court within 10 days after receipt of such invoices, the Debtors are

authorized and directed to pay only the portion of such invoices that are not subject to such

objection, and shall pay any balance following resolution of such objection or upon an order of

this Court.

**Superpriority Administrative Claim; Collateral.**

9.      Superpriority Administrative Expense Claim; Waiver under Section 506(c). All of the

Lender Debt shall have the status of an allowed Superpriority Administrative Expense Claim in

the Case pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all

administrative expenses, adequate protection claims and all other claims against the Debtors,

whether heretofore or hereafter incurred, of any kind or nature whatsoever, other than the

Carveout, including without limitation, all administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative

expenses or other claims arising under sections 105[subject to entry of the Final order], 326, 328,

330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or

1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a

judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for

purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative

expenses allowed under section 503(b) of the Bankruptcy Code. Other than the Carveout, no

claim or expense having a priority senior or pari passu to the priority granted to the Lender in

this Interim Order shall be granted or permitted in the Case, or any superseding chapter 7 case,

and, subject to entry of the Final Order, no other costs or expenses of administration of any kind,

nature or description whatsoever shall be imposed against the Collateral under sections 105,

506(c) or 552 of the Bankruptcy Code or otherwise, in each case, while any portion of the

Lender Debt remains outstanding.

10.    <u>Payment of Administrative Expenses</u>. Unless an Event of Default shall have occurred (or

would result from such payment), subject to the Budget, the Debtors shall be permitted to pay, as

the same may become due or authorized and payable, administrative expenses of the kind

specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their

businesses.

11.    <u>Collateral Security</u>. As security for the full and timely payment of the Lender Debt, the

Lender is hereby granted pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code,

senior first priority liens on, and security interests in, all of the Debtors' Assets, subject only to

the Carveout and excluding recoveries from avoidance actions under Chapter 5 of the

Bankruptcy Code. The term "Assets" or "Collateral" shall have the definition ascribed thereto in

the DIP Loan Agreement and includes all of the Debtors' assets including, without limitation,

whether now existing or owned or hereafter arising or acquired, all receivables, membership

dues and obligations, all general intangibles and payment intangibles, contract rights, deposits

and deposit accounts, goods, inventory, machinery and equipment, choses in action, goodwill

and investment property, membership rights, privileges and interests in any entity, choses in

action(s), and all cash and non-cash proceeds of the foregoing including insurance proceeds and

claims. In addition, as security for the full and timely payment of the Lender Debt, the Lender is

hereby granted a first priority mortgage on all of the Real Estate owned by Debtors, together

with an assignment of all leases and rents related thereto.

12.    <u>No Subordination</u>. The liens on, and security interests in, the Collateral granted to the

Lender under this Interim Order and pursuant to the DIP Loan Agreement and the DIP Loan

Documents shall not be subordinated to, or made pari passu with, any other lien or security

interest, however and whenever arising, in the Case or any superseding chapter 7 case.

13.     <u>Automatic Perfection of Liens.</u>

(a)     The liens and security interests granted to the Lender hereunder and under the

DIP Loan Agreement and the DIP Loan Documents are valid, binding, continuing, enforceable

and fully-perfected with the priorities herein and therein set forth.

(b)     The Lender shall not be required to file any financing statements, mortgages,

notices of lien or similar instruments in any jurisdiction or filing office, or to take any other

action in order to validate or perfect the liens and security interests granted by or pursuant to this

Interim Order, the DIP Loan Agreement and the DIP Loan Documents.

(c)     Should the Lender, in its sole discretion, from time to time, choose to file such

financing statements, mortgages, notices of lien or similar instruments, take possession of any

Collateral securing the Lender Debt for perfection purposes, or take any other action to protect

from infringement or otherwise validate or perfect any such security interest or lien, the Debtors

and their officers are hereby directed to execute any such documents or instruments as the

Lender shall reasonably request, and all such documents and instruments shall be deemed to

have been filed or recorded at the time and on the date of entry of this Interim Order.

(d)     In the discretion of the Lender, a certified copy of this Interim Order may be filed

with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

directed to accept such certified copy of this Interim Order for filing and recording, and such

certified copy shall be deemed filed and recorded at the time and on the date of entry of this

Interim Order.

(e)<b><u>Carveout</u></b>

14.    Notwithstanding anything to the contrary herein, the liens, security interests, and

Superpriority Administrative Expense Claims granted in favor of the Lender in connection with

the DIP Facility and granted herein in favor of the Pre-Petition Secured Creditors as adequate

protection shall be subject to a carveout (the "Carveout") for the payment of all unpaid fees

payable to the U.S. Trustee under 28 U.S.C. § 1930 in such amounts as determined in agreement

with the U.S. Trustee or by a final order of the Court.  Notwithstanding such Carveout, Lender

shall not be liable for the amount of any Carveout.

<b><u>Termination; Maturity Date.</u></b>

15.    <u>Termination</u>. Notwithstanding the provisions of section 362 of the Bankruptcy Code and

without order of or application or motion to the Court, subject to any applicable grace or cure

period expressly set forth in the DIP Loan Agreement or the DIP Loan Documents, in the event

of (a) the failure of the Debtors to perform any of their material obligations under this Interim

Order, or (b) the occurrence and continuance of an Event of Default, then and upon the

occurrence of either of the foregoing (each a "Termination Event"), and at all times during the

continuance thereof, the Lender may upon not less than three (3) business days prior written

notice to the Debtors and their counsel, the Office of the United States Trustee, and counsel for

the Committee (and prior to its appointment, the Debtors' twenty largest unsecured creditors on a

consolidated basis) and Respondents, exercise any and all rights and remedies allowed under this

Interim Order, the DIP Loan Agreement, the DIP Loan Documents and/or applicable law;

25

provided, however, that notwithstanding the foregoing and section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, if a Termination Event exists, the Lender may do one or more of the following at any time and in any order: (i) reduce the amount of availability under the DIP Facility, (ii) restrict the amount of or refuse to make loans or advances under the DIP Facility or terminate or reduce the Lender commitment to lend under the DIP Facility, and/or (iII) declare the Lender Debt to be immediately due and payable. The Lender's failure to exercise rights under this paragraph shall not constitute a waiver of any of their rights. At any hearing following a Termination Event, the Debtors shall be permitted to contest whether a Termination Event has occurred and is then continuing but may not seek any relief that would in any way restrict or impair the rights and remedies of the Lender set forth in this Interim Order, the DIP Loan Agreement, the DIP Loan Documents and/or applicable law.

16.    <u>Maturity Date</u>. In addition to any rights and remedies of the Lender under the terms of this Interim Order, the DIP Facility shall immediately and automatically terminate and the Lender Debt shall be immediately due and payable upon the Maturity Date as provided in the DIP Loan Agreement.

### **Adequate Protection for the Prepetition Secured Creditors.**

17.    <u>Adequate Protection Liens</u>. As adequate protection for the granting of senior liens to secure the DIP Facility and the Debtors' use of the cash collateral, to the extent of any diminution in value (if any) of the liens (if any) of Respondents in the Assets following the Filing Date, the Prepetition Secured Creditors are granted replacement liens (the "Adequate Protection Liens") in all Collateral to the extent, priority and validity of each of Respondents Prepetition liens. The Adequate Protection Liens shall be junior in priority to the senior liens granted to Lender herein securing the Lender Debt.

18.    <u>No Filing Required</u>. The Prepetition Secured Creditors shall not be required to file any

financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or

filing office, or to take any other action in order to validate or perfect the Adequate Protection

Liens granted by or pursuant to this Interim Order. The Prepetition Secured Creditors shall have

no right to seek or exercise any rights or remedies in respect of the Adequate Protection Liens

unless the Lender has consented thereto or the Lender Debt has been indefeasibly paid and

satisfied in full accordance with the DIP Loan Agreement, the DIP Loan Documents and this

Interim Order.

19.    <u>Superpriority Administrative Expense Claim; Waiver under Section 506(c).</u> In

accordance with section 507(b) of the Bankruptcy Code, the amount of any diminution in value

(if any) of the Prepetition Secured Creditors' liens following the Filing Date shall have the status

of an allowed Superpriority Administrative Expense Claim in the Cases pursuant to section

364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses,

adequate protection claims and all other claims against the Debtors, whether heretofore or

hereafter incurred, of any kind or nature whatsoever, including without limitation, all

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code, and over any and all administrative expenses or other claims arising under sections 105

[subject to entry of Final order], 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final

Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or

attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy

Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy

Code, subject and junior only to the Lender's Superpriority Administrative Expense Claim.

**Miscellaneous Provisions.**

20.    Reporting Requirements. The Debtors are obligated to allow access to the Lender and

their representatives and to provide information with respect to and otherwise comply with the

reporting and disclosure undertakings and agreements set forth in this Interim Order and the DIP

Loan Agreement and the DIP Loan Documents and such obligations shall continue until the

indefeasible payment in full of all Lender Debt and the Lender Parties' commitment to loan

money to the Debtors under the DIP Loan Agreement is terminated.

21.    Binding Effect of Order; Successors and Assigns. The DIP Loan Agreement, the DIP

Loan Documents and this Interim Order shall be binding upon all parties-in-interests in the Case,

including without limitation, the Lender, the Respondents, the Committee and the Debtors and

their respective successors and assigns, including, without limitation, any chapter 11 trustee or

chapter 7 trustee or similar responsible person hereafter appointed as a representative of the

Debtors' estates and any such successors or assigns, without further order of this Court and shall

inure to the benefit of the Lender, the Respondents, the Committee and the Debtors and their

respective successors and assigns. The Debtors and their successors and assigns shall be deemed

authorized and directed to comply with the provisions of this Interim Order, the DIP Loan

Agreement and the DIP Loan Documents. The Lender shall not have any obligation to extend

any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person

appointed for the estates of the Debtors.

23.    No Impairment of Liens and Order. The liens, security interests, Superpriority

Administrative Expense Claims, Lender Debt and other rights and remedies granted to the

Lender under this Interim Order, the DIP Loan Agreement and the DIP Loan Documents, and

any actions taken pursuant hereto or thereto shall survive, and shall not be modified, altered or

impaired in any manner by (a) any other financing or extension of credit or incurrence of debt by

the Debtors (under section 364 of the Bankruptcy Code or otherwise), (b) the entry of an order confirming any plan of reorganization, (c) the entry of an order converting the Case to chapter 7 or dismissing the Case, or (d) the maturity of the Lender Debt. The liens, security interests, claims and any other rights granted to the Lender pursuant to this Interim Order and the DIP Loan Agreement and the DIP Loan Documents shall continue in effect until the Lender Debt is indefeasibly satisfied and paid, and the Lender's commitment to make loans under the DIP Facility has terminated.

24.     <u>Good Faith</u>. Having been found to be extending the Postpetition Financing to the Debtors in good faith, the Lender are entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Lender Debt and the Superpriority Administrative Expense Claims and liens created or authorized by this Interim Order in the event that this Interim Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. If any provision of this Interim Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity, enforceability and priority of any of the Lender Debt or the claims, liens and security interests granted to the Lender under this Interim Order, the DIP Loan Agreement and/or the DIP Loan Documents, and the validity, enforceability or priority of the Lender Debt and the claims, liens and security interests of the Lender shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, privileges and benefits granted herein, including, without limitation, the liens, security interests and priorities granted to the Lender in this.

**<u>Interim Order with respect to all Lender Debt.</u>**

25.    <u>No Third Party Beneficiaries</u>. Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, or any direct, indirect or incidental beneficiary.

26.    <u>No Marshaling</u>. In no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or assets.

27.    <u>Limitations under Section 552(b) of the Bankruptcy Code</u>. Subject to entry of the Final Order, the Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the Collateral under section 552(b) of the Bankruptcy Code.

28.    <u>No Waiver</u>. Lender delay or failure to exercise rights and remedies under the DIP Loan Agreement, the DIP Loan Documents or this Interim Order shall not constitute a waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement, the DIP Loan Documents and this Interim Order.

29.    <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the Lender pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order).

30.    <u>Insurance</u>. The Lender is deemed to be the loss payee under the Debtors' insurance

policies and shall act in that capacity and distribute any proceeds recovered or received in respect

of any such insurance policies to the payment in full of the Lender Debt.

31.    <u>Automatic Stay</u>. The automatic stay imposed by virtue of section 362 of the Bankruptcy

Code is hereby vacated and modified insofar as necessary to permit the Lender to take any action

authorized or contemplated by this Interim Order or the DIP Loan Agreement, the DIP Loan

Documents and to carry out the terms thereof, subject, however, to the satisfaction of any notice,

procedural and other conditions contained in this Interim Order, and/or the DIP Loan Agreement

or the DIP Loan Documents.

32.    <u>No Control</u>. Subject to entry of the Final Order, by consenting to this Interim Order, by

making advances, loans or extending financial accommodations of any type, kind or nature under

this Interim Order or by administering the loans made hereunder, Lender shall not be deemed to

be in control of the operations of the Debtors or to be acting as a "responsible person,"

"managing agent" or "owner or operator" (as such terms or any similar terms are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, as

amended, or any similar Federal or state statute) with respect to the operation or management of

the Debtors.

33.    <u>Indemnification.</u> Subject to the entry of the Final Order, nothing in this Interim Order, the

DIP Loan Agreement or the DIP Loan Documents shall in any way be construed or interpreted to

impose or allow the imposition upon the Lender, any liability for any claims arising from the

prepetition or postpetition activities of the Debtors in the operation of their businesses, or in

connection with their restructuring efforts. So long as the Lender complies with its respective

obligations under this Interim Order, the DIP Loan Agreement and the DIP Loan Documents and

their obligations under applicable law (including the Bankruptcy Code), (a) the Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

34.     _Inconsistency._ In the event of any inconsistency between this Interim Order and the DIP Loan Agreement, the DIP Loan Documents, any document or any other agreement heretofore or hereafter entered into by and between the Debtors and the Lender, the terms of this Interim Order shall govern and control.

35.     _Retention of Jurisdiction._ The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

36.     _Immediate Docketing of Order_. The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Cases.

37.     _Effectiveness_. In accordance with Rule 7052, this Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 400I(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

38.     <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

39.     <u>Notice of Final Hearing; Objections</u>. The Debtors shall, on or before May _____, 2019 transmit copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to such date a request for notices with this Court and to counsel for the Committee, once appointed. The notice of entry of this Interim Order shall state that any party in interest objecting to the Postpetition Financing on a final basis and the entry of the Final Order shall file written objections with the Clerk of the United States Bankruptcy Court for the District of Connecticut no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2019 and shall serve such objections so that the same are received on or before such date by: (a) Neubert, Pepe & Monteith, P.C., 195 Church St., 13th Floor, New Haven, CT 06510; Atn: Doug Skalka Esq., counsel for the Debtors; (b) Halloran & Sage, LLP, 225 Asylum St., 18th Floor, Hartford, CT 06103; Attn: Craig I. Lifland, counsel for the Lender; and (c) the Office of the United States Trustee for the District of Vermont, Leo O'Brien Federal Building, 11A Clinton Avenue, Room 620, Albany, New York  12207-2190; Attn: Amy J. Ginsberg, Esq. and Lisa M. Penpraze, Esq.

41.     <u>Final Hearing</u>. The Final Hearing will be held on _____, 2019 at ___:00 ___.m. (prevailing Eastern Time).

Dated:

# EXHIBIT
## (Budget)

**The Hermitage Club**
 **Confidential**
 **Projected Weekly Cash Flow Analysis**

| 7/20/2019 | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Cash Receipts** | | | | | | | | | | |
| Membership Annual Dues | - | - | - | - | - | - | - | - | - | - |
| Membership and Administrative | - | - | - | - | - | - | - | - | - | - |
| Existing AR (Collections/Sweep)  0% | - | - | - | - | - | - | - | - | - | - |
| Lodging, Food and Beverage | - | - | - | - | - | - | - | - | - | - |
| Snowsports & Mountain Operations | - | - | - | - | - | - | - | - | - | - |
| Clubhouse Amenities | - | - | - | - | - | - | - | - | - | - |
| Golf Course | - | - | - | - | - | - | - | - | - | - |
| Restructure Funds Reserve and Other | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | | |
| **Operating Cash Disbursements** | | | | | | | | | | |
| COGS Disbursements | - | - | - | - | - | - | - | - | - | - |
| Admin Payroll | 9,032 | 9,032 | 9,032 | 9,032 | 9,032 | 9,032 | 9,032 | 9,032 | 9,032 | 9,032 |
| Operations Payroll | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 26,117 | 32,658 | 33,374 |
| Employee Health Benefits | 1,292 | 1,292 | 1,292 | 1,292 | 1,292 | 1,292 | 1,292 | 1,292 | 1,292 | 2,584 |
| Mountain Operations Exp | - | - | - | 2,500 | - | - | - | - | 2,500 | - |
| Snowsports Exp | - | - | - | - | - | - | - | - | - | - |
| Golf Course Exp | 1,940 | 1,940 | 1,543 | 1,543 | 1,543 | 1,543 | 1,868 | 1,868 | 1,868 | 1,868 |
| Clubhouse Amenity Exp | - | - | - | - | - | - | - | - | - | - |
| Food & Beverage Exp | - | - | - | - | - | - | - | - | - | - |
| Other Properties Exp | - | - | - | - | - | - | - | - | - | - |
| Overhead - Utility | - | - | 20,525 | 200 | - | - | - | 20,725 | - | 13,500 |
| **Total Disbursements** | **20,289** | **20,289** | **40,416** | **22,591** | **19,891** | **19,891** | **20,216** | **59,034** | **47,349** | **60,358** |
| | | | | | | | | | | |
| **Net Operating Cash Flow** | **(20,289)** | **(20,289)** | **(40,416)** | **(22,591)** | **(19,891)** | **(19,891)** | **(20,216)** | **(59,034)** | **(47,349)** | **(60,358)** |
| | | | | | | | | | | |
| **Nonoperating Cash Disbursements & Receipts** | | | | | | | | | | |
| Loan Obligations | (567,500) | - | - | - | - | - | - | - | | |
| Equipment, and Insurance Obligations | 23,500 | - | - | - | 27,770 | - | - | - | 27,770 | - |
| Administrative Obligations | 90,000 | - | - | - | 90,000 | - | - | - | - | - |
| Maintenance Allocation | - | - | - | - | - | - | - | - | | |
| Marketing | - | - | 30,000 | - | - | - | - | - | | |
| Professional Fee Escrow | 50,000 | - | - | - | - | - | - | - | - | - |
| US Trustee/Receiver Fees | 1,650 | - | - | - | 1,650 | - | - | - | - | 1,650 |
| **Total Nonoperating Cash Flow** | **(402,350)** | **-** | **30,000** | **-** | **119,420** | **-** | **-** | **-** | **27,770** | **1,650** |
| | | | | | | | | | | |
| **Beginning Cash Balance** | **159,690** | **541,751** | **521,463** | **451,046** | **428,455** | **289,143** | **269,252** | **249,036** | **190,002** | **114,883** |
| | - | | | | | | | | | |
| Net Operating Cash Flow | (20,289) | (20,289) | (40,416) | (22,591) | (19,891) | (19,891) | (20,216) | (59,034) | (47,349) | (60,358) |
| Net Nonoperating Cash Flow | 402,350 | - | (30,000) | - | (119,420) | - | - | - | (27,770) | (1,650) |
| | | | | | | | | | | |
| **Total Cash Flow** | **382,061** | **(20,289)** | **(70,416)** | **(22,591)** | **(139,311)** | **(19,891)** | **(20,216)** | **(59,034)** | **(75,119)** | **(62,008)** |
| | | | | | | | | | | |
| **Ending Cash Balance** | **541,751** | **521,463** | **451,046** | **428,455** | **289,143** | **269,252** | **249,036** | **190,002** | **114,883** | **52,874** |
| | - | - | - | - | - | - | - | - | - | - |