UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
Leo O'Brien Federal Building
11A Clinton Avenue Room 620
Albany, New York 12207
(518) 434-4553

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

In re:

Hermitage Inn Real Estate  Case No.: 19-10214-cab
Holding Company, LLC  Chapter 11
                  Debtor.

In re:

Hermitage Club, LLC  Case No.: 19-10276-cab
                  Debtor.  Chapter 11

**United States Trustee's Motion to Convert or Dismiss Chapter 11 Cases
or in the Alternative to Appoint a Chapter 11 Trustee**

    William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), by and through counsel, and in furtherance of certain duties and responsibilities pursuant to 28 U.S.C. § 586, hereby moves pursuant to 11 U.S.C. § 1112(b)(1) to convert or dismiss the above-captioned cases for cause or in the alternative to appoint a chapter 11 trustee and hereby alleges and states as follows:

### Introduction

    1. The chapter 11 cases of Hermitage Inn Real Estate Holding Company, LLC ("HIREHCO") and Hermitage Club, LLC have been the subject of several orders of this Court, including a venue decision entered June 21, 2019 on both dockets. Although the cases presently are not jointly administered or substantively consolidated, the Debtors filed motions for joint

administration that currently are pending before the Court. For the reasons set forth herein, the United States Trustee seeks conversion or dismissal of both cases at this time or in the alternative, the appointment of a chapter 11 trustee.[1]

2.      It has come to the attention of the United States Trustee that the Debtors are using their internet website to publish and seek support for a proposed plan of reorganization that has neither been filed with nor approved by this Court. In fact, no party has filed a disclosure statement or plan in either of these cases.

3.      Upon information and belief, the Debtors own, operate, and maintain a website at [www.hermitageclub.com](www.hermitageclub.com). A screen shot of the main webpage is below, as accessed on July 8, 2019.



---

[1] Counsel for the United States Trustee and counsel for the Debtors conferred prior to the filing of this motion in compliance with Vt. LBR 9013-1(b).

4. As can be seen from the screen shot, the main page of the Debtors' website contains a dark-colored box entitled "Reorganization Update" and a smaller gray box entitled "More Info."

5. After clicking on the "More Info" box, the reader is directed to a page containing, among other things, a Plan of Reorganization dated June 1, 2019, PowerPoint presentations, and videos including one entitled "Chapter 11 Reorganization vs. liquidation." The website address is: https://hermitageclub.com/member-news/ A copy of the Plan of Reorganization is attached hereto and made a part hereof as Exhibit "A."

6. Among other things, the Debtors state that:

> The Founder has secured a new publicly traded "shell "company (sic) that will be utilized as the platform company to facilitate exit from bankruptcy. Utilizing publicly traded shares in exchange for old company debt obligations in combination with structured cash payments is a key component to the exit strategy and new memberships can be sold and issued once an investor purchases an amount of stock equal to the initiation value from company holdings on future membership options. The plan requires $10M of new capital which is currently being raised in a private placement within the new company.

Exh. A at pg. 4.

7. The Debtors also state that, "prior to the hearing on July 12," counsel for the Debtors will be conducting "a non-binding survey" of creditors and Club members regarding the draft plan. Exh A, pg. 20.

8. As set forth more fully below, the United States Trustee urges the Court to find that: (1) the publication of the Plan of Reorganization and other information on its website; and (ii) surveying the creditors and Club members regarding the Debtors' proposed plan constitute

separate violations of 11 U.S.C. § 1125(b) and cause exists to convert or dismiss these cases, or in the alternative to appoint a chapter 11 trustee.

### Argument

A.  <u>Violations of 11 U.S.C. § 1125(b)(1)</u>

A plan proponent may not solicit creditors or interest holders *prior to* receiving court approval of a disclosure statement. 11 U.S.C. § 1125(b); <u>In re Century Glove, Inc.</u>, 860 F.2d 94 (3d Cir.1988)("1125(b) bars the untimely solicitation of an "acceptance or rejection.""). Once a disclosure statement has been approved by the court, 11 U.S.C. § 1125(b) is no longer a bar against solicitation. Specifically, the statute states:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

No parties have filed disclosure statements in these cases. The Court has not conducted hearings on disclosure statements and no disclosure statements have been approved by the Court. Applying the plain language of the statute, it is clear that because the Court has not yet approved a disclosure statement, the Debtors are not permitted to solicit votes for their proposed plan at this time.

The statute does not define "solicitation" of a plan and courts narrowly construe what constitutes solicitation. The analysis is very fact-specific. <u>Duff v. United States Trustee</u>, 198 B.R. 567, (9th Cir. BAP 1996)(letter from debtor to unsecured creditors debtor expressing hope that they will vote for the plan constituted improper solicitation); <u>In re Snyder</u>, 51 B.R. 432 (Bankr. D. Utah, 1985)(letter from debtor's counsel to all creditors outlining proposed plan

4

treatment prior to approval of disclosure statement was not an improper solicitation); In re Aspen Limousine Services, 198 B.R. 334 (D. Colo. 1995)(creditor's letter criticizing debtor's proposed plan prior to court approval and seeking votes rejecting the plan was improper solicitation).

Concerning the substance of the Debtors' plan as published, it is unknown whether the Debtors have the requisite authority from state and federal regulators to engage in the purchase and sale of publicly trades investments. Also unknown are the details of the "$10M of new capital which is currently being raised in a private placement within the new company." Exh. A at pg. 4. To the extent that the Debtors lack appropriate authority, the Debtors' failed to provide that disclosure.

Where the information disseminated is incorrect or misleading, courts have consistently found that 1125(b) has been violated. In re Snyder, 51 B.R. 432, 437 (Bankr. D. Utah 1985)(finding a violation where the material "contains misrepresentations or deliberate falsehoods and misleading statements calculated to deceive parties entitled to vote"); In re Gulph Woods Corp., 83 B.R. 339, 343 (Bankr. E.D.Pa. 1988)("any mode of communication which would tend to misrepresent or distort the voting process should not be tolerated."); *see also*, In re Mirant Corp., 334 B.R. 787 (Bankr. N.D. Tex. 2005)(finding violation of 1125(e) as the result of soliciting votes using materials that "contain numerous materially incorrect statements of fact and law.").

A number of the Debtors' statements in the published plan are factually and legally incorrect. For example, the Debtors state that, "Berkshire Bank is still seeking a liquidation sale either through an attempt to lift the auto stay in Chapter 11 and proceed with the foreclosure process or seek conversion to a Chapter 7 and force liquidation." Exh. A at pg. 19. The dockets

5

in the cases confirm that Berkshire Bank has not filed any motions for relief from stay or to convert. The Debtors' statements to the contrary are incorrect and misleading.

> The Debtors state:
>> [s]ome creditors are seeking a sale process within Chapter 11. In a typical scenario, if the debtor can't get approval in the 120-day exclusivity period then the court will order that a sale process takes place to sell the assets and pay off creditors within the Chapter 11 process. When this occurs, a marketing company is hired and seeks best and highest bids from all parties. Any party may make a qualified bid. The court will approve the highest and best offer that pays-off secured and unsecured creditors the most of their claim.

Exh. A at pg. 19.

The excerpt above is factually and legally incorrect in numerous respects:

1. There have been no 363 motions filed in either case. The Debtors' statement that creditors are "seeking a sale process" is inaccurate.

2. Failure to gain approval of the Debtors' plan within the exclusivity period will not *ipso facto* result in a Court-ordered sale of the assets.

3. Failure to gain approval of the Debtors' plan within the exclusivity period will not *ipso facto* result in a marketing company being "hired."

4. The statement that "any party" may bid in a bankruptcy sale is incorrect.

5. The statement that the Court "will approve" a sale to the highest bidder is incorrect. The Court is not compelled to approve the highest cash offer.

The Debtors' published statements also contradict express representations made to this Court. For example, concerning the proposed DIP financing, the Debtors' state that, "[t]he DIP loan is essentially funding the bankruptcy case of the holding company HIREHCO and it is not intended nor is it sufficient to fund operations for The Hermitage Club." Exh. A at pg. 7. This is

6

contrary to the Debtors' representations in the DIP Financing Motion that the borrowing is needed in part "to support the Debtors' ongoing operations." ECF Doc 115 at ¶ 33.

The Debtors' statements create a perception that parties must act swiftly to approve the Debtors' plan. The following excerpts demonstrate the artificial time-pressure created by the Debtors (emphasis added):

> (i) "The reorganization plan is reliant on *swift acceptance* from a majority of its creditors;" Exh. A at pg. 4.
>
> (ii) "The company has set a timetable of 60 days to gain initial support and then request *30 day expedited* distribution of the Plan of Reorganization;" Exh. A at pg. 9.
>
> (iii) "Delays- Costly in Time and Money: The Club filed May 28 with an emergency motion to approve DIP financing *within 5 days*;" Exh. A at pg. 18.
>
> (iv) "*Time is of the essence* to get a plan approved and reopen in time for the season;" Exh. A at pg. 19.
>
> (v) "the plan provides reasonable assurance of a *speedy reopening*;" Exh. A at pg. 9.
>
> (vi) "If we make good progress in getting early acceptance, we can ask the court for an *expedited distribution* of the disclosure statement;" Exh. A at pg. 20.
>
> (vii) "The Club is presenting a Plan which seeks member and creditor acceptance in a *compressed 60-day window*." Exh. A at pg. 7.
>
> (viii) "this process would allow for an expedited plan approval." Exh. A at pg. 9.

7

It appears that these statements have been made to improperly induce creditors to vote for the Debtors' plan by creating unfounded fears about what will happen if the Debtors' plan is not approved. It also appears that the Debtors have manufactured artificial deadlines to create a false sense of urgency and thereby limit due diligence that might otherwise be undertaken by the creditors and members of the Debtors.

The Debtors are engaged in prohibited actions intended to improperly subvert the disclosure statement and plan process, and to unduly influence creditors and members of the Club to approve the plan desired by Debtors' management. This activity must not be countenanced as it is contrary to the letter and the spirit of the Bankruptcy Code and destructive to the integrity of the bankruptcy system.

B.    Cause to Convert or Dismiss

Pursuant to 11 U.S.C. § 1112(b)(1), a court "shall convert a case . . . or dismiss a case . . . whichever is in the best interests of creditors and the estate, for cause." The burden of demonstrating cause rests with the moving party. In re The AdBrite Corporation, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2001)(citations omitted). *See also* Taub v. Taub, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010)(movant bears the burden of proving cause by a preponderance of the evidence).

The burden of proof can be met either by demonstrating the existence of one or more of the statutory grounds enumerated in section 1112(b) or by showing other "cause." C-TC 9th Ave. Partnership v. Norton Co., 113 F.3d 1304, 1311 (2d Cir.1997); In re R&G Properties, Inc., 2009 WL 1076703 (Bankr. Vt., Apr. 16, 2009). The bankruptcy court has "wide discretion to determine if cause exists and how to ultimately adjudicate the case." In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007).

8

There is cause to convert or dismiss these cases based on breach of fiduciary duties. As detailed above, the Debtors' current management has engaged in actions that undermine the integrity of the bankruptcy process. "As a fiduciary, the debtor is obligated . . . to provide voluntary and honest disclosure of financial information—a reasonable 'quid pro quo' for its temporary relief from substantial financial obligations." In re Sal Caruso Cheese, Inc., 107 B.R. 808, 817 (Bankr. N.D.N.Y. Jul. 17, 1989). Disseminating solicitation material that contains something other than "only truthful information" violates the duties of a fiduciary in a bankruptcy case. In re Mirant Corp., 334 B.R. 787, 793 (Bankr. N.D. Tex., Oct. 27, 2005).

The actions of Debtors' current management are antithetical to the fiduciary duties of a chapter 11 debtor. By publishing a plan of reorganization on the Debtors' website, along with other solicitation materials (videos, PowerPoint presentations, etc.) that have neither been submitted to nor approved by the Court, without an approved disclosure statement, where the plan contains materially incorrect and misleading statements, the Debtors' management has demonstrated an inability to meet the significant fiduciary responsibilities imposed by the Bankruptcy Code. As such, there are grounds to convert or dismiss the cases. AdBrite Corp. at 217, citations omitted.

C.   Alternative Relief

If the Court finds that the United States Trustee has met his burden to show that cause to convert or dismiss exists, but the best interests of creditors would not be served by either conversion or dismissal, then the United States Trustee seeks the alternative relief set forth in 11 U.S.C. § 1112(b)(1) for the appointment of a chapter 11 trustee.

9

**WHEREFORE**, the United States Trustee requests that the Court grant this motion to convert or dismiss, or in the alternative appoint a chapter 11 trustee, and for such other and further relief as the Court deems just and proper.

Dated: Albany, New York  
July 10, 2019

Respectfully submitted,

WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE

/s/ Lisa M. Penpraze  
By: Lisa M. Penpraze  
Assistant United States Trustee  
Leo O'Brien Federal Building  
11A Clinton Ave, Room 620  
Albany, New York 12207  
Bar Roll No.: 105165  
lisa.penpraze@usdoj.gov  
Voice: (518) 434-4553