# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

<table>
<tr><td>_____x</td><td></td></tr>
<tr><td>In re:</td><td>:   CHAPTER 11</td></tr>
<tr><td>HERMITAGE INN REAL ESTATE<br>HOLDING COMPANY, LLC,</td><td>:   CASE NO.   19-10214 (CAB)</td></tr>
<tr><td>Debtor.</td><td>:</td></tr>
<tr><td>_____x</td><td></td></tr>
<tr><td>HERMITAGE INN REAL ESTATE<br>HOLDING COMPANY, LLC</td><td>:</td></tr>
<tr><td>Movant,</td><td>:</td></tr>
<tr><td>v.</td><td>:</td></tr>
<tr><td>15-HERMITAGE, LLC, A&W REALTY LLC,<br>ALBERT SUBBLOIE, ANN COLEMAN,<br>ATOMIC PROFESSIONAL AUDIO INC,<br>AUSTIN DESIGN INC.,<br>BERKSHIRE BANK,<br>BROWNS COUNTRY SERVICES LLC,<br>BSA ARCHITECTS, INC.,<br>BUILDERS SERVICES, INC.,<br>CAROL H. BUTLER TRUST,<br>CHARLES COLLINS & ANA CLADERA,<br>COLD BROOK FIRE DISTRICT NO. 1,<br>CRAIG DOERSCH PAINTING, LLC,<br>DAN AND JOHN LANE<br>dba LANE PLUMBING & HEATING, INC.<br>DAN MCLEOD,<br>DAN SOLAZ, DAVID MANNING INC,<br>DELL FINANCIAL SERVICES LLC,<br>DONALD JABRO,<br>FISHER AND FISHER LAW OFFICES,<br>FRED H. HAMBLET, LLC,<br>GORDON BRISTOL CONSULTING, LLC<br>GREEN MOUNTAIN POWER CORP,<br>GREENFIELD GLASS COMPANY,<br>GRENOBLE GROUP,<br>HARRINGTON ENGINEERING INC.,<br>INTERNATIONAL FINANCIAL SVCS CORP<br>IRON HORSE STANDING SEAM</td><td>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:</td></tr>
</table>

1

ROOFING CO,                                    :
JOYCE LAND SURVEYING CORP,                     :
KEY DRILLING & BLASTING SVCS,                  :
LAKELAND BANK,                                 :
LPV,                                           :
MACROLEASE CORPORATION,                        :
MANCHESTER CARPET CARE INC.,                   :
MATTHEW CURTIS,                                :
METROPOLITAN GOLF ASSN,                        :
MICHAEL FAYETTE                                :
dba MFAYETTE CARPENTRY, LLC,                   :
MICHAEL FAYETTE STEPHEN KUNKLE                 :
dba STEPHEN KUNKLE CARPENTRY,                  :
MOUNTAIN GLASS AND LOCK CORP,                  :
MR STEEL ACQUISITION CORP.,                    :
NEC FINANCIAL SERVICES LLC,                    :
NORDIC VALLEY PROPERTIES LLC,                  :
NORTHERN BUILDING SUPPLIES, INC,               :
NS LEASING, LLC,                               :
OAKLEAF MARINE MANAGEMENT CORP,:
PIONEER TIMBER FRAMES LLC,                     :
PJB HOME CENTER, INC.,                         :
PLIMPTON EXCAVATING LLC,                       :
RCN CAPITAL LLC,                               :
RCN CAPITAL LLC, ATIMA,                        :
REINHART EQUIPMENT,                            :
REINHART FOODSERVICE, LLC,                     :
ROBERT FISHER,                                 :
RTM CAPITAL PARTNERS, INC.,                    :
SETH AND JENNIFER GOODMAN,                     :
SHEFFIELD FINANCIAL,                           :
SOUTHWORTH ELECTRICAL INC,                     :
SPRUNG STRUCTURES,                             :
SQUIRE CAPITAL, STEPHEN KUNKLE,                :
STEPHEN KUNKLE                                 :
dba STEPHEN KUNKLE CARPENTRY,                  :
SVT MASONRY INCORPORATED,                      :
SWAN ELECTRIC, INC.,                           :
SYSCO ALBANY, LLC,                             :
TEREX FINANCIAL SERVICES, INC.,                :
TEREX FINANCIAL SERVICES, INC.,                :
TFT HOLDINGS, LLC,                             :
THE INN AT SAWMILL FARM, LLC,                  :
THOMAS WHIT & ELIZ ARMSTRONG,                  :
TRINITY ENGINEERING &                          :
TECHNICAL SERVICES, LLC,                       :

TRIPLE T TRUCKING,                              :
TRUE WORLD FOODS BOSTON, LLC,                   :
TYLER AND ROSE DICKSON,                         :
VARESCHI PLUMBING & HEATING,                    :
VERMONT DEPARTMENT OF TAX,                      :
W&W BUILDING SUPPLY,                            :
WALKER KIMBALL,                                 :
WESTERN EQUIPMENT FINANCE, INC,                 :
WINDHAM ARCHITECTURAL METALS,                   :
                                                :
            Respondents.                        :
_____x
_____x
                                                :
In re:                                          :    CHAPTER 11
                                                :
HERMITAGE CLUB, LLC                             :    CASE NO.  19-10276 (CAB)
                                                :    (Jointly Administered)
            Debtor.                             :
_____x
                                                :
HERMITAGE CLUB, LLC                             :
                                                :
            Movant,                             :
                                                :
v.                                              :
                                                :
                                                :
BERKSHIRE BANK,                                 :
CORPORATION SERVICE CO, AS REP,                 :
DELL FINANCIAL SERVICES, LLC,                   :
INTERNATIONAL FINANCIAL SVCS CORP              :
NEC FINANCIAL SERVICES LLC,                     :
REINHART FOODSERVICE, LLC,                      :
SYSCO ALBANY, LLC,                              :
TCF EQUIPMENT FINANCE,                          :
WEBBANK,                                        :
            Respondents.                        :
_____x


**FINAL  ORDER (I) AUTHORIZING DEBTORS TO OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §105(a), 364(c) and (d), (II)
AUTHORIZING DEBTOR TO USE CASH COLLATERAL, (III) GRANTING
ADEQUATE PROTECTION INCLUDING SENIOR FIRST PRIORITY LIENS AND
SUPERPRIORITY CLAIMS TO THE DIP LENDER PURSUANT TO 11 U.S.C. §364(d),
AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated July 14, 2019 (the "Motion"), of Hermitage Inn Real Estate

Holding Company, LLC (hereafter "HIREHCO") and Hermitage Club, LLC (hereafter "HCL"

and collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "Case"), for final orders under sections 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code (as

amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and the Local Rules of Bankruptcy

Practice and Procedures for the United States Bankruptcy Court for the District of Vermont (the

"Local Bankruptcy Rules"), seeking, *inter alia*:

(a)     authorization for the Debtors to obtain postpetition financing (collectively, the "Postpetition Financing" or the "DIP Facility") up to a maximum outstanding principal amount of $1,750,000 in accordance with, the Debtor-In-Possession Loan and Security Agreement among the Debtors, as borrowers, and Restructured Opportunity Investors, Inc. and its designee and/or assigns, as lender (the "Lender") (the "DIP Loan Agreement"), together with such other documents and agreements required by the Lender (the "DIP Loan Documents").

(b)     authorization for the Debtors to obtain from the Lenders advances in amounts not to exceed a maximum outstanding principal amount of $1,750,000 (the "Total Commitment" or "Lender Debt") in accordance with the DIP Loan Agreement, the DIP Loan Documents and the Final Order;

(c)     authorization for the Debtors to execute and deliver the DIP Loan Agreement and the DIP Loan Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(d)     authorization for the Debtors to grant to the Lender assurances for the full and timely repayment of the Loan by granting to the Lender (i) pursuant to section 364(c)(I) of the Code, a superpriority administrative expense claim (a "Superpriority Administrative Expense Claim") having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code; and (ii) pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, senior first priority liens on, and security interests in, any and all of the Debtors' assets and personal property excluding recoveries from avoidance actions under Chapter 5 of the Bankruptcy Code;

(e)    Authorization for the Debtors to grant to the Lender a first priority mortgage on all Real Property (as hereafter defined) owned by Debtors, assignment of leases and rents, and environmental indemnity; and

(f)    authorization for the Debtors to use and operate their assets, including the Cash Collateral (as defined below) and approving the grant of adequate protection to the Respondents above (as defined below) as provided herein.

The Debtors having requested in the Motion a hearing be scheduled to consider entry of this Order; and notice of such hearing having been given to (a) the U.S. Trustee; (b) counsel to the Lender (as defined below); (c) counsel to Respondent Berkshire Bank; (d) counsel to each of the Respondents identified above, and their counsel if known; (e) counsel to the Ad Hoc Committee of Creditors; (f)  counsel to the Town of Wilmington and (f) the twenty largest unsecured creditors of each of the Debtors (collectively, the "Notice Parties"); and it appearing that on the record made in the Case no other or further notice need be given; and the Lender having agreed to provide the Postpetition Financing in accordance with the DIP Loan Agreement and this Order.

NOW, THEREFORE, upon the Motion and the record of the Hearing held before the Court on July 26, 2019; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

Based upon the record presented to the Court, it appears that:

A.    Filing. On May 28, 2019, (the "Filing Date"), each of the Debtors filed a voluntary petition for reorganization in the United States Bankruptcy Court, District of Connecticut, under chapter 11 of the Bankruptcy Code. On May 22, 2019, an involuntary petition by petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. (the "Bankruptcy Code") filed by Bobbi Resek, Dan Solaz and Lakeland Bank (against HIREHCO (the "Involuntary Case") in this Court. On June 19, 2019, this Court entered a Memorandum of

Decision Determining Vermont to be the Proper Venue for Three Hermitage Cases (ECF No. 91) and an Order Determining Vermont to be the Proper Venue for Three Hermitage Cases (ECF No. 92)(the "Venue Order"). Pursuant to the terms of the Venue Order, the Chapter 11 Cases were transferred to this Court. By Order of this Court dated June 28, 2019, the Involuntary Case was converted to a case under Chapter 11  and  the Chapter 11 case of HIREHCO was consolidated therewith and is pending as a Chapter 11 case in this Court,  Case No. 19-10214. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Debtors' Pre-Petition Secured Debt

        (i)      Prepetition Senior Credit Documents with Berkshire Bank.

        1.      HIREHCO, as borrower, is a party to a construction loan agreement and related documents dated September 30, 2013 pursuant to which Berkshire Bank ("Berkshire") extended a secured financing facility to HIREHCO in the original principal sum of $20,000,000, as evidenced by a certain Second Amended and Restated Promissory Note in the original principal amount of $15,000,000; as further evidenced by that certain Third Amended and Restated Promissory Note dated June 28, 2016 in the original principal amount of $1,000,000 and as further evidenced by that certain Promissory Note dated as of July, 2017 in the original principal amount of $1,100,000, all as secured by a Construction Mortgage and Security Agreement dated September 30, 2013 and recorded in the Town of Wilmington and the Town Dover Land Records on real property owned by HIREHCO and located in the Towns of Wilmington and Dover, VT, (the "Real Property", and all of the Berkshire Loans are collectively the "Berkshire Loan Facility").

        2.      A portion of the real property secured by the Berkshire Loan Facility is leased by the Debtor from the Town of Wilmington and the Wilmington Water District.  The Town of Wilmington and the Wilmington Water District, as Landlord under the ground lease entered into a certain Ground Lease Consent and Recognition Agreement dated March 9, 2015 and recorded in the Wilmington Land Records consenting to the Berkshire Loan Facility.

        3.      HCL and HIREHCO granted to Berkshire a security interest in all of their respective personal property to secure the indebtedness under the Berkshire Loan Facility by Security Agreements each  dated September 30, 2013.  In order to perfect the security interests, Berkshire filed UCC financing statements with the Connecticut Secretary of State.

        4.      On December 3, 2014, HIREHCO, the Club  and James R. Barnes entered into a Second Amended and Restated Construction Loan Agreement, as amended by First Amendment of Loan Agreement and Other Loan Documents dated June 28, 2016, Second Amendment of Loan Agreement and Other Loan Documents dated February 10, 2017, Third Amendment of Loan

6

Agreement and other Loan Documents dated June 14, 2017 and Fourth Amendment of Loan Agreement and Other Loan Documents dated July 18, 2017 to secure the Berkshire Loan Facility.

5.      By Amended and Restated Payment and Completion Guaranty dated December 3, 2014, as amended, James R. Barnes executed a guaranty of the obligations of HIRECHO to Berkshire.

6.      Berkshire declared a default under the Berkshire Loan Facility and the parties entered a certain Forbearance Agreement dated December 30, 2016 as amended by Second Amendment to Forbearance Agreement dated July 18, 2017 and as further amended by Amended and Restated Forbearance Agreement dated November 30, 2017.

7.      As of the Petition Date, the Debtors were indebted to Berkshire in the approximate amount of $19 million dollars with such amounts secured by first priority liens on the Debtors assets with the exception of Permitted Liens (as defined in the Berkshire Loan Documents).

8.      **Involuntary Liens and Encumbrances on the Debtors' Real Property.**   The following liens are recording against the Debtors' real property, which liens are subsequent and subordinate to the liens of Berkshire.  The following entities may claim an interest in such property (collectively, the "Prepetition Involuntary Liens"):

a.      BSA Architects, Inc. d/b/a Bull Stockwell Allen may claim an interest in the Real Property by virtue of a Mechanic's Lien dated June 24, 2016 in the amount of $338,717.81 and recorded on June 27, 2016 in the Town of Dover Land Records, and that certain Writ of Attachment and Order of Approval dated August 31, 2016 and recorded in the Town of Wilmington and Town of Dover Land Records and that certain Judgment order to Stipulation dated February 8, 2017 in the amount of $430,000 and recorded in the Wilmington Land Records and the Dover Land Records.

b.      MR Steel Acquisition Corp. d/b/a Ameri-Fab may claim an interest in the Real Property in the amount of $58,750.00 by virtue of a Notice of Mechanics Lien dated February 13, 2017 and recorded in the Wilmington Land Records.

c.      Thomas Whit Armstrong, Jr. and Elizabeth Armstrong may claim an interest in the Real Property by virtue of a Writ of Attachment and order of Approval dated April 20, 2017 in the amount of $227,186.36 and by Order dated October 23, 2017 in the amount of $198,242.12 recorded in the Wilmington Land Records.

d.      PJB Home Center, Inc. d/b/a Perkins Home Center may claim an interest in the Real Property by virtue of a Mechanics Lien dated May 10, 2017 in the amount of $4,093.35 recorded in the Wilmington Land Records  and a Notice of Mechanics Lien dated May 10, 2017 in the amount of $30,645.19 recorded in the Wilmington Land Records and a Contractor's Lien dated May 8, 2017 in the amount of $7,556.11, recorded in the Dover Land Records.

e.      Green Mountain Power Corporation may claim an interest in the Real Property by virtue of a Stipulated Writ of Attachment dated June 12, 2017 in the amount of $257,628.11 recorded in the Wilmington Land Records.

f.      Michael Fayette d/b/a MFayette Carpentry, LLC may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien in the amount of $18,844.00 recorded on July 6, 2017 in the Wilmington Land Records.

g.      Stephen Kunkle d/b/a Stephen Kunkle Carpentry may claim an interest in

the Real Property by virtue of a Notice of Mechanics Lien in the amount of $19,140 recorded on July 6, 2017 in the Wilmington Land Records.

h.      Dan and John Lane d/b/a Lane Plumbing & Heating, Inc. may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien dated July 6, 2017 in the amount of $68,504.33 recorded in the Wilmington Land Records.

i.      Southworth Electrical, Inc. may claim an interest in the Real Property by virtue of a Memorandum of Lien dated July 10, 2017 in the amount of $66,090.44 recorded in the Wilmington Land Records.

j.      Swan Electric, Inc. may claim an interest in the Real Property by virtue of a Notice of Contractor's Lien dated July 10, 2017 in the amount of $62,510.60 recorded in the Wilmington Land Records.

k.      SVT Masonry Incorporated may claim an interest in the Real Property by virtue of a Judgment in the amount of $103,719.21 recorded on May 30, 2018 in the Wilmington Land Records and relating to a Notice of Lien dated July 14, 2017 in the amount of $89,950 recorded in the Wilmington Land Records.

l.      Seth Goodman and Jennifer Goodman may claim an interest in the Real Property by virtue of a Writ of Attachment dated July 21, 2017 in the amount of $986,495.21 recorded in the Wilmington Land Records.

m.      Craig Doersch Painting, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated August 2, 2017 in the amount of $76,834.00 recorded in the Wilmington Land Records.

n.      Mountain Glass & Lock Corporation may claim an interest in the Real Property by virtue of a Notice of Claim of Lien dated August 11, 2017 in the amount of $44,872.50 and by Stipulated Writ of Attachment dated November 8, 2017 in the amount of $54,057.02 recorded in the Wilmington land Records.

o.      Vareschi Plumbing & Heating may claim an interest in the Real Property by virtue of a Notice of Lien dated August 17, 2017 in the amount of $15,220.00 recorded in the Wilmington Land Records.

p.      Manchester Carpet Care, Inc. may claim an interest in the Real Property by virtue of a Notice of Lien dated August 9, 2017 in the amount of $39,875.09 recorded in the Wilmington Land Records.

q.      Windham Architectural Metals may claim an interest in the Real Property by virtue of a Notice of Lien dated October 4, 2017 in the amount of $16,209.16 recorded in the Wilmington Land Records.

r.      Sysco Albany, LLC may claim an interest in the Real Property by virtue of a Judgment Order dated August 31, 2017 in the amount of $23,541.61 recorded in the Wilmington Land Records.

s.      Greenfield Glass Company may claim an interest in the Real Property by virtue of a Notice of Lien dated October 24, 2017 in the amount of $4,928.88 recorded in the Wilmington Land Records.

t.      Austin Design Inc. may claim an interest in the Real Property by virtue of a

Notice of Lien dated October 24, 2017 in the amount of $20,501.25 recorded in the Wilmington Land Records.

u.       Iron Horse Standing Seam Roofing Co. a/k/a Iron Horse Roofing Co. may claim an interest in the Real Property by virtue of a Preliminary Lien Notice dated November 27, 2017 in the amount of $25,631.11 recorded in the Wilmington Land Records.

v.       Reinhart FoodService, LLC may claim an interest in the Real Property by virtue of a Writ of Attachment dated November 27, 2017 in the amount of $1,587,448.10 recorded in the Wilmington and Dover Land Records.

w.       Reinhart FoodService LLC may further claim an interest in the Real Property by virtue of a Writ of Attachment dated January 25, 2018 in the amount of $1,587,448.10 recorded in the Wilmington and Dover Land Records.

x.       Gordon Bristol d/b/a Gordon Bristol Consulting, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated December 18, 2017 in the amount of $57,080.58 recorded in the Wilmington Land Records.

y.       Michael Fayette and Stephen Kunkle d/b/a Stephen Kunkle Carpentry may claim an interest in the Real Property by virtue of a Writ of Attachment and Order of Approval dated January 2, 2018 in the amount of $30,959.55 recorded in the Wilmington Land Records.

z.       Pioneer Timber Frames LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated January 5, 2018 in the amount of $16,520.00 recorded in the Wilmington Land Records.

aa.      Trinity Engineering & Technical Services, LLC may claim an interest in the Real Property by virtue of a Notice of Mechanics Lien dated January 16, 2018 in the amount of $13,557.75 recorded in the Wilmington and Dover Land Records.

bb.      Trinity Engineering & Technical Services, LLC may further claim an interest in the Real Property by virtue of a Notice of Mechanic's Lien dated January 16, 2018 in the amount of $9,743.65 recorded in the Dover Land Records.

cc.      Metropolitan Golf Association may claim an interest in the Real Property by virtue of a Judgement Order dated October 30, 2017 and certified on January 16, 2018 in the amount of $50,358.84 recorded in the Wilmington Land Records.

dd.      Pamela Keefe, Trustee of the Carol H. Butler Trust may claim an interest in the Real Property by virtue of a Writ of Attachment dated January 30, 2018 in the amount of $1,092,993.16 recorded in the Wilmington Land Records.

ee.      Fred H. Hamblet, LLC may claim an interest in the Real Property by virtue of a Notice of Lien dated April 13, 2017 in the amount of $21,990.00 recorded in the Dover Land Records.

ff.      Joyce Land Surveying Corp. may claim an interest in the Real Property by virtue of a Notice of Contractors Lien dated February 5, 2018 in the amount of $7,374.98 recorded in the Wilmington and Dover Land Records.

gg.      Tyler Dickson and Rose Stewart Dickson may claim an interest in the Real Property by virtue of a Writ of Attachment dated February 9, 2018 in the amount of $1,005,000.00 recorded in the Wilmington Land Records.

hh.     Brown's Country Services, LLC may claim an interest in the Real Property by virtue of a Notice of Lien in the amount of $150,382.86 recorded on February 21, 2018 in the Wilmington Land Records.

ii.     Dan Solaz may claim an interest in the Real Property by virtue of a  Writ and Order in the amount of $314,000.00 recorded on February 26, 2018 in the Wilmington Land Records.

jj.     Plimpton Excavating, LLC may claim an interest in the Real Property by virtue of an Order in the amount of $37,102.84 recorded on August 9, 2018 in the Wilmington Land Records relating to a Mechanic's Lien   recorded on March 7, 2018 in the Wilmington Land Records.

kk.     Key Drilling & Blasting Services, Inc. may claim an interest in the Real Property by virtue of a Mechanic's lien in the amount of $66,600.00 recorded on March 7, 2018 in the Wilmington Land Records.

ll.     Builders Services, Inc. may claim an interest in the Real Property by virtue of an interest recorded on March 12, 2018 at Book 347, Page 247 of the Dover Land Records.

mm.     Harrington Engineering, Inc. may claim an interest in the Real Property by virtue of an interest in the amount of $39,953.59 recorded on March 12, 2018  at Book 339, Page 159 of the Wilmington Land Records and recorded on March 9, 2018 at Book L11, Page 404 of the Dover Land Records.

nn.     Ann Coleman may claim an interest in the Real Property by virtue of a lien in the amount of $1,670.44 recorded on March 12, 2018 in the Wilmington Land Records.

oo.     Northern Building Supplies, Inc. may claim an interest in the Real Property by virtue of an Order in the amount of $151,744.44 recorded on July 2, 2018 in the Wilmington Land Records and relating to a Mechanic's Lien in the amount of $121,999.13 recorded on March 13, 2018 in the Wilmington Land Records and recorded on March 6, 2018 in the Dover Land Records.

pp.     Triple T Trucking may claim an interest in the Real Property by virtue of a Mechanic's Lien in the amount of $34,634.31 recorded on March 20, 2018 in the Wilmington and Dover Land Records.

qq.     Triple T Trucking may claim a further interest in the Real Property by virtue of a Mechanic's Lien in the amount of $1,981.50 recorded on March 20, 2018 in the Wilmington Land Records.

rr.     Dan Solaz may claim a further interest in the Real Property by virtue of a Writ in the amount of $314,000 recorded on April 2, 2018 relating to a Mechanic's Lien recorded on March 21, 2018 in the Wilmington Land Records.

ss.     Charles T. Collins and Ana Cladera may claim an interest in the Real Property by virtue of a Judgment in the amount of $1,107,192.00 recorded on June 29, 2018 in the Wilmington Land Records relating to a Write recorded on March 21, 2018 in the Wilmington Land Records.

tt.     David Manning, Inc. may claim an interest in the Real Property by virtue of an Order in the amount of $34,805.97 recorded on August 29, 2018 in the Wilmington Land

Records relating to a Mechanic's Lien recorded on April 6, 2018 in the Wilmington Land Records.

uu.     TFT Holdings, LLC may claim an interest in the Real Property by virtue of a Judgment in the amount of $1,458,249.00 recorded on June 29, 2018 in the Wilmington Land Records relating to a Writ recorded on April 9, 2018 in the Wilmington Land Records.

vv.     Cold Brook Fire District may claim an interest in the Real Property by virtue of a lien in the amount of $255.42 recorded on May 10, 2018 in the Wilmington Land Records.

ww.     Atomic Professional Audio, Inc. may claim an interest in the Real Property by virtue of a Judgment in the amount of $71,372.96 recorded on June 21, 2018 in the Wilmington Land Records.

xx.     True World Foods Boston LLC may claim an interest in the Real Property by virtue of an Order in the amount of $10,790.58 recorded on August 9, 2018 in the Wilmington Land Records.

yy.     Cold Brook Fire District may claim a further interest in the Real Property by virtue of a lien in the amount of $6,250.00 recorded on August 15, 2018 in the Wilmington Land Records.

9.     **<u>Tax Liens on the Debtors' Real Property.</u>**  The State of Vermont Department of Taxes may claim an interest in the Real Property by virtue of (i) a State Tax Lien dated July 25, 2017 in the amount of $185,239.07 and recorded in the Wilmington Land Records; (ii) a State Tax Lien dated September 7, 2017 in the amount of $114,450.24 and recorded in the Wilmington Land Records; (iii) a State Tax Lien dated September 13, 2017 in the amount of $299,151.87 and recorded in the Wilmington Land Records; (iv) a State Tax Lien dated August 10, 2017 in the amount of $185,897.61 and recorded in the Wilmington Land Records; and (v) a State Tax Lien dated October 20, 2017 in the amount of $4,396.90 and recorded in the Wilmington Land Records (collectively, the "Tax Liens").

10.     **Mortgages Affecting the Debtors' Real Property**. In addition to the mortgages held by Berkshire, the following entities hold mortgages secured by the Real Property (collectively, the "Prepetition Subordinate Mortgages"):

a.     Donald and Savannah Jabro may claim an interest in the Real Property by virtue of a mortgage securing the original principal amount of $450,000.00 which mortgage was recorded on May 1, 2017 in the Wilmington Land Records.

b.     Fisher & Fisher Law Offices may claim an interest in the Real Property by

virtue of a mortgage securing the original principal amount of $143,727.72 which mortgage was recorded on November 17, 2017 in the Wilmington Land Records.

        c.      RTM Capital Partners, Inc., LPV, 15-Hermitage, LLC and Matthew Curtis may claim an interest in the Real Property by virtue of a mortgage deed securing the original principal amount of $2,080,527.77, which mortgage was recorded on December 20, 2017 in the Wilmington Land Records.

        11.      In addition to the liens affecting the Real Property, there are liens affecting the Personal Property assets of the Debtors.  The following is a schedule of liens affecting the Personal Property assets (collectively, the "Personal Property Liens"):

        a.      Barnstormer Summit Lift, LLC may claim an interest in the Personal Property owned by HIREHCO (the "Barnstormer Collateral") by virtue of Original Financing Statement No. 0003128812 recorded with the Connecticut Secretary of State and Original Financing Statement No. 16-300965 recorded with the Vermont Secretary of State;

        b.      Berkshire Bank may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement Nos. 0002961631 and 0002993655 recorded with the Connecticut Secretary of State;

        c.      Corporation Service Company, as Representative may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003016672 recorded with the Connecticut Secretary of State;

        d.      Dell Financial Services, LLC may claim an interest in the Personal Property owned by the Club virtue of Original Financing Statement No. 0002956221 recorded with the Connecticut Secretary of State;

        e.      International Financial Services Corporation may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement No. 0003021288 recorded with the Connecticut Secretary of State and Original Financing Statement No. 14-274506 recorded with the Vermont Secretary of State;

        f.      Lakeland Bank may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003103361 recorded with the Connecticut Secretary of State;

        g.      Macrolease Corporation may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003021633 recorded with the Connecticut Secretary of State;

        h.      NEC Financial Services, LLC may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement Nos. 0003057636, 0003059810, 0003093807, and 0003095460 recorded with the Connecticut Secretary of State;

       i.     Nordic Valley Properties, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 14-277361 recorded with the Vermont Secretary of State;

       j.     NS Leasing, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement Nos. 16-301105 and 17-309506 recorded with the Vermont Secretary of State;

       k.     RCN Capital, LLC, ATIMA may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003026452 recorded with the Connecticut Secretary of State and Original Financing Statement No. 14-275621 recorded with the Vermont Secretary of State;

       l.     Reinhart Foodservice, LLC may claim an interest in the Personal Property owned by the Debtors by virtue of Original Financing Statement No. 0003214434 recorded with the Connecticut Secretary of State and Writ of Attachment 17-325079 recorded with the Vermont Secretary of State;

       m.     Sysco Albany, LLC may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement No. 0003176847 recorded with the Connecticut Secretary of State;

       n.     TCF Equipment Finance division of TCF National Bank may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement Nos. 0003060165 and 0003122563 recorded with the Connecticut Secretary of State;

       o.     Terex Financial Services, Inc. may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003161474 recorded with the Connecticut Secretary of State and Original Financing Statement No. 17-310389 recorded with the Vermont Secretary of State;

       p.     The Inn at Sawmill Farm, LLC may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement Nos. 15-278506 and 15-278507 recorded with the Vermont Secretary of State;

       q.     Webbank may claim an interest in the Personal Property owned by the Club by virtue of Original Financing Statement No. 0003019760 recorded with the Connecticut Secretary of State; and

       r.     Western Equipment Finance, Inc. may claim an interest in the Personal Property owned by HIREHCO by virtue of Original Financing Statement No. 0003159592 recorded with the Connecticut Secretary of State.

     12.     The (i) Berkshire Loan Facility; (ii) the Prepetition Involuntary Liens; (iii) the

Prepetition Subordinated Mortgages; and (iv) the Personal Property Liens are hereinafter

collectively referred to as the "Prepetition Secured Debt".

13.     As of the Petition Date, the Debtors have aggregate unsecured debts (excluding claims by members of the Resort) totaling approximately $4.5 million, for merchandise, utilities, professional fees, insurance, and employee-related expenses.

14.     As of the Petition Date, the Debtors assert the value of their assets are $$50,000,000 and exceed the value of the Prepetition Secured Debt.

C.     Need for Postpetition Financing and Use of Prepetition Collateral

15.     The Debtors own and operate a four-season private membership only ski and golf club located in Wilmington, Vermont and known as The Hermitage Resort.  The Debtors' assets include The Hermitage Inn, The Haystack Mountain Ski Resort and adjacent 18-hole championship golf course and real estate designed to be developed into a private, member only resort with 450 private homes and condominiums.

16.     The Debtors have an immediate need to obtain the Postpetition Financing and to use their assets including any and all cash receipts ("Cash Collateral") which is the subject to the liens of Pre-Petition Secured Creditors. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Postpetition Financing and the Debtors' use of its cash receipts.  The ability of the Debtors to pay employees, maintain insurance and business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' ability to restart operations. Without the Postpetition Financing and the Debtors' use of its assets, including any cash receipts, the operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their creditors and estates would result. The purpose of the

Postpetition Financing and the Debtors' use of cash collateral will thus be to preserve, maintain and enhance the going concern value of the Debtors.

D.        No Credit Available on More Favorable Terms. Given the Debtors' financial condition, financing arrangements, and capital structure, as well as the uncertain timing of collections of membership dues, the Debtors do not have sufficient cash to fund their businesses and are otherwise unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon all pre-petition and post-petition assets pursuant to section 364(c) and (d) of the Bankruptcy Code, such that Lender be granted pursuant to 11 U.S.C. §364(d) a senior first priority blanket lien on all assets of the Debtors estates. The Debtors are unable to obtain the necessary postpetition financing that they need on terms more favorable than those provided by the Postpetition Financing.

E.        Need to Grant Superpriority Administrative Expense Claim and Priming Liens. The Debtors are unable to obtain an adequate unsecured credit facility allowable under section 503(b)(1) of the Bankruptcy Code and must grant to the Lender a Superpriority Administrative Expense Claim as contemplated by section 364(c)(1) of the Bankruptcy Code and liens as contemplated by section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code. The Lender has conditioned all loans and advances to be made under the DIP Loan Agreement upon the grant to the Lender of: (a) a Superpriority Administrative Expense Claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all expenses of any kind or nature whatsoever

specified in sections 503(b) and 507(b) of the Bankruptcy Code; and (b) subject to the Carveout

(defined below), in accordance with section 364(c)(2), (3) and (d) of the Bankruptcy Code,

senior first priority liens on and security interests in all of the Debtors' assets, excluding the

Barnstormer Collateral and recoveries from avoidance actions under Chapter 5 of the Bankruptcy

Code.

F.        DIP Facility. Pursuant to the DIP Facility, the Lender has agreed to provide a Loan to the

Debtors in amounts not to exceed the maximum outstanding principal amount at any one time of

up to $1,750,000, in accordance with the DIP Loan Agreement, the DIP Loan Documents, the

Budget and the Order.

G.        As further adequate protection to the Lender, the following benchmarks, which are

included in the DIP Loan Documents, are conditions to the DIP Facility and are as follows (the

"Benchmarks"):

        1.        Within ten (10) days of the entry of this Order, Debtors must file an application to

seek approval to retain Jonathan A. Joslow, or such other professional acceptable to Lender, as

Chief Restructuring Officer, and seek a hearing on the Court approval of such retention within

twenty one (21) days of filing such application and *nunc pro tunc* to the date such application

was filed;

        2.        The Debtors must convene a meeting of the membership of HTC on or before

August 7, 2019 with the result being that at least sixty-five percent (65%) of existing members

commence paying one hundred percent (100%) of their monthly dues into an escrow account to

be used solely for purposes provided in a confirmed Plan of Reorganization on or before August

19, 2019 (the "Membership Payments"), provided, however, that failure to obtain the

Membership Payments by August 19, 2019 shall not be an event of default if the Debtors file a

Motion to Sell substantially all of their assets under Section 363 of Title 11, U.S.C. (the "Sale Motion") by 5:00 p.m. on August 26, 2019, and provided, further, if the Sale Motion is not filed by such deadline, the failure to obtain the Membership Payments by August 19, 2019 shall be an event of default.  In the event the Sale Motion is filed by August 26, 2019, the Debtors obligation to maintain the Minimum Reserve Balance as set forth in Section G.3. below, shall terminate, but Lender shall continue to receive monthly payments of accrued interest on the DIP Facility from funds available in the Interest Reserve.  Failure to conclude the hearing on the Sale Motion within sixty (60) days of filing the Sale Motion shall constitute an event of default.

3.      Except as otherwise provided in G.2 above, Debtors shall at all times maintain funds in the Interest Reserve provided for in the DIP Loan Documents (the "Interest Reserve") in an amount sufficient to pay at least sixty (60) days of interest on the DIP Facility (the "Minimum Reserve Balance").  In the event that the balance of funds in the Interest Reserve shall fall below the Minimum Reserve Balance, it shall be an event of default; and

4.      The Debtors shall have filed a Plan of Reorganization, in form and substance satisfactory to Lender, which has been approved by a majority of the membership of the resort, within one hundred twenty (120) days of the Filing Date, and such Plan must be confirmed within sixty (60) days from the filing of the Plan.

H.      <u>Business Judgment and Good Faith</u>. The terms of the Postpetition Financing are at least as favorable to the Debtors as those available from alternative sources. The terms of the Postpetition Financing have been negotiated in good faith and at arm's length between the Debtors and the Lender, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are fair and reasonable under the circumstances, and are enforceable in accordance with applicable law. The credit extended to the Debtors by the Lender

under the Postpetition Financing and this Order shall be deemed to have been extended in "good faith" as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

I.      Jurisdiction and Venue. This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This Order is entered in a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K) and (M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

K.      Notice. Notice of the Motion, the relief requested therein, and the Hearing was served by the Debtors on the Notice Parties. The notice provided of the Motion and the Hearing is sufficient and adequate notice and no further notice of the relief sought at the Hearing is necessary or required.

L.      Record.  Based on the record, pursuant to sections 105, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), notice of the Hearing was adequate as set forth herein and on the record.

Based upon the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

### Approval and Authorization.

1.      Motion Granted. The Motion is granted as to the Debtors' request for relief with respect to the Postpetition Financing to the extent provided herein. Any objections to the relief sought in

the Motion with respect to the entry of this Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      _Approval of Documents_. The Postpetition Financing, the DIP Loan Agreement and the DIP Loan Documents including the Benchmarks are hereby approved subject to the terms of this Order. The failure to reference or discuss any particular provision of the DIP Loan Agreement or any DIP Loan Document shall not affect the validity or enforceability of any such provision.

3.      _Authorization to Execute and Deliver Documents_. The Debtors are expressly authorized, empowered and directed to do and perform all acts to make, execute, deliver and implement the DIP Loan Agreement and the DIP Loan Documents, and any other document required to be executed and delivered in connection therewith. Upon execution and delivery of the DIP Loan Agreement and the DIP Loan Documents, the DIP Loan Agreement and the DIP Loan Documents shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms thereof and of this Order. No obligation, payment, transfer or grant of security under the DIP Loan Agreement and the DIP Loan Documents, or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim. The Debtors are authorized and directed to pay all principal, interest, fees, costs and other expenses that may be required or necessary for the Debtors to perform all of their obligations under the

DIP Loan Agreement, the DIP Loan Agreement, the DIP Loan Documents and this Order

without any further order or approval of the Court.

4.      <u>Authorization to Borrow; the Budget</u>. Good and sufficient cause has been shown for the

entry of this Order. The Debtors are authorized and empowered to borrow funds pursuant to the

DIP Loan Agreement and the DIP Loan Documents for the purposes permitted under the DIP

Loan Agreement and the DIP Loan Documents, all in accordance with the budget attached to this

Order (the "Budget").

5.      <u>Amendments</u>. The Lender and the Debtors may amend, modify, supplement or waive any

provision of the DIP Loan Agreement and the DIP Loan Documents if such amendment,

modification, supplement or waiver is not material (in the good faith judgment of the Lender and

the Debtors), without any need to apply to, or receive further approval from, the Court. Any

material amendment, modification, supplement or waiver shall be in writing, signed by the

parties and subject to approval by the Court on appropriate notice.

**<u>Use of Collateral (Including Cash Collateral).</u>**

7.      <u>Use of Collateral (Including Cash Collateral).</u> The Debtors are

authorized to use funds from the DIP Facility and cash collateral during the period from the

Filing Date until the earlier of the Termination Date (as defined in the DIP Loan Agreement) and

an Event of Default for the same purposes as set forth in and in accordance with this Order, the

DIP Loan Agreement, the DIP Loan Documents and the Budget.

8.      <u>Payment of Interest, Fees, Etc</u>. The Debtors shall pay to the Lender

interest as provided in this Order, the DIP Loan Agreement and the DIP Loan Documents in

accordance with the procedures herein and therein set forth (and the Lender shall be permitted to

charge such amounts to the DIP Facility). In consideration of the financial and other

accommodations to be made by the Lender under this Order, the DIP Loan Agreement and the

DIP Loan Documents, the Debtors are hereby authorized and directed, without further order of

the Court, to pay to the Lender all fees and charges as set forth herein and in the DIP Loan

Agreement and the DIP Loan Documents and to reimburse the Lender for all reasonable out of

pocket expenses and professional fees and related disbursements incurred by the Lender in

connection with the preparation of the DIP Loan Agreement and the DIP Loan Documents or in

connection with or related to the Debtors, the Case or the DIP Facility; provided that the Lender

shall provide a copy of any invoices (redacted with respect to privileged matters) for their

professional fees and expenses to counsel for the Debtors, counsel for the Official Committee of

Unsecured Creditors, once appointed (the "Committee"), and the Office of United States Trustee,

and in absence of an objection filed with this Court within 10 days after receipt of such invoices,

the Debtors are authorized and directed to pay the amount of such invoices or Lender may pay

such invoices from the DIP Facility. In the event there is an objection filed with this Court within

10 days after receipt of such invoices, the Lender is authorized and directed to pay only the

portion of such invoices that are not subject to such objection, and shall pay any balance

following resolution of such objection or upon an order of this Court.

**Superpriority Administrative Claim; Collateral.**

9.        Superpriority Administrative Expense Claim; Waiver under Section 506(c). All of the

Lender Debt shall have the status of an allowed Superpriority Administrative Expense Claim in

the Case pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all

administrative expenses, adequate protection claims and all other claims against the Debtors,

whether heretofore or hereafter incurred, of any kind or nature whatsoever, other than the

Carveout, including without limitation, all administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative

expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a),

507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims

may become secured by a judgment lien or other non-consensual lien, levy or attachment, which

allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be

considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. Other

than the Carveout, no claim or expense having a priority senior or pari passu to the priority

granted to the Lender in this Order shall be granted or permitted in the Case, or any superseding

chapter 7 case, and, subject to entry of the Final Order, no other costs or expenses of

administration of any kind, nature or description whatsoever shall be imposed against the

Collateral under sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, in each case,

while any portion of the Lender Debt remains outstanding.

10.      Payment of Administrative Expenses. Unless an Event of Default shall have occurred (or

would result from such payment), subject to the Budget, the Debtors shall be permitted to pay, as

the same may become due or authorized and payable, administrative expenses of the kind

specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their

businesses.

11.      Collateral Security. As security for the full and timely payment of the Lender Debt, the

Lender is hereby granted pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code,

senior first priority liens on, and security interests in, the Collateral,  subject only to the

Carveout, and excluding recoveries from avoidance actions under Chapter 5 of the Bankruptcy

Code and the Excluded Assets The term "Assets",  "Collateral" and "Excluded Assets" shall

have the definition ascribed thereto in the DIP Loan Agreement. In addition, as security for the

full and timely payment of the Lender Debt, the Lender is hereby granted a first priority

mortgage on all of the Real Estate owned by Debtors, together with an assignment of all leases and rents related thereto.

12.    <u>No Subordination</u>. The liens on, and security interests in, the Collateral granted to the Lender under this Order and pursuant to the DIP Loan Agreement and the DIP Loan Documents shall not be subordinated to, or made pari passu with, any other lien or security interest, however and whenever arising, in the Case or any superseding chapter 7 case.

13.    <u>Automatic Perfection of Liens.</u>

(a)    The liens, mortgages and security interests granted to the Lender hereunder and under the DIP Loan Agreement and the DIP Loan Documents are valid, binding, continuing, enforceable and fully-perfected with the priorities herein and therein set forth.

(b)    The Lender shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the liens and security interests granted by or pursuant to this Order, the DIP Loan Agreement and the DIP Loan Documents and to be entitled to the first priority liens and protections granted herein.

(c)    Should the Lender, in its sole discretion, from time to time, choose to file such financing statements, mortgages, notices of lien or similar instruments, take possession of any Collateral securing the Lender Debt for perfection purposes, or take any other action to protect from infringement or otherwise validate or perfect any such security interest or lien, the Debtors and their officers are hereby directed to execute any such documents or instruments as the Lender shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

(d)      In the discretion of the Lender, a certified copy of this Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Order for filing and recording, and such certified copy shall be deemed filed and recorded at the time and on the date of entry of this Order.

(e) **Carveout**

14.     Notwithstanding anything to the contrary herein, the liens, security interests, and

Superpriority Administrative Expense Claims granted in favor of the Lender in connection with the DIP Facility and granted herein in favor of the Pre-Petition Secured Creditors as adequate protection shall be subject to a carveout (the "Carveout") for the payment of all unpaid fees payable to the U.S. Trustee under 28 U.S.C. § 1930 in such amounts as determined in agreement with the U.S. Trustee or by a final order of the Court.  Notwithstanding such Carveout, Lender shall not be liable for the amount of any Carveout.

**Termination; Maturity Date.**

15.     <u>Termination</u>. Notwithstanding the provisions of section 362 of the Bankruptcy Code and without order of or application or motion to the Court, subject to any applicable grace or cure period expressly set forth in the DIP Loan Agreement or the DIP Loan Documents, in the event of (a) the failure of the Debtors to perform any of their material obligations under this Order, or (b) the occurrence and continuance of an Event of Default, then and upon the occurrence of either of the foregoing (each a "Termination Event"), and at all times during the continuance thereof, the Lender may upon not less than three (3) business days prior written notice to the Debtors and their counsel, the Office of the United States Trustee, and counsel for the

Committee (and prior to its appointment, the Debtors' twenty largest unsecured creditors on a consolidated basis) and Respondents, exercise any and all rights and remedies allowed under this Order, the DIP Loan Agreement, the DIP Loan Documents and/or applicable law; provided, however, that notwithstanding the foregoing and section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, if a Termination Event exists, the Lender may do one or more of the following at any time and in any order: (i) reduce the amount of availability under the DIP Facility, (ii) restrict the amount of or refuse to make loans or advances under the DIP Facility or terminate or reduce the Lender commitment to lend under the DIP Facility, and/or (iii) declare the Lender Debt to be immediately due and payable. The Lender's failure to exercise rights under this paragraph shall not constitute a waiver of any of their rights. At any hearing following a Termination Event, the Debtors shall be permitted to contest whether a Termination Event has occurred and is then continuing but may not seek any relief that would in any way restrict or impair the rights and remedies of the Lender set forth in this Order, the DIP Loan Agreement, the DIP Loan Documents and/or applicable law.

16.     <u>Maturity Date</u>. In addition to any rights and remedies of the Lender under the terms of this Order, the DIP Facility shall immediately and automatically terminate and the Lender Debt shall be immediately due and payable upon the Maturity Date as provided in the DIP Loan Agreement.

**<u>Adequate Protection for the Prepetition Secured Creditors.</u>**

17.     <u>Adequate Protection Liens</u>. As adequate protection for the granting of senior liens to secure the DIP Facility and the Debtors' use of the cash collateral, to the extent of any diminution in value (if any) of the liens (if any) of Respondents in the Assets following the Filing Date, the Prepetition Secured Creditors are granted replacement liens (the "Adequate Protection Liens") in the assets of the Debtors  to the extent, priority and validity of each of Respondents Prepetition

liens. The Adequate Protection Liens shall be junior in priority to the senior liens granted to

Lender herein securing the Lender Debt.

18.     No Filing Required. The Prepetition Secured Creditors shall not be required to file any

financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or

filing office, or to take any other action in order to validate or perfect the Adequate Protection

Liens granted by or pursuant to this Order. The Prepetition Secured Creditors shall have no right

to seek or exercise any rights or remedies in respect of the Adequate Protection Liens unless the

Lender has consented thereto or the Lender Debt has been indefeasibly paid and satisfied in full

accordance with the DIP Loan Agreement, the DIP Loan Documents and this Order.

19.     Superpriority Administrative Expense Claim; Waiver under Section 506(c). In

accordance with section 507(b) of the Bankruptcy Code, the amount of any diminution in value

(if any) of the Prepetition Secured Creditors' liens following the Filing Date shall have the status

of an allowed Superpriority Administrative Expense Claim in the Cases pursuant to section

364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses,

adequate protection claims and all other claims against the Debtors, whether heretofore or

hereafter incurred, of any kind or nature whatsoever, including without limitation, all

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code, and over any and all administrative expenses or other claims arising under sections , 326,

328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether

or not such expenses or claims may become secured by a judgment lien or other non-consensual

lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the

Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the

Bankruptcy Code, subject and junior only to the Lender's Superpriority Administrative Expense
Claim.

## **Miscellaneous Provisions.**

20.      Reporting Requirements. The Debtors are obligated to allow access to the Lender and
their representatives and to provide information with respect to and otherwise comply with the
reporting and disclosure undertakings and agreements set forth in this Order and the DIP Loan
Agreement and the DIP Loan Documents and such obligations shall continue until the
indefeasible payment in full of all Lender Debt and the Lender Parties' commitment to loan
money to the Debtors under the DIP Loan Agreement is terminated.

21.      Binding Effect of Order; Successors and Assigns. The DIP Loan Agreement, the DIP
Loan Documents and this Order shall be binding upon all parties-in-interests in the Case,
including without limitation, the Lender, the Respondents, the Committee and the Debtors and
their respective successors and assigns, including, without limitation, any chapter 11 trustee or
chapter 7 trustee or similar responsible person hereafter appointed as a representative of the
Debtors' estates and any such successors or assigns, without further order of this Court and shall
inure to the benefit of the Lender, the Respondents, the Committee and the Debtors and their
respective successors and assigns. The Debtors and their successors and assigns shall be deemed
authorized and directed to comply with the provisions of this Order, the DIP Loan Agreement
and the DIP Loan Documents. The Lender shall not have any obligation to extend any financing
to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the
estates of the Debtors.

23.      No Impairment of Liens and Order. The liens, security interests, Superpriority
Administrative Expense Claims, Lender Debt and other rights and remedies granted to the
Lender under this Order, the DIP Loan Agreement and the DIP Loan Documents, and any

actions taken pursuant hereto or thereto shall survive, and shall not be modified, altered or impaired in any manner by (a) any other financing or extension of credit or incurrence of debt by the Debtors (under section 364 of the Bankruptcy Code or otherwise), (b) the entry of an order confirming any plan of reorganization, (c) the entry of an order converting the Case to chapter 7 or dismissing the Case, or (d) the maturity of the Lender Debt. The liens, security interests, claims and any other rights granted to the Lender pursuant to this Order and the DIP Loan Agreement and the DIP Loan Documents shall continue in effect until the Lender Debt is indefeasibly satisfied and paid, and the Lender's commitment to make loans under the DIP Facility has terminated.

24.     <u>Good Faith</u>. Having been found to be extending the Postpetition Financing to the Debtors in good faith, the Lender are entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Lender Debt and the Superpriority Administrative Expense Claims and liens created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. If any provision of this Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity, enforceability and priority of any of the Lender Debt or the claims, liens and security interests granted to the Lender under this Order, the DIP Loan Agreement and/or the DIP Loan Documents, and the validity, enforceability or priority of the Lender Debt and the claims, liens and security interests of the Lender shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all of the rights, privileges and benefits granted herein, including, without limitation, the liens, security interests and priorities granted to the Lender in this.

**<u>Order with respect to all Lender Debt.</u>**

25.     <u>No Third Party Beneficiaries</u>. Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, or any direct, indirect or incidental beneficiary.

26.     <u>No Marshaling</u>. In no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or assets.

27.     <u>Limitations under Section 552(b) of the Bankruptcy Code</u>. The  Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the Collateral under section 552(b) of the Bankruptcy Code.

28.     <u>No Waiver</u>. Lender delay or failure to exercise rights and remedies under the DIP Loan Agreement, the DIP Loan Documents or this Order shall not constitute a waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement, the DIP Loan Documents and this  Order.

29.     <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the Lender pursuant to the provisions of this  Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code (subject to entry of the Final Order).

30.    <u>Insurance</u>. The Lender is deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies to the payment in full of the Lender Debt.

31.    <u>Automatic Stay</u>. The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Lender to take any action authorized or contemplated by this Order or the DIP Loan Agreement, the DIP Loan Documents and to carry out the terms thereof, subject, however, to the satisfaction of any notice, procedural and other conditions contained in thisOrder, and/or the DIP Loan Agreement or the DIP Loan Documents.

32.    <u>No Control</u>. By making advances, loans or extending financial accommodations of any type, kind or nature under this Order or by administering the loans made hereunder, Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors.

33.    <u>Indemnification.</u> Nothing in this Order,  the DIP Loan Agreement or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Lender, any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. So long as the Lender complies with its respective obligations under this Order, the DIP Loan Agreement and the DIP Loan Documents and their obligations under applicable law (including the Bankruptcy Code), (a) the Lender shall not, in any way or manner, be liable or responsible

for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

34.     _Inconsistency._ In the event of any inconsistency between this Order and the DIP Loan Agreement, the DIP Loan Documents, any document or any other agreement heretofore or hereafter entered into by and between the Debtors and the Lender, the terms of this Order shall govern and control.

35.     _Retention of Jurisdiction._ The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

36.     _Immediate Docketing of Order._ The Clerk of the Court is hereby directed to forthwith enter this Order on the docket of this Court maintained in regard to the Cases.

37.     _Effectiveness._ In accordance with Rule 7052, this Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this  Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

38.     _Headings._ Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

Dated:

# EXHIBIT
## (Budget)

**The Hermitage Club**
**Confidential**
**Projected Weekly Cash Flow Analysis**

7/15/2019

Week Ending

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Week 14 | Week 15 | Week 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Cash Receipts** | | | | | | | | | | | | | | | | |
| Membership Annual Dues | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Membership and Administrative | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Existing AR (Collections/Sweep)   0% | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Lodging, Food and Beverage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Snowsports & Mountain Operations | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Clubhouse Amenities | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Golf Course | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Restructure Funds Reserve and Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | | | |
| **Operating Cash Disbursements** | | | | | | | | | | | | | | | | |
| COGS Disbursements | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Admin Payroll | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 | 14,744 |
| Operations Payroll | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 | 8,025 |
| Employee Health Benefits | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 | 1,812 |
| Mountain Operations Exp | - | - | - | 2,500 | - | - | - | - | 2,500 | - | - | - | 2,500 | - | - | - |
| Snowsports Exp | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Golf Course Exp | - | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 |
| Clubhouse Amenity Exp | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Food & Beverage Exp | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Properties Exp | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Overhead - Utility | - | - | 20,525 | 200 | - | - | 20,525 | 200 | - | - | - | 20,725 | - | - | - | 20,525 |
| **Total Disbursements** | 24,581 | 25,298 | 45,823 | 27,998 | 25,298 | 25,298 | 45,823 | 25,498 | 27,798 | 25,298 | 25,298 | 46,023 | 27,798 | 25,298 | 25,298 | 45,823 |
| | | | | | | | | | | | | | | | | |
| **Net Operating Cash Flow** | (24,581) | (25,298) | (45,823) | (27,998) | (25,298) | (25,298) | (45,823) | (25,498) | (27,798) | (25,298) | (25,298) | (46,023) | (27,798) | (25,298) | (25,298) | (45,823) |
| | | | | | | | | | | | | | | | | |
| **Nonoperating Cash Disbursements & Receipts** | | | | | | | | | | | | | | | | |
| Loan Obligations | (1,317,500) | | | | 10,000 | - | - | | 10,000 | | | - | 10,000 | - | | - |
| Equipment, and Insurance Obligations | - | - | - | - | 20,100 | - | - | - | 37,870 | - | - | - | - | 20,100 | - | - |
| Berkshire Bank Payments | - | - | 40,000 | - | - | 361,000 | 40,000 | - | - | - | - | 40,000 | - | - | - | 40,000 |
| Maintenance Allocation | - | - | 15,000 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fee Escrow | - | - | - | - | 50,000 | - | - | - | - | 50,000 | - | - | - | 50,000 | - | - |
| US Trustee/Receiver Fees | - | - | - | - | 1,650 | - | - | - | - | 1,650 | - | - | - | 1,650 | - | - |
| **Total Nonoperating Cash Flow** | (1,317,500) | - | 55,000 | - | 81,750 | 361,000 | 40,000 | - | 47,870 | 51,650 | - | 40,000 | 10,000 | 71,750 | - | 40,000 |
| | | | | | | | | | | | | | | | | |
| **Beginning Cash Balance** | - | 1,292,919 | 1,267,621 | 1,166,798 | 1,138,799 | 1,031,751 | 645,452 | 559,629 | 534,131 | 458,462 | 381,514 | 356,215 | 270,192 | 232,394 | 135,345 | 110,047 |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Operating Cash Flow | (24,581) | (25,298) | (45,823) | (27,998) | (25,298) | (25,298) | (45,823) | (25,498) | (27,798) | (25,298) | (25,298) | (46,023) | (27,798) | (25,298) | (25,298) | (45,823) |
| Net Nonoperating Cash Flow | 1,317,500 | - | (55,000) | - | (81,750) | (361,000) | (40,000) | - | (47,870) | (51,650) | - | (40,000) | (10,000) | (71,750) | - | (40,000) |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Flow** | 1,292,919 | (25,298) | (100,823) | (27,998) | (107,048) | (386,298) | (85,823) | (25,498) | (75,668) | (76,948) | (25,298) | (86,023) | (37,798) | (97,048) | (25,298) | (85,823) |
| | | | | | | | | | | | | | | | | |
| **Ending Cash Balance** | 1,292,919 | 1,267,621 | 1,166,798 | 1,138,799 | 1,031,751 | 645,452 | 559,629 | 534,131 | 458,462 | 381,514 | 356,215 | 270,192 | 232,394 | 135,345 | 110,047 | 24,223 |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |