**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

|  |  |
|---|---|
| In re: ) | |
| ) | |
| HERMITAGE INN REAL ESTATE ) | Chapter 11 |
| HOLDING COMPANY, LLC, ) | Case Nos. 19-10214 (CAB) and |
| ) | 19-10276 (CAB) |
| and ) | Jointly Administered |
| ) | |
| HERMITAGE CLUB, LLC, ) | |
| ) | |
| Debtors. ) | |
| ) | |

**JOINT STIPULATION OF FACTS AND EXHIBITS REGARDING EVIDENTIARY HEARING ON DEBTOR'S MOTION FOR FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362 and 364(c) and (d), (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER PURSUANT TO 11 U.S.C. § 364(c), and (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Now comes Hermitage Inn Real Estate Holding Company, LLC ("HIREHC"), Hermitage Club, LLC (the "Club," and collectively with HIREHC, the "Debtors"), Barnstormer Summit Lift, LLC, Ad Hoc Committee of Members of Hermitage Inn Real Estate Holding Company, LLC, and Berkshire Bank (the "Bank"), and by and through their respective undersigned counsel, hereby submit this Joint Stipulation of Facts and Issues Regarding the Evidentiary Hearing on the Debtor's Motion for Final Order (I) Authorizing the Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105(a), 362 and 364(c) and (d), (II) Granting Liens and Superpriority Claims to the DIP Lender Pursuant to 11 U.S.C. § 364(c), and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "DIP Financing Motion"). (Doc. # 147).

The Debtors filed the DIP Financing Motion on July 15, 2019, and an evidentiary hearing (the "Hearing") is to be held on the DIP Financing Motion on July 26, 2019, at 1:00 p.m. at the

United States Bankruptcy Court for the District of Vermont, sitting in Rutland, Vermont (this "Court"). It is anticipated that various parties, including the Bank, will file oppositions or objections to the DIP Financing Motion (collectively, the "Objections"). The Debtors, the Bank and all parties who have executed this Stipulation are collectively referred to herein as the "Parties," and individually, as a "Party."

The Parties hereto stipulate to the following facts and the admissibility of the following exhibits with respect to the Hearing:

**Jurisdiction, Venue And Statutory Predicates**

1. The Parties agree that this Court has jurisdiction over the DIP Financing Motion and the Objections pursuant to 28 U.S.C. §§ 157 and 1334, and that venue is proper in the District of Vermont pursuant to 28 U.S.C. §§ 1408 and 1409. The Parties further agree that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The Parties agree that the statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004 and 9014, and Rule 4001-5 of the Local Rules of the United States Bankruptcy Court for the District of Vermont (the "Local Rules").

**A.    General Background of Debtors – Stipulated Facts**

1. HIREHC is a Connecticut limited liability company. James R. Barnes is the Manager and was the initial member of HIREHC. The Club is a Connecticut limited liability company wholly owned by HIREHC.

2. On May 22, 2019, an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. (the "Bankruptcy Code") was filed by Bobbi Resek, Dan Solaz and Lakeland Bank (collectively, the "Petitioning Creditors") against HIREHC

2

(the "Involuntary Case") in this Court.

3. The Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Connecticut on May 28, 2019.

4. On June 19, 2019, this Court entered a Memorandum of Decision Determining Vermont to be the Proper Venue for Three Hermitage Cases (Doc. #91) and an Order Determining Vermont to be the Proper Venue for Three Hermitage Cases (Doc. # 92) (the "Venue Order").

5. Pursuant to the terms of the Venue Order, the Chapter 11 Cases were transferred to this Court.

6. By Order of this Court dated June 28, 2019, the Involuntary Case was converted to a case under Chapter 11 and the Chapter 11 case of HIREHC was consolidated therewith and is pending as a Chapter 11 case in this Court, Case No. 19-10214.

7. By Order dated July 12, 2019, this Court directed that the Debtors' cases be jointly administered and consolidated for procedural purposes only.

8. As of the filing of the DIP Financing Motion, no statutory committee has been appointed in the Chapter 11 Cases.

9. While no Trustee or examiner has been appointed, the Office of the United States Trustee has filed a Motion to Convert or Dismiss or, alternatively, appoint a Chapter 11 Trustee (Doc. #126), which is scheduled for a hearing on July 26, 2019.

10. The Debtors own and operated a private members only ski and golf club located in Wilmington and Dover, Vermont ("Hermitage" or the "Resort").

11. The Debtors' experienced financial difficulties in 2017 including resignation of

members, a decline in new membership sales and real estate sales that resulted in, *inter alia*, default in payment of sales and use and room and meal taxes owed to the State of Vermont. On or about April 1, 2018, the State of Vermont ordered the closure of the Resort due to the non-payment of taxes. The Resort has remained closed ever since.

12. On or about February 23, 2018, the Bank commenced a foreclosure action against the Debtors in the Vermont Superior Court, Windham Division (the "Foreclosure Action").

13. By order of the state court in the Foreclosure Action, a receiver (the "Receiver") was appointed to take possession of the Bank's Collateral (as defined below). The Bank's Collateral includes substantially all of the Debtors assets. The Receiver has maintained and preserved the Bank's Collateral but has not sought to re-open or improve the Resort since its appointment, and was restricted in doing so by order of the state court in the Foreclosure Action and the absence of any licenses from the State of Vermont to operate the business.

14. By Order of this Court dated May 31, 2019, the Receiver has continued to maintain the Bank's Collateral since the Petition Date, on the same terms and conditions set forth in the state court order appointing the Receiver.

### B.   The Bank's Secured Claim – Stipulated Facts[1]

1. On or about September 30, 2013, HIREHC and the Bank entered into that certain Construction Loan Agreement (as amended through the date hereof, the "Loan Agreement"), pursuant to which the Bank agreed to make certain loans to HIREHC in the aggregate amount of up to $20,000,000 (the "Original Loans") to enable HIREHC to construct or complete construction of a base lodge at the Resort (the "Base Lodge") and other improvements at the Resort (the "Proposed Improvements").

---

[1] The Ad Hoc Committee of Members does not stipulate to the facts regarding the Bank's Claim.

58877743 v5

2.  On or about December 3, 2014, the Bank and HIREHC amended the Loan Agreement, and bifurcated the Original Loans into: (i) a $15,000,000 loan to finance the Base Lodge (the "Base Lodge Loan"), as evidenced by a Second Amended and Restated Promissory Note (Base Lodge Loan) dated December 3, 2014 made by HIREHC and payable to the order of the Bank (the "Second Amended and Restated Base Lodge Note"); and (ii) a $5,000,000 revolving loan for costs incurred by HIREHC in connection with the construction of single family homes on the Property (the "Revolving Loan"), as evidenced by a Second Amended and Restated Revolving Credit Promissory Note dated December 3, 2014 made by HIREHC and payable to the order of the Bank (the "Revolving Note").

3.  On or about June 28, 2016, HIREHC executed and delivered to the Bank a Third Amended and Restated Promissory Note (Bridge Loan) in the principal amount of One Million Dollars ($1,000,000) (the "Bridge Loan Note"), which Bridge Loan Note amended and restated the Revolving Note in its entirety on a non-revolving basis.

4.  On or about July 18, 2017, pursuant to further borrowings and amendments to the Loan Agreement, HIREHC executed and delivered to the Bank an additional promissory note in the original principal amount of $1,100,000 (the "Second Bridge Loan Note").

5.  The loans evidenced by the Second Amended and Restated Base Lodge Note, the Bridge Loan Note and the Second Bridge Loan Note are hereinafter referred to as the "Bank Loans," and the three Notes are collectively referred to hereinafter as the "Notes".

6.  The Bank is submitting the Affidavit of Peter A. Landauer, First Vice President (the "Landauer Affidavit"), setting forth the unpaid balance, including accrued and unpaid interest, late charges fees and expenses the Bank alleges it is due under the Bank Loans. The

Landauer Affidavit shall be admitted as **Bank Exhibit No. 1**, which is attached hereto as **Exhibit A**.

7.      As set forth in the Landauer Affidavit, the Bank asserts that its claim is no less than $22,077,000 as of July 9, 2019.

8.      To secure all of the indebtedness and obligations due to the Bank under the Loan Agreement (collectively, the "Obligations"), HIREHC executed in favor of the Bank that certain Construction Mortgage and Security Agreement dated as of September 30, 2013, as amended by (i) that certain Amendment of Mortgage between HIREHC and the Bank dated as of April 30, 2014, (ii) that certain Second Amendment of Mortgage between HIREHC and the Bank dated as of November 12, 2014, (iii) that certain Third Amendment of Mortgage between HIREHC and the Bank dated as of December 3, 2014, (iv) that certain Fourth Amendment of Mortgage between HIREHC and the Bank dated December 4, 2015, (v) that certain Fifth Amendment of Mortgage between HIREHC and the Bank dated June 28, 2016, (vi) that certain Sixth Amendment of Mortgage between HIREHC and the Bank dated February 1, 2017, (vii) that certain Seventh Amendment of Mortgage between HIREHC and the Bank dated February 10, 2017, and (viii) that certain Eight Amendment of Mortgage between HIREHC and the Bank dated Jul 18, 2017, with respect to the Property (said Construction Mortgage and Security Agreement, as so amended through the date hereof, being hereinafter referred to as the "Mortgage").  The Mortgage and all amendments thereto have been properly recorded with the Dover (Vermont) Land Records and the Wilmington (Vermont) Land Records, thereby properly perfecting the Bank's rights under the Mortgage.

9.      The Mortgage covers all of the real estate owned by HIREHC and located at the Resort, including the ski area and golf course, the Hermitage Inn, the Snow Goose Inn, the

Horizon Inn, and the Doveberry Inn, development rights, and infrastructure, with the exception of minor parcels of undeveloped land and the Nordic Hills Lodge property (the "Real Property Collateral"). Pursuant to the Mortgage, the Bank also has a lien on substantially all of the personal property owned by HIREHC, including, without limitation, the lifts[2] (the "Personal Property Collateral").

10. In connection with the Original Loans, on September 30, 2013, James Barnes, the principal of the Debtors (the "Guarantor"), executed a Guaranty in favor of the Bank, under which the Guarantor guaranteed the Obligations of HIREHC to the Bank under the Loan Agreement (the "Guaranty"), which Guaranty has been amended and restated through the date hereof.

11. Also in connection with the Original Loans, on September 30, 2013, the Club executed a Security Agreement in favor of the Bank, under which the Club granted to the Bank a security interest and lien on all assets owned by the Club (the "HC Security Agreement," and the "HC Collateral"), which HC Security Agreement continues in full force and effect. The HC Collateral, the Real Property Collateral and the Personal Property Collateral are collectively referred to herein as the "Bank's Collateral."

12. The Debtors defaulted in the Obligations in September of 2016 and the Bank, the Debtors and the Guarantor entered into a series of forbearance agreements, with the last dated November 30, 2017.

13. The Bank prosecuted the state court Foreclosure Action until the Involuntary Case was filed against HIREHC on May 22, 2019.

---

[2] There is a dispute between the Bank and the Barnstormer Lender Group with regard to the priority of liens on the Barnstormer Summit Lift. The Bank and the Barnstormer Lender Group reserve their respective rights with respect to that dispute.

58877743 v5

14. Upon the filing of the Involuntary Case, the Bank moved for an order retaining the Receiver in place to maintain the status quo and to continue to protect and preserve the Debtors assets, which motion was allowed by this Court at the hearing on the motion on May 30, 2019.

15. The Receiver has remained in place thus far in these cases.

16. The Receiver was required to file reports in the Foreclosure Action. Admit Receiver's Fifth Report dated May 6, 2019 and Exhibits thereto as filed in Foreclosure Action as **Bank Exhibit No. 2**, which is attached hereto as **Exhibit B**.

### C. The DIP Financing Motion- Stipulated Facts

1. Pursuant to the DIP Financing Motion, the Debtors seek to borrow $1,750,000 on a secured basis from Restructured Opportunity Investors, Inc. (the "DIP Lender"), by providing the DIP Lender with a first lien on substantially all of the Debtors' real property assets, which is basically the Real Property Collateral under the Mortgage, thereby priming the liens of the Debtors' secured creditors, including the Bank (the "DIP Financing Facility").

2. The Debtors are the only Borrowers under the DIP Financing Facility.

3. Absent the proceeds from the DIP Financing Facility, the Debtors would not be able to continue in Chapter 11, as the Debtors have no income or other sources of financing available to them.

4. The Debtors were unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting the DIP Lender, subject to the carve out and professional fee escrow, the liens and the super-priority administrative expense claim under the terms and

8

conditions set forth in the DIP Financing Facility.

5. The DIP Financing was negotiated in good faith and at arm's length between the Debtors and the DIP Lender.

6. Under the DIP Financing Facility the Debtors propose borrowing $1,750,000 at an interest rate of approximately 11% per annum.

7. The Debtors are required to deposit $280,000 into an interest reserve account pursuant to the terms of the DIP Financing Facility, which is almost 18 months of interest under the DIP Financing Facility.

8. The DIP Financing Facility includes $155,000 in fees payable to the DIP Lender including a structuring fee ($50,000), a commitment fee ($52,500) and an exit fee ($52,500).

9. $150,000 of the DIP Facility proceeds are allocated under the Budget (as defined below) to fund a professional fee escrow for the professional fees of the Debtors' and possible other professionals in these cases.

10. After deducting the fees payable to the DIP Lender and the deposits for the interest escrow and the professional fee escrow, the Debtors will net $1,165,000 in proceeds from the DIP Financing Facility.

11. The Debtors are required to meet the following benchmarks under the DIP Financing Facility:

> a. Hiring Jonathan Joslow, or such other professional acceptable to Lender, as Chief Restructuring Officer with motion, to be filed within 10 days of entry of Order and hearing thereon within 21 days after filing of such motion;
>
> b. Meeting of Resort members on or before August 7, 2019 with the result that at least sixty-five percent (65%) of existing members (assumed to be 525 per representations made by the Debtors through counsel) commence paying one hundred percent (100%) of their monthly dues into an escrow account to be used solely for purposes provided in a confirmed plan of reorganization (the "Membership Payments") on or before August 19, 2019, however, failure to

9

58877743 v5

obtain the Membership Payments shall not be an event of default if the Debtors file a Motion to Sell its Assets under 11 U.S.C. § 363 on or before August 26, 2019;

c.   Payment of monthly interest from Interest Reserve to commence on the first of the month succeeding the Closing Date; and

d.   Filing of a confirmable plan of reorganization within one hundred twenty (120) days of the Petition Date and confirmation of a plan of reorganization within sixty (60) days thereafter.

12. The Debtors have prepared a sixteen-week (the "Budget Term") cash flow budget, amending and updating the proposed budget attached to the proposed Order filed with the DIP Financing Motion (as amended, the "Budget").  The Budget shall be admitted as **Debtor's Exhibit No. 1**, attached hereto as **Exhibit C**.

13. The Budget contains the following line items for the sixteen-week period with the following totals for the entire sixteen-week period:

| | |
|---|---:|
| Payroll | $333,296 |
| Utilities | $82,700 |
| Berkshire Loan Payments | $170,000 |
| Real Estate Taxes | $286,000 |
| Professional Fees | $150,000 |
| Equipment and Insurance Obligation | $113,610 |
| Golf Course Maintenance | $11,488 |
| U.S. Trustee | $4,950 |
| Mountain Operations Expense | $30,500 |
| Loan Obligations | $30,000 |
| Maintenance Allocation | $15,000 |
| Cold Brook – Water/Sewer | $75,000 |
| | $1,298,044 |

14. The Debtors' have obligations owing to the Cold Brook Fire District No. 1 ("Cold Brook FD1").  Cold Brook FD1 provides water and sewer services to a portion of the Debtors' properties.

10

58877743 v5

15. Cold Brook FD1 asserts that issued invoices to HIREHC for operations and maintenance fees and general assessment fees that were due on August 3, 2019 in the amount of $62,002.82. The Bank asserts that it has paid the Cold Brook FD1 for these charges, but they would have been due by HIREHC absent payment by the Bank.

16. Cold Brook FD1 also asserts that the Debtors will owe $439,291.92 on October 2, 2019 as a special benefit assessment as a result of borrowings from the Vermont Bond Bank. There are no funds allocated in the Budget to make this payment to Cold Brook FD1.

17. The Receiver has incurred an average of $30,500 per month for employee payroll and benefits (See Bank's Exhibit No 2).

18. The Receiver has been employing only a portion of the employees formerly employed by the Debtor at the Resort.

19. The Debtors project spending in excess of $80,000 per month for payroll under the Budget.

20. The Receiver has spent $266,000 in basic property repairs and maintenance over the 11 months since he was appointed.

21. The Budget allocates $15,000 for basic property repairs and maintenance during the Budget Term, $30,500 for Mountain Operations Expense, and $11,488 for Golf Course Maintenance.

22. The Budget also contains monthly payments to the Bank in the amount of $42,500 per month.

23. As set forth in the Landauer Affidavit interest is accruing at the rate of $84,396.00 per month under the Notes.

24. There are no funds allocated in the Budget for any sales or marketing activity.

25. There are no funds allocated in the budget for payment to the State of Vermont, Department of Taxes. The Debtors have scheduled a debt of $1,286,000 owing to the Vermont Department of Taxes. The Debtors have no ability to obtain required state licenses to operate their businesses absent an agreement with the Vermont Department of Taxes pertaining to the tax arrearage owed to the State.

### D. Other Liens and Claims – Stipulated Facts

1. In addition to the Bank's claim, there are additional liens and encumbrances on the Real Property Collateral is set forth in the DIP Financing Motion.

2. The Debtors filed Schedules of Assets and Liabilities that identify the creditors asserting liens against the Real Property Collateral, the amount owed to the creditor as of the Petition Date and whether the claim is disputed. A copy of Schedule D for each Debtor is admitted as **Debtors' Exhibit No. 2**, which is attached hereto as **Exhibit D**.

3. There are additional liens and claims against the Personal Property Collateral. The Debtors propose granting the DIP Lender a lien against the accounts, accounts receivable, member payments and all ski lifts not covered by the Barnstormer Summit Lift, LLC lien.

4. Barnstormer Summit Lift, LLC asserts a lien on the Barnstormer Summit Lift and has filed a Proof of Claim in the amount of $10,352,582.19.

### E. Appraisals – Stipulated Facts and Exhibits

1. The appraiser who will testify on behalf of the Debtors is James F. Fisher, MAI.

2. The Debtors' Appraisal Reports are (i) that certain appraisal report prepared for the Debtors by Realty Advisors dated November 30, 2018, as supplemented by a report dated July 22, 2019, which is admitted as **Debtors Exhibit No. 3**, and attached hereto as **Exhibit E**; and (ii) that certain appraisal report prepared by Colliers International Valuation and Advisory

12

Services for the Bank dated September 10, 2018, which is admitted as **Debtors' Exhibit No. 4** and attached hereto as **Exhibit F**.

3. The appraiser who will testify on behalf of the Bank is Chris Stickney, MAI.

4. The Bank's Appraisal report is that certain appraisal report prepared for the Bank by Colliers International Valuation and Advisory Services dated July 11, 2019, which is admitted as **Bank's Exhibit No. 3**, and attached hereto as **Exhibit G**.

The Parties have exchanged among themselves copies of all Exhibits to be admitted pursuant to the terms of this Stipulation.

58877743 v5

Respectfully submitted this 23rd day of July, 2019.

    Parties:

                    BERKSHIRE BANK

                    By its attorney's

                    By:       /s/
                    Elizabeth A. Glynn, Esq.
                    Ryan, Smith & Carbine, Ltd.
                    PO Box 310
                    Rutland, Vermont 05702-0310
                    (802) 786-1065
                    eag@rsclaw.com

                    and

                    By:       /s/
                    Paul F. O'Donnell, III
                    Hinckley, Allen & Snyder LLP
                    28 State Street
                    Boston, Massachusetts 02109
                    (617) 378-4182
                    podonnell@hinckleyallen.com

                    THE DEBTORS:

                    HERMITAGE INN REAL ESTATE HOLDING
                    COMPANY, LLC and
                    HERMITAGE CLUB, LLC

                    By their attorneys

                    By:       /s/
                    Douglas S. Skalka
                    Neubert, PEPE & MONTEITH, P.C.
                    195 Church Street
                    New Haven, Connecticut 06510
                    (203) 821-2000
                    dskalka@npmlaw.com

                    and

Thomas P. Simon, Esq.
McCormick, Fitzpatrick,
Kasper & Burchard, P.C.
40 George Street
Burlington, Vermont  05401
(802) 863-3494
tps@mc-fitz.com


BARNSTORMER SUMMIT LIFT, LLC

By its attorneys

By:_____/s/_____
David N. Dunn
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Avenue
Brattleboro, VT 05301
(802) 257-7244
ddunn@pdsclaw.com


AD HOC COMMITTEE OF
MEMBERS OF HERMITAGE INN REAL
ESTATE HOLDING COMPANY, LLC



By:_____/s/_____
Andre D. Bouffard
Downs Rachlin Martin PLLC
199 Main Street, PO Box 190
Burlington, Vermont 05402-0190
Tel: 802-863-2375
E-mail: abouffard@drm.com

and

Patrick M. Birney (Pro Hac Vice)
Robinson & Cole LLP
280 Trumbull Street,
Hartford, Connecticut 06103
Tel: 860-2275-8275
E-mail: pbirney@rc.com

## CERTIFICATE OF SERVICE

  I, Paul F. O'Donnell, III, hereby certify that on this 23rd day of July, 2019, I caused to be served a copy of the Joint Stipulation of Facts and Issues Regarding the Evidentiary Hearing on the Debtor's Motion for Final Order (I) Authorizing the Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105(a), 362 and 364(c) and (d), (II) Granting Liens and Superpriority Claims to the DIP Lender Pursuant to 11 U.S.C. § 364(c), and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 filed herewith to be served by this Court's CM/ECF System.

                /s/ *Paul F. O'Donnell, III*
                Paul F. O'Donnell, III

58877743 v5