

*MAY 6, 2019*

# FIFTH REPORT OF RECEIVER ALAN TANTLEFF

*RE: CERTAIN REAL PROPERTY ASSETS OF*
*HERMITAGE INN REAL ESTATE HOLDING COMPANY, LLC*

EXPERTS WITH **IMPACT**™

EXHIBIT F

FTI CONSULTING™

Fifth Report of Receiver Alan Tantleff

## *Table of Contents*

I.     **Introduction**

II.    **Summary of Recent Legal Proceedings**

III.   **Subject Property Condition Update**

IV.    **Court-Ordered Responsibilities – FTI Consulting Role**

V.     **Employment and Payroll Considerations**

VI.    **Disbursement and Funding Detail**

VII.   **Appendices**

I.    **Introduction**

On June 6, 2018 (the "Effective Date"), Judge John R. Treadwell of the Windham Unit of the Vermont Superior Court signed an order (the "Order") appointing me, Alan Tantleff of FTI Consulting, as Receiver for certain properties (collectively, the "Subject Properties") mortgaged to Berkshire Bank (the "Bank") by Hermitage Inn Real Estate Holding Company, LLC (the "Borrower"), its principal (James Barnes) and related entities. The Receiver's primary responsibility is to protect and preserve the Bank's collateral. The following report outlines the actions that I, the Receiver, have taken to preserve and maintain the value of the Subject Properties.

This is the fifth report that I have prepared for the court during my receivership. My previous reports (the "Previous Reports") were submitted to the court on July 6, 2018, August 6, 2018, November 5, 2018, and February 5, 2019.

Repeatedly throughout my tenure as Receiver, the Borrower has announced a "restructuring" to members and the public. I will continue to serve until dismissed by the Court; although I do hope the parties come to a successful resolution.

Case 19-10214  Doc       1682  Filed 05/24/19  Entered       05/22/19 09:26:20 57
Desc         Exhibit Exhibit Exhibit Bank Exhibit N Page   4 of 38 age   4 of 38

Fifth Report of Receiver Alan Tantleff

## II.    Summary of Recent Legal Proceedings

In the period following my Previous Reports, there have been several significant legal updates and proceedings associated with the Receivership and the Subject Properties.

As discussed in my Previous Reports, in November 2018 a group of investors in the high-speed Barnstormer Lift filed an Application for Prejudgment Remedy and Complaint naming HIREHC and the Receiver as defendants. The filed documents seek relief to the extent of $9.8M related to the investor's funding of the highspeed lift which the plaintiffs claim to be defaulted on by Jim Barnes and HIREHC. The case (the "Barnstormer Lift Litigation") is currently ongoing.

In February 2019, I was notified that Mr. Barnes entered the property and removed four snowmobiles from a shed located in the Mountain Operations facilities. I contacted Mr. Barnes on February 15, 2019 expressing my concerns with his actions. In the days following my communication with Mr. Barnes, I became increasingly concerned with his actions and determined that the proper course of action would be to file a Notice Against Trespass (the "Barnes Notice Against Trespass") against Mr. Barnes. The garage door and lock was damaged signifying forced entry; Mr. Barns denies damaging the property. On February 18, 2019, Mr. Barnes was served with the Barnes Notice Against Trespass. The Barnes Notice Against Trespass is attached as Appendix A to this Report.

Mr. Barnes stated that he had, in fact, removed these snowmobiles as they were his personal property, not the property of HIREHC or affiliated entities, and thus the Bank had no interest in them. He indicated a future desire to remove additional items that he considered his personal property, including trucks and excavators. This conflicted with information in my possession, including inventories of personal property of HIREHC. I thus informed Mr. Barnes that he had to return the personal property, to which he objected. I have referenced this matter to the Court, and instructed Mr. Barnes that the Court would adjudicate the matter.

As discussed later in this Report, I retained Vermont firm Sheehey Furlong & Behm P.C for representation in the matter.

In the period following the Notice of Trespass, Mr. Barnes requested the removal of certain personal items such as ski parkas and clothing from his locker located in the Clubhouse, to which I consented. Mr. Barnes was accompanied by the Director of Mountain Operations and has retrieved these items from the Subject Properties.

In April 2019, I was notified by the Director of Mountain Operations that the Horizon Inn had been vandalized and copper piping had been removed from the site. I immediately worked with the Director of Mountain Operations to communicate with the local and state police to conduct an investigation into the matter. The investigation is currently ongoing, and I have attached a redacted copy of the police report as Appendix B to this Report. We estimate damages of approximately $12,500.

In response to these actions, I have worked with the borrower's management team to establish increased security protocols and procedures at the Subject Properties. Given that this is a publicly filed document, I cannot provide further detail regarding the measures taken to ensure security and business viability.



### III.  Subject Property Condition Update

I have visited the Subject Properties on several occasions in the period following my Previous Reports. While visiting I have met with the Borrower's management team and inspected the Subject Properties. The following section covers the condition of the Subject Properties at the time of my most recent site visit, as well as key repairs and maintenance.

***Economic Condition of the Borrower:***

As discussed in the Previous Reports, the economic situation has reached a stabilized state. The Subject Properties have shown significant improvements after I received funding from the Bank. As detailed later in the report, the funding has allowed for regular maintenance and various repairs which maintain the business viability and collateral value of the Subject Properties. Furthermore, the update budget and funding schedule referenced in my February report (the "Updated Budget"), has allowed greater flexibility in funding.

***Physical Condition of the Properties:***

Overall, the Borrower's management team has worked to improve the conditions discussed in the Previous Reports, and the Subject Properties remain in the "mothballed" state which was achieved prior to my November 5, 2018 report. These issues, which have been discussed in depth in my Previous Reports, have generally been resolved through the receivership.

I note that I have encountered several minor leaks in various areas throughout the Subject Properties. This is customary given the heavy snowfall and the nature of the Subject Properties. I have worked with the borrower's management team to make sure that all are addressed and repaired adequately.

Other significant projects regarding the golf course and mountain operations are addressed below:

***Golf Course:***

As discussed in my February 5, 2019 report, the golf course was successfully winterized in November 2018. I worked very closely with the golf-course superintendent during the process to ensure that we approached the winterization in an efficient and cost-effective manner.

I have since worked closely with the borrower's management team to maintain and de-winterize the golf course beginning in April 2019. It was determined that it would cost roughly $47K over the period from April to August to de-winterize and maintain the golf course. It is important to note that this is not a budget for operations of the golf course, but rather to maintain the golf course in the "mothballed" state which maintains business viability. All facilities remained closed.

In early April 2019, the golf course superintendent and other members of the Borrower's management team began the process of de-winterization of the golf course. Based upon communications from the golf course superintendent, the golf course is currently in good condition without any key areas of concern. Most importantly, the golf course superintendent has indicated that the greens, usually the most vulnerable area of the golf course in the winter, survived the winter without any significant damage.

I will continue to monitor the de-winterization process and go-forward maintenance in order to ensure that we operate in accordance with the Updated Budget.

***Mountain Operations:***

As discussed in my Previous Reports, I developed a work plan for basic lift maintenance throughout the winter season with Director of Mountain Operations. This was not an expense forecasted in my previous budget but deemed necessary by the Receiver and approved by Berkshire Bank. I continue to perform maintenance.

Case 19-10214   Doc       1682   Filed 05/24/19   Entered       05/24/19 09:22:54
Desc       Exhibit Exhibit Exh Bank Exhibit N Page    6 of 38
EXHIBIT F

Fifth Report of Receiver Alan Tantleff

FTI
CONSULTING™

Throughout the winter season, the Director of Mountain Operations and lift mechanic were able to run all of the lifts on either primary or back up power and did not identify any major issues or faults. Based upon my conversations with the Director of Mountain Operations the lift will be continually maintained in order to ensure business viability.

In April 2019, the Director of Mountain Operations and the lift mechanic attended a seminar which covered lift maintenance, code compliance, and safety.

I continue to maintain the Barnstormer Lift despite the litigation referenced in the previous section.

FTI CONSULTING™

## IV.  Court-Ordered Responsibilities – FTI Consulting Role

***Pay Necessary Bills:***

The Order calls for the Receiver to pay all bills that, if unpaid, could lead to a reduction in the value of the Subject Properties. FTI Consulting has spent many hours coordinating with vendors and HIREHC management to determine necessary expenses to preserve the value of the Bank's collateral in a "mothballed" state. As referenced in the Previous Reports, I established a formal process for the Borrower to request funding for any essential expenses, and during our weekly call the Borrower's submissions are discussed and evaluated.

A discussion of specific expenditures made by the receivership is provided in Section VI of this report.

***Secure the Subject Properties:***

The Order calls for the Receiver to take all reasonably necessary steps with staff sufficient to prevent theft, vandalism, damage by people, pests, or weather to the Subject Properties. As Receiver, I supervise the Borrower's management team's weekly inspection schedule; the staff delivers a formal property inspection report at the beginning of each week, and I hold a 11:30AM call each Monday with the Borrower's management team to review the week's agenda pertaining to the preservation of the Bank's collateral. In the period following the Previous Reports, the Borrower's management team has provided me with each weekly report on a timely basis and consistently ensured that all properties remain secure. I personally inspect the Subject Properties on a regular basis. Additionally security protocols have been established in response to the vandalism at the Horizon Inn.

***Maintain the Subject Properties and Business Viability:***

The order calls for the Receiver to only provide reasonably necessary maintenance of the Subject Properties, and only to preserve the Bank's collateral in a "mothball" state. The receivership continues to work with the Borrower's Director of Finance to ensure that management receives funding for all expenses that are necessary to maintain the value of the Bank's collateral.

As discussed in my Previous Reports, throughout the Receivership the Borrower's management team has identified various items in need of repair or replacement. Many of these items were the result of a general lack of preventive or precautionary maintenance by previous management and were significantly damaged in the period between March 2018 and the appointment of the receivership. While the majority of necessary repairs were made in the period prior to my February 5, 2019 report (chiller maintenance, update of the club house fire alarm system, repair of damaged basement heating coils, HVAC repair, grease trap cleaning, and generator maintenance), I continue to be attentive to any major issues arising related to previous faults in maintenance and management. To maintain the business viability and integrity of the Subject Properties, the Receivership has been forced to expend considerable funds in relation to the aforementioned repairs and task.

As stated in my Previous Report, in preparation for winter, I worked with the Borrower's management team to determine the role of each Subject Property and its importance to the well-being and business viability of the Hermitage Club. Taking this information into account, I made the decision to winterize (drain and not heat) several of the Subject Properties for the winter season. The Clubhouse, Hermitage Inn, Snow Goose Inn, and Carriage House were determined to be the Subject Properties which I needed to heat through the winter season.

Throughout the winter season, the heating and maintenance of the aforementioned Subject Properties, has allowed the borrower's management team to ensure that the business viability of these key assets is protected. To date, I have paid Suburban Propane and Nido's approximately $101K and $ 16K respectively for fuel related to heating the Subject Properties. Despite this considerable expense, the Clubhouse is using less fuel in comparison to last season.

In addition to the heating and winterization of the Subject Properties, as discussed in my February 5, 2019 report, Dupuis Lawncare & Plowing was awarded a plowing contract with the objective of maintaining safe access to all Subject Properties, for employees, homeowners, fire and police, and vendors. The Borrower's management team expressed to me Dupuis did an exceptional job and maintained the roads appropriately despite considerable snowfall throughout the winter season.

In preparation for the spring season, I am currently working with the borrower's management team to bid out a landscaping contract for the Subject Properties.

***Apply to the Court for Additional Authority:***

The order calls for the receivership to notify the Court if it requires additional authority to secure and maintain the subject properties. At this time, I do not wish to apply for any additional authority.

In response to the previously referenced legal proceedings regarding the removal of the snowmobiles and Notice of Trespass, in late February 2019 I filed the Receiver's Emergency Motion for Retroactive Approval of Engagement of Counsel to retaining Vermont firm Sheehey Furlong & Behm P.C. On March 7, 2019 the Receiver's Emergency Motion for Retroactive Approval of Engagement of Counsel was granted by Judge Gerety.

**F T I**
C O N S U L T I N G

### V.      Employment and Payroll Considerations

Employees continue to provide services to both the Subject Properties and other real estate assets owned or controlled by entities affiliated with the Borrower, but not mortgaged to the Bank. For example, there are other inns and real property that are not collateral for the Berkshire Bank Loans that are serviced by the HIREHC employees.

Because I have not been given access to the company or the company's accounts, I rely on an arrangement, discussed below, that affords me access to these employees.

***Payroll and Employment:***

As discussed in the Previous Reports, I worked out a "deal" with James Barnes regarding payroll for the remaining four employees. This "deal" was made in a cooperative spirit with the Borrower and was acknowledged in an email on June 20, 2018. This agreement allowed the Receiver to avoid further layoffs; continues to allow the Receiver to avail itself of talented, local employees with significant history and institutional knowledge; permits the Borrower to continue with its restructuring efforts; and reduces the overall costs of the receivership.

In the period following the "deal" with Mr. Barnes, various changes in personnel have taken place. For instance, in September it was brought to my attention that the Interim President of HIREHC was relieved of his duties. In response to these changes, I tasked the Director of Mountain Operations to oversee the remaining staff. To date, the transition has been seamless. Additionally, to transition to the spring season, I have rehired a previously furloughed golf course employee to assist in the de-winterization and maintenance golf-course. The lift-mechanic who was previously retained for the winter season will be retained through the spring to shift focus to general maintenance at the Subject Properties.

On a bi-weekly basis, each party funds its portion of the payroll to a third-party payroll provider. The receivership has met all obligations to date and has ensured that all employee benefit payments have been funded.

As stated in my February 5, 2019 report, I was notified in December 2018 that due to lack of payment by the Borrower, the Cigna discontinued healthcare coverage for all the Borrower's management team as of November 30, 2018. In the period following notice, I investigated several solutions to the situation, but given numerous factors it was determined to not be cost effective to establish a new plan altogether. Ultimately the decision was made that I would fund the balance between the old amount paid and the new amount paid for all employees who were forced to go onto individual healthcare plans. To date, all healthcare costs have remained funded.

A number of the business records of HIREHC have been moved from the airport to the Hermitage Inn for safekeeping.

**VI.  Disbursement and Funding Detail**

*Bank Accounts:*

As referenced in the Previous Reports, the judge's Order does not allow the Receiver to seize the bank accounts of the Borrower.  As a result, I established an alternate mechanism to fund protective advances. I have a receivership account established at the Bank (the "Receiver Account") which is funded monthly by the Bank.

*Budget:*

As detailed in the Previous Reports, at the beginning of the Receivership I provided the Bank with a 13-week and 9-month budget estimating the costs of preserving its collateral. It is important to note, that at the time of the budget's creation, there was little clarity into many of the potential repairs and maintenance needed to protect the Subject Properties.

Given the continuation of the Receivership in December 2018 the Bank requested that I prepare a budget extension for the period until August 2019. The Updated Budget was prepared in January 2019 and submitted to Berkshire Bank. It is important to note that the Updated Budget does not make any assumptions towards the reopening or operations of the Subject Property. All of the expenses contained in the budget relate to maintaining the Subject Properties in their current "mothballed" state and ensuring their go-forward business viability.

Beginning in February 2019, I have operated under the Updated Budget and corresponding funding schedule from Berkshire for the periods following the expiration of the original budget.

*Sources & Uses of Receiver Funds:*

Illustrated in the chart below, to date approximately $875K has been funded to the Receiver Account. Approximately $790K of these funds have been provided by the Bank in accordance with the process outlined the Previous Reports. The remaining $85K was received as a result of an insurance claim. To date, the receivership has expended approximately $840K of the $875K, resulting in $36K in excess cash.

| Sources & Uses (7/1/18 through 5/1/19) | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Berkshire Bank Funding | $ 790,200.00 | Employee Payroll & Benefits | $ 336,176.51 |
| Insurance Claim | 85,047.23 | Property Repairs & Maintenance | 266,359.52 |
| Other Receipts | 165.85 | Professional Fees | 227,011.11 |
| | | Employee Expense Reimbursements | 9,211.98 |
| | | Bank Fees | 890.00 |
| **Total Sources** | **$ 875,413.08** | **Total Uses** | **$ 839,649.12** |
| *Net Increase in Cash* | *$ 35,763.96* | | |

The chart below represents the Receiver's expenses to date in relation to the funding provided by the Bank.

**EXHIBIT**

Fifth Report of Receiver Alan Tantleff

FTI CONSULTING

| Week Ending | Month 1 6-Jul-18 | Month 2 3-Aug-18 | Month 3 7-Sep-18 | Month 4 5-Oct-18 | Month 5 2-Nov-18 | Month 6 7-Dec-18 | Month 7 4-Jan-19 | Month 8 8-Feb-19 | Month 9 8-Mar-19 | Month 10 5-Apr-19 | Month 11 1-May-19 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Receipts | $ 80,500 | $ 83,400 | $ 75,566 | $ 154,147 | $ 65,500 | $ 53,100 | $ 52,600 | $ 52,600 | $ 88,000 | $ 88,000 | $ 82,000 | $ 875,413 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Employee Payroll & Benefits | (23,348) | (25,749) | (33,485) | (26,360) | (27,276) | (46,344) | (31,537) | (34,784) | (30,854) | (26,708) | (29,733) | (336,177) |
| Property Repairs & Maintenance | - | (8,647) | (21,172) | (11,237) | (24,741) | (43,826) | (20,114) | (46,003) | (48,094) | (26,182) | (16,343) | (266,360) |
| Employee Expense Reimbursements | - | (1,000) | (166) | (23) | (594) | (200) | (1,066) | (3,858) | (1,968) | (101) | (237) | (9,212) |
| Total Operating Disbursements | (23,348) | (35,396) | (54,823) | (37,621) | (52,611) | (90,370) | (52,716) | (84,645) | (80,916) | (52,991) | (46,313) | (611,748) |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Professional Fees | - | (35,099) | (34,974) | (17,225) | (17,792) | - | (35,101) | (24,130) | (17,225) | (17,225) | (28,240) | (227,011) |
| Bank Fees | (90) | (45) | (100) | (100) | (60) | (125) | (70) | (70) | (70) | (100) | (60) | (890) |
| Total Non-Operating Disbursements | (90) | (35,144) | (35,074) | (17,325) | (17,852) | (125) | (35,171) | (24,200) | (17,295) | (17,325) | (28,300) | (227,901) |
| Total Cash Disbursements | (23,438) | (70,539) | (89,897) | (54,946) | (70,463) | (90,495) | (87,888) | (108,845) | (98,211) | (70,316) | (74,613) | (839,649) |
| Net Cash | $ 57,062 | $ 12,861 | $ (14,331) | $ 99,201 | $ (4,963) | $ (37,395) | $ (35,288) | $ (56,245) | $ (10,211) | $ 17,684 | $ 7,387 | $ 35,764 |

*Berkshire Bank Funded Payments:*

The Bank continues to pay directly for certain utilities and force-placed insurance on the Subject Properties, as it was before the receivership. As a result, the Updated Budget does not include expenses that the Bank continues to pay and are not paid by the Receiver (such as real estate taxes, water, and electric), generally that are senior to the loan.

*The Receiver's Fees:*

This report is due exactly eleven months after the effective date of the receivership and one quarter after the submission of my Fourth Receiver Report. As mentioned in the Previous Reports, I will be paid in arrears, i.e. a bill be prepared after each month. To date, FTI Consulting has been compensated for work performed through April 5, 2019. Copies of the invoices submitted since the Previous Reports are included in the appendix of this Report.

*****

**Respectfully Submitted**

_____

**Alan Tantleff**

**Receiver**

*Dated: May 6, 2019*

Case 19-10214   Doc       1682   Filed 05/24/19   Entered       05/24/19 09:22:05
Desc          Exhibit Exhibit Blank Exhibit Page   12 of 38
Fifth Report of Receiver Alan Tantleff

EXHIBIT F

FTI CONSULTING

VII.    Appendices

    a.   Notice Against Trespass

TO:   James R. Barnes, individually and as duly
      authorized agent of Hermitage Inn Real Estate
      Holding Company LLC, and Hermitage Club LLC
      c/o Robert Fisher, Esq.
      Fisher & Fisher
      114 Main Street
      PO Box 621
      Brattleboro, VT 05302-0621
      rmfisher@sover.net

### NOTICE AGAINST TRESPASS

        Pursuant to 13 V.S.A. §3705(c), you are hereby notified by Alan Tantleff
Receiver for Hermitage Inn Real Estate Holding Company LLC and Hermitage
Club LLC under the Receivership Order of the Vermont Superior Court, Civil
Division, Windham Unit entered June 6, 2018, in Docket No. 63-2-18 Wmcv
and attached hereto "(Receivership Order") that you are not allowed to be
present upon the Subject Properties as defined by the Receivership Order for
the purpose of entering any locked or unlocked buildings and removing
personal property, or entering any open part of the Subject Properties and
removing personal property, without the prior written permission of the
Receiver. Your further unauthorized presence on these Subject Properties as
defined by the Receivership Order will be considered a trespass and may
subject you to civil and criminal prosecution.

        A person shall be imprisoned for not more than one year or fined not
more than $500.00 or both, if, without legal authority or consent of the person
in lawful possession, he enters or remains on any land, or enters a building
other than a residence, whose access is normally locked, whether or not the
access is actually locked, as to which such notice against trespass is given.

        Dated at _New York_____, _New York_____ this 18th day of
February 2019.

                                    _____
                                    Alan Tantleff
                                    FTI Consulting, Inc.
                                    3 Times Square Fl 9
                                    New York, NY 10036
                                    Alan.Tantleff@fticonsulting.com
                                    (212) 499-3613

8582/1-895314

    **b.**  **Redacted Police Report**

WILMINGTON POLICE DEPARTMENT INVESTIGATION REPORT

**CASE #:**  19WM00324

**OFFICER:**  Patrolman Andrew Kirkman

**INCIDENT:**  Breaking & Entering

**DATE/TIME COMPLAINT RECEIVED:** 04/05/2019, 10:00 am

**DATE/TIME OF INCIDENT:**  N/A

**COMPLAINANT:** Lynn Bucossi DOB: 04/20/1964
71 Holland Road
E. Dover, VT 05341
802-681-3434

**ACCUSED:**  Unknown

**WITNESSES:** N/A

**DESCRIPTION OF SCENE:** Main lobby, kitchen area, lower bar room,
and boiler rooms at the Horizon Inn
861 Rt. 9, Wilmington, VT 05363

**PROPERTY STOLEN:** Copper piping (Est. $10,000)
Security Camera system hard drive ($2,500)

**MODUS OPERANDI:**

**TANGIBLE EVIDENCE:** Statement from complainant
37 photographs
Copy of electric utility bill (Account #317410000)

**NARRATIVE:**

1.  On April 5, 2019 at approximately 10:00am, Wilmington Police Dispatch received a report of possible break & entering and burglary at the Horizon Inn located at 861 Rt. 9 in Wilmington, Vermont. Chief Murano and I responded to the call to meet with the complainant, Lynn Bucossi (DOB 04/20/1964).

2.  We arrived on scene and checked around the area. There were no vehicles present and no signs of any recent activity of people entering the inn from the rear entrances. We also found that the exterior security camera on the northwest side of the inn, next to a second floor window, had been spray painted with black paint. We waited on scene and met with Lynn Bucossi who told us that on April 3, 2019 at approximately 4:00pm she arrived at the inn to do a property check and found the office door was open. Upon further inspection, she found that the server room had been broken into and that the security camera server was missing. She also found that dining room lights were on and that the two vending machines located in the dining room area had been broken into and the tables had been tipped on their sides to block the windows. The mudroom door in the back kitchen was also closed but not locked. She said that she left before completing the property check because she was concerned the individuals who broke into the inn could still be inside.

Aaron Sherritt and inspected the entire property. She said they found evidence of activity in four rooms and that the lower level bar room had a section of ceiling removed and the copper piping covered by it had been cut and removed. She said they also found that mattresses from the pool area had been moved and placed against the windows in the bar room. Copper piping in the boiler room had also been cut and removed. When we asked Lynn why she had not reported the April 3rd incident, Lynn told us that she didn't want to bother police with it.

4.   Chief Murano and I entered the inn via the main lobby entrance with Lynn and Aaron. We went to the office and found that the main key box was empty. They told us that whoever had broken into the place had also stolen all the keys to the rooms. The server room door was open and the equipment had been tampered with. The hard drive to the CCTV video feed was also missing. Lynn showed Chief Murano and I several rooms that she claimed had been recently occupied. One of the rooms had a small heater in it and cigarette ashes in the sink.

5.   Chief Murano and I found the two vending machines had been broken into. All the items and cash had been taken. The vending machine to the left appeared to have been pried open. The vending machine to the right appeared to have been broken into by cutting the door hinges off.

6.   We went to the boiler room and found evidence of other copper piping having been cut and removed. We also found some pipes laying on the ground and on several dining room chairs that were stored in the boiler room. The chairs and pipes were covered with dust. We also found that a pipe had been cut from the floor, but that a chair had been moved over the area of the cut. The chair also was covered in dust and there were no signs it had been recently moved or disturbed.

7.   Investigation is ongoing.



8.   Investigation is active and open at this time.

c.  **FTI Consulting Invoices – Submitted February 26, 2019, March 15, 2019 and April 22, 2019**

**FTI** **CONSULTING**

FTI Consulting, Inc.
227 West Monroe Street
Suite 900
Chicago, IL 60606

800.998.1755 telephone
312.759.8119 facsimile

www.fticonsulting.com

February 26, 2019

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

Re:  Project Retreat '18
    FTI Job No. 424772.0001
    Invoice # 7503980

Enclosed is our invoice for professional services rendered in connection with the above referenced matter.  This invoice covers professional fees and expenses through February 5, 2019.

Please do not hesitate to call me to discuss this invoice or any other matter.

Sincerely yours,

Alan Tantleff
Senior Managing Director

Enclosures

**F T I**
**CONSULTING**

*Invoice Remittance*

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

February 26, 2019
FTI Invoice No. 7503980
FTI Job No.  424772.0001
Terms: Payment on Presentation
FEDERAL I.D. NO. 52-1261113

Re: Project Retreat '18

Current Invoice Period:  Charges Posted through February 5, 2019

| | |
|---|---:|
| Professional Services............................................................................... | $25,850.00 |
| Less Voluntary Reduction............................................................... | ($9,600.00) |
| Net Professional Fees.......................................................... | $16,250.00 |
| Expenses.............................................................................. | $975.00 |
| Total Amount Due this Period...................................................... | $17,225.00 |
| **Total Amount Due**................................................................. | **$17,225.00** |

*Please Remit Payment To: FTI Consulting, Inc.*
*P.O. Box 418178*
*Boston, MA 02241-8178*

*Wire Payment To: Bank of America, NA*
*103 West 33rd Street, New York, NY 10001*
*Account #: 003939577164*
*ABA #: 026009593*

*ACH Payments To: Bank of America, NA*
*1455 Market Street, San Francisco, CA 94109*
*Account #: 003939577164*
*ABA #: 052001633*

**F T I**
**C O N S U L T I N G**

*Invoice Summary*

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

February 26, 2019
FTI Invoice No. 7503980
FTI Job No.  424772.0001
Terms Payment on Presentation
FEDERAL I.D. NO. 52-1261113

Re: Project Retreat '18

Current Invoice Period:  Charges Posted through February 5, 2019

| Name | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Alan Tantleff | Senior Managing Director | $1,050.00 | 11.0 | $11,550.00 |
| Michael Galardi | Consultant | $440.00 | 32.5 | $14,300.00 |
| **Total Hours and Fees** | | | **43.5** | **$25,850.00** |
| | | | | |
| **Less Voluntary Reduction** | | | | **($9,600.00)** |
| **Total Net Fees** | | | | **$16,250.00** |
| Administrative Fee (6%) | | | | $975.00 |
| **Total Expenses** | | | | **$975.00** |
| | | | | |
| **Invoice Total for Current Period** | | | | **$17,225.00** |



*Invoice Activity*

## PROFESSIONAL SERVICES

### Alan Tantleff

| Date | Description | Hours | |
|---|---|---|---|
| 01/09/19 | Miscellaneous emails on ski opening, budget | 1.50 | |
| 01/16/19 | Budget | 1.25 | |
| 01/18/19 | Invoices, employee leasing, etc | 1.00 | |
| 01/22/19 | Various emails, budget review | 1.50 | |
| 01/23/19 | Budget | 1.00 | |
| 01/25/19 | Letter email from Dept of Labor | 0.50 | |
| 01/26/19 | Misc follow up | 0.50 | |
| 01/31/19 | Budget | 0.50 | |
| 02/01/19 | Budget | 0.50 | |
| 02/04/19 | Call with E. Glynn | 0.25 | |
| 02/04/19 | Report | 1.00 | |
| 02/05/19 | Review quarterly report | 1.00 | |
| 02/05/19 | Call with M. Kurzman re: Dunn; review of files | 0.50 | |
| | $1,050.00   per hour x total hrs of | 11.00 | $11,550.00 |

### Michael Galardi

| Date | Description | Hours |
|---|---|---|
| 01/07/19 | Participate in weekly call with management team. | 0.50 |
| 01/07/19 | Correspond with ELC and property re: employee leasing. | 0.50 |
| 01/07/19 | Review and pay invoices. | 0.50 |
| 01/07/19 | Prepare updated budget from February - August. | 1.00 |
| 01/08/19 | Process edits to updated budget analysis. | 1.50 |
| 01/08/19 | Review correspondence re: permits and other updates. | 0.25 |
| 01/08/19 | Correspond with A. Tantleff re: budget analysis. | 0.50 |
| 01/09/19 | Correspond re: updated Hermitage Receiver budget. | 0.50 |
| 01/09/19 | Process edits to and review updated Hermitage Receivership budget. | 1.00 |
| 01/09/19 | Review employee leasing quote and correspond with ELQ. | 0.25 |
| 01/09/19 | Review and pay outstanding invoices. | 0.50 |
| 01/10/19 | Correspond with management re: invoices and updates. | 0.25 |
| 01/10/19 | Pay outstanding invoices. | 0.25 |
| 01/10/19 | Correspond with Berkshire and team re: budgeting. | 0.50 |
| 01/11/19 | Follow up with interested parties re: Hermitage Inn and other items. | 0.25 |
| 01/11/19 | Process edits to proposed Berkshire Bank budget. | 1.50 |
| 01/11/19 | Correspond with A. Tantleff re: budget. | 0.25 |
| 01/11/19 | In-depth review of historical employee compensation and payroll. | 0.50 |
| 01/12/19 | Review Glebe Lease invoice. | 0.25 |
| 01/14/19 | Process edits to Berkshire Bank Receivership budget. | 1.25 |
| 01/14/19 | Weekly call with management. | 0.50 |
| 01/14/19 | Correspond with management and Berkshire re: Glebe Lease and Employee Leasing. | 0.25 |
| 01/14/19 | Participate in call with Berkshire Bank. | 0.50 |
| 01/14/19 | Update cash flow analysis. | 0.75 |
| 01/15/19 | Review budget and correspond with Berkshire re: updates. | 0.25 |
| 01/15/19 | Correspond with necessary parties re: Employee Leasing. | 0.50 |
| 01/16/19 | Correspond with A. Tantleff re: outstanding case issues and employee leasing. | 0.75 |
| 01/16/19 | Correspond with Property Management re: outstanding items. | 0.50 |
| 01/16/19 | Process payroll and fund additional invoices. | 0.25 |
| 01/16/19 | Participate in call with ADP re: employee leasing. | 0.25 |
| 01/17/19 | Correspond with property management re: employee leasing. | 0.50 |
| 01/17/19 | Prepare documents for employee leasing quotes. | 0.25 |
| 01/18/19 | Correspond with ADP re: employee leasing. | 0.25 |



*Invoice Activity*

| 01/18/19 | Correspond with ELQ re: employee leasing. | 0.25 | |
|---|---|---|---|
| 01/18/19 | Correspond with T. Morse re: employee leasing / worker's comp. | 0.25 | |
| 01/21/19 | Correspond with property management re: updates. | 0.25 | |
| 01/22/19 | Weekly call with property management. | 0.50 | |
| 01/22/19 | Correspond with ADP re: employee leasing. | 0.25 | |
| 01/22/19 | Correspond with Alan Tantleff re: case updates. | 0.25 | |
| 01/23/19 | Updated cash disbursement analysis. | 0.25 | |
| 01/25/19 | Correspond with management re: invoices. | 0.25 | |
| 01/28/19 | Process and pay invoices. | 0.50 | |
| 01/28/19 | Weekly call with management. | 0.50 | |
| 01/29/19 | Correspond with ADP re: employee leasing. | 0.50 | |
| 01/29/19 | Update cash analysis. | 0.25 | |
| 01/29/19 | Prepare Fourth Receivership Report. | 1.00 | |
| 01/30/19 | Correspond with Property Management and A. Tantleff re: updates. | 0.50 | |
| 01/30/19 | Prepare Receiver Report. | 1.25 | |
| 01/31/19 | Correspond with management re: payroll and FTI report. | 0.50 | |
| 01/31/19 | Prepare Receiver Report. | 1.75 | |
| 01/31/19 | Review, process, and pay invoices/payroll. | 0.50 | |
| 02/01/19 | Review and pay invoices. | 0.25 | |
| 02/01/19 | Prepare Receiver Report. | 1.00 | |
| 02/02/19 | Process edits to Receiver Report. | 1.00 | |
| 02/03/19 | Process edits to Receiver Report. | 0.75 | |
| 02/04/19 | Review correspondence re: legal updates and proceedings. | 0.25 | |
| 02/04/19 | Process edits to Receiver Report. | 0.75 | |
| 02/04/19 | Call with Vermont air permit officials. | 0.25 | |
| 02/04/19 | Weekly call with management. | 0.25 | |
| 02/05/19 | Correspond with Property Management and Counsel re: reporting. | 0.50 | |
| 02/05/19 | Process edits to Receiver Report. | 0.50 | |
| | $440.00   per hour x total hrs of | 32.50 | $14,300.00 |

**EXHIBIT F**

*Invoice Activity*

## EXPENSES

Admin

| | | |
|---|---|---|
| 02/05/19 | Administrative Expense | $975.00 |
| | Total | $975.00 |

FTI Consulting, Inc.
227 West Monroe Street
Suite 900
Chicago, IL 60606

800.998.1755 telephone
312.759.8119 facsimile

www.fticonsulting.com

March 15, 2019


Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310


Re:  <u>Project Retreat '18</u>
    FTI Job No. 424772.0001
    Invoice # 7505952


Enclosed is our invoice for professional services rendered in connection with the above referenced matter.  This invoice covers professional fees and expenses through March 5, 2019.

Please do not hesitate to call me to discuss this invoice or any other matter.

Sincerely yours,


Alan Tantleff
Senior Managing Director


Enclosures

**F T I**
**CONSULTING**

*Invoice Remittance*

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

March 15, 2019
FTI Invoice No. 7505952
FTI Job No. 424772.0001
Terms: Payment on Presentation
FEDERAL I.D. NO. 52-1261113

Re: Project Retreat '18

Current Invoice Period: Charges Posted through March 5, 2019

| | |
|---|---|
| Professional Services........................................................................... | $18,497.50 |
| Less Voluntary Reduction.................................................................. | ($2,247.50) |
| Net Professional Fees....................................................................... | $16,250.00 |
| Expenses............................................................................................ | $975.00 |
| Total Amount Due this Period........................................................ | $17,225.00 |
| **Total Amount Due**..................................................................... | **$17,225.00** |

*Please Remit Payment To: FTI Consulting, Inc.*
*P.O. Box 418178*
*Boston, MA 02241-8178*

*Wire Payment To: Bank of America, NA*
*103 West 33rd Street, New York, NY 10001*
*Account #: 003939577164*
*ABA #: 026009593*

*ACH Payments To: Bank of America, NA*
*1455 Market Street, San Francisco, CA 94109*
*Account #: 003939577164*
*ABA #: 052001633*

EXHIBIT

**FTI** CONSULTING

*Invoice Summary*

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

March 15, 2019
FTI Invoice No. 7505952
FTI Job No.  424772.0001
Terms Payment on Presentation
FEDERAL I.D. NO. 52-1261113

Re: Project Retreat '18

Current Invoice Period:  Charges Posted through March 5, 2019

| Name | Title | Rate | Hours | Total |
|------|-------|------|-------|-------|
| Alan Tantleff | Senior Managing Director | $1,050.00 | 11.8 | $12,337.50 |
| Michael Galardi | Consultant | $440.00 | 14.0 | $6,160.00 |
| **Total Hours and Fees** | | | **25.8** | **$18,497.50** |
| | | | | |
| **Less Voluntary Reduction** | | | | **($2,247.50)** |
| **Total Net Fees** | | | | **$16,250.00** |
| Administrative Fee (6%) | | | | $975.00 |
| **Total Expenses** | | | | **$975.00** |
| | | | | |
| **Invoice Total for Current Period** | | | | **$17,225.00** |



*Invoice Activity*

## PROFESSIONAL SERVICES

### Alan Tantleff

| Date | Description | Hours |
|---|---|---|
| 02/06/19 | Inventory, budget, invoices, etc. | 1.00 |
| 02/06/19 | Refine email | 0.25 |
| 02/07/19 | Inventory, questions on snowmaking equipment | 0.50 |
| 02/11/19 | Budget email to Berkshire | 0.25 |
| 02/11/19 | Weekly call | 0.50 |
| 02/12/19 | Various emails, invoices | 0.50 |
| 02/15/19 | Snowmobiles incident, calls with counsel, call with A. Sherritt, emails, etc. | 1.00 |
| 02/18/19 | Emails to Barnes, emails to counsel, etc. | 0.75 |
| 02/18/19 | Issues with members congregating, emails with A. Sherritt, emails to members | 1.00 |
| 02/19/19 | Calls with counsel, notice of no trespass, call with P. Landauer | 1.25 |
| 02/20/19 | Call with counsel | 0.50 |
| 02/22/19 | Call with M. Kurzman | 0.25 |
| 02/25/19 | Various issues, interview counsel | 0.75 |
| 02/25/19 | Weekly call | 0.50 |
| 02/27/19 | Pay bills, emails with counsel, retention agreement with counsel | 1.00 |
| 03/04/19 | Weekly call | 0.75 |
| 03/05/19 | Misc follow up with counsel, review draft filing on Notice of Trespass | 1.00 |

| | $1,050.00   per hour x total hrs of | 11.75 | $12,337.50 |
|---|---|---|---|

### Michael Galardi

| Date | Description | Hours |
|---|---|---|
| 02/06/19 | Pay and review outstanding invoices. | 0.25 |
| 02/06/19 | Correspond with management re: invoices. | 0.25 |
| 02/07/19 | Correspond with Counsel re: budget. | 0.25 |
| 02/08/19 | Correspond with management re: invoices. | 0.25 |
| 02/11/19 | Review invoices for payment. | 0.25 |
| 02/11/19 | Correspond with Berkshire re: budget. | 0.25 |
| 02/11/19 | Weekly call with management. | 0.50 |
| 02/12/19 | Correspond re: funding of budget and processing payments. | 0.50 |
| 02/13/19 | Correspond with C. Bullock re: payroll. | 0.25 |
| 02/13/19 | Correspond with A. Tantleff re: updates and outstanding items. | 0.25 |
| 02/14/19 | Process employee payroll. | 0.25 |
| 02/14/19 | Review correspondence re: case updates and legal proceedings. | 0.25 |
| 02/15/19 | Review outstanding invoices. | 0.25 |
| 02/15/19 | Process and pay outstanding invoices. | 0.50 |
| 02/15/19 | Participate in call re: hermitage snowmobile updates and correspondence with J. Barnes. | 0.75 |
| 02/17/19 | Review correspondence re: snowmobiles, restructuring, and other updates. | 0.50 |
| 02/18/19 | Participate in calls and assist A. Tantleff with legal updates. | 0.75 |
| 02/18/19 | Review and fund invoices. | 0.50 |
| 02/18/19 | Update cash analysis. | 0.50 |
| 02/19/19 | Assist A. Tantleff with legal update and submissions. | 0.50 |
| 02/19/19 | Call with Berkshire Bank, Bank Counsel, and Receiver Counsel. | 0.50 |
| 02/19/19 | Correspond with members re: reporting and updates. | 0.25 |
| 02/20/19 | Review and pay invoices. | 0.25 |
| 02/20/19 | Review correspondence re: legal proceedings. | 0.25 |
| 02/20/19 | Weekly call with property management. | 0.50 |
| 02/22/19 | Review Fisher Reply to Receiver Letter. | 0.25 |
| 02/25/19 | Correspond and prepare documents for VT Receiver Counsel | 0.25 |



*Invoice Activity*

| | | |
|---|---|---|
| 02/25/19 | Review correspondence and updates from property management. | 0.25 |
| 02/25/19 | Weekly call with management. | 0.25 |
| 02/26/19 | Correspond with Property Management. | 0.25 |
| 02/26/19 | Review and pay outstanding invoices. | 0.50 |
| 02/27/19 | Update cash flow analysis. | 0.25 |
| 02/27/19 | Review and process payroll. | 0.25 |
| 02/28/19 | Correspond with property management re: invoices. | 0.25 |
| 03/01/19 | Correspond with Vermont and Connecticut DMV. | 0.25 |
| 03/01/19 | Correspond with Property Management re: invoices. | 0.25 |
| 03/01/19 | Correspond with Receiver Counsel re: updates. | 0.25 |
| 03/04/19 | Process and pay invoices. | 0.25 |
| 03/04/19 | Correspond with Property Management. | 0.50 |
| 03/05/19 | Participate in call with VT Receiver Counsel. | 0.50 |

|  | $440.00 | per hour x total hrs of | 14.00 | $6,160.00 |

EXHIBIT
Desc       Exhibit   Page       29 of 38

*Invoice Activity*

---

## *EXPENSES*

Admin

| | | | | |
|---|---|---|---|---|
| 03/05/19 | Administrative Expense | | | $975.00 |
| | | | Total | $975.00 |

**EXHIBIT**

FTI Consulting, Inc.
227 West Monroe Street
Suite 900
Chicago, IL 60606

800.998.1755 telephone
312.759.8119 facsimile

www.fticonsulting.com

April 22, 2019

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

Re:  Project Retreat '18
     FTI Job No. 424772.0001
     Invoice # 7509723

Enclosed is our invoice for professional services rendered in connection with the above referenced matter.  This invoice covers professional fees and expenses through April 5, 2019.

Please do not hesitate to call me to discuss this invoice or any other matter.

Sincerely yours,

Alan Tantleff
Senior Managing Director

Enclosures

**FTI CONSULTING**

*Invoice Remittance*

Elizabeth Glynn, Esq.                                          April 22, 2019
Ryan Smith & Carbine, Ltd.                          FTI Invoice No. 7509723
98 Merchants Row                                    FTI Job No.   424772.0001
P.O. Box 310                                Terms: Payment on Presentation
Rutland, VT 05702-0310                    FEDERAL I.D. NO. 52-1261113

Re: Project Retreat '18

Current Invoice Period:  Charges Posted through April 5, 2019

| | |
|---|---:|
| Professional Services | $18,168.75 |
| Less Voluntary Reduction | ($1,918.75) |
| Net Professional Fees | $16,250.00 |
| Expenses | $1,688.03 |
| Total Amount Due this Period | $17,938.03 |
| **Total Amount Due** | **$17,938.03** |

*Please Remit Payment To: FTI Consulting, Inc.*
                        *P.O. Box 418178*
                        *Boston, MA 02241-8178*

*Wire Payment To: Bank of America, NA*          *ACH Payments To: Bank of America, NA*
*103 West 33rd Street, New York, NY 10001*      *1455 Market Street, San Francisco, CA 94109*
*Account #: 003939577164*                       *Account #: 003939577164*
*ABA #: 026009593*                              *ABA #: 052001633*

**FTI** CONSULTING

*Invoice Summary*

Elizabeth Glynn, Esq.
Ryan Smith & Carbine, Ltd.
98 Merchants Row
P.O. Box 310
Rutland, VT 05702-0310

April 22, 2019
FTI Invoice No. 7509723
FTI Job No.  424772.0001
Terms Payment on Presentation
FEDERAL I.D. NO. 52-1261113

Re: Project Retreat '18

Current Invoice Period:  Charges Posted through April 5, 2019

| Name | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Alan Tantleff | Senior Managing Director | $1,050.00 | 12.0 | $12,600.00 |
| Michael Galardi | Senior Consultant | $545.00 | 2.8 | $1,498.75 |
| Michael Galardi | Senior Consultant | $440.00 | 9.3 | $4,070.00 |
| **Total Hours and Fees** | | | **24.0** | **$18,168.75** |
| | | | | |
| **Less Voluntary Reduction** | | | | **($1,918.75)** |
| **Total Net Fees** | | | | **$16,250.00** |
| Administrative Fee (6%) | | | | $975.00 |
| Business Meals | | | | $64.27 |
| Lodging | | | | $363.44 |
| Transportation | | | | $285.32 |
| **Total Expenses** | | | | **$1,688.03** |
| | | | | |
| **Invoice Total for Current Period** | | | | **$17,938.03** |



*Invoice Activity*

## PROFESSIONAL SERVICES

### Alan Tantleff

| Date | Description | Hours | Amount |
|---|---|---|---|
| 03/06/19 | Misc issues | 1.00 | |
| 03/11/19 | Weekly call, respond to P. Landauer | 0.75 | |
| 03/14/19 | Tour meeting with mgmt team, P. Landauer, calls with Art consultant | 7.00 | |
| 03/18/19 | Misc follow-up, artwork, staffing, meet M. Galardi | 0.50 | |
| 03/20/19 | Inventory, invoices, etc. | 0.50 | |
| 03/21/19 | Artwork valuation | 1.00 | |
| 03/25/19 | Weekly call | 0.50 | |
| 03/26/19 | Payroll, misc. expenses | 0.25 | |
| 04/01/19 | Weekly call | 0.50 | |
| | $1,050.00   per hour x total hrs of | 12.00 | $12,600.00 |

### Michael Galardi

| Date | Description | Hours | Amount |
|---|---|---|---|
| 04/01/19 | Review outstanding items re: invoices, payments, and general updates. | 0.25 | |
| 04/01/19 | Weekly call with management. | 0.50 | |
| 04/02/19 | Update cash disbursement analysis. | 0.50 | |
| 04/02/19 | Review and pay outstanding invoices. | 0.50 | |
| 04/04/19 | Pay invoices and update cash analysis. | 0.50 | |
| 04/04/19 | Correspond with Berkshire Bank re: Dimmick Checks. | 0.25 | |
| 04/05/19 | Correspond with Receiver Counsel re: outstanding items. | 0.25 | |
| | $545.00   per hour x total hrs of | 2.75 | $1,498.75 |
| 03/06/19 | Update cash disbursement analysis. | 0.75 | |
| 03/06/19 | Correspond with team re: snowmobiles & DMV updates. | 0.50 | |
| 03/07/19 | Correspond with A. Tantleff re: updates. | 0.25 | |
| 03/11/19 | Weekly call with property management. | 0.50 | |
| 03/11/19 | Pay outstanding invoices and update cash analysis. | 0.75 | |
| 03/11/19 | Weekly call with property management. | 0.50 | |
| 03/12/19 | Correspond with property management re: updates. | 0.50 | |
| 03/13/19 | Fund Payroll and correspond with C. Bullock re: same. | 0.50 | |
| 03/14/19 | Correspond with management re: outstanding invoices. | 0.50 | |
| 03/18/19 | Review property artwork correspondence. | 0.25 | |
| 03/18/19 | Correspond with management re: staffing requirements. | 0.25 | |
| 03/18/19 | Weekly call with management. | 0.50 | |
| 03/20/19 | Pay outstanding invoices. | 0.25 | |
| 03/22/19 | Correspond with A. Tantleff re: leasing requests and case updates. | 0.50 | |
| 03/25/19 | Correspond with C. Bullock. | 0.25 | |
| 03/25/19 | Weekly call with management. | 0.50 | |
| 03/26/19 | Correspond with C. Bullock re: property assets & leases. | 0.50 | |
| 03/27/19 | Pay invoices and fund employee payroll. | 0.50 | |
| 03/28/19 | Correspond with property management re: invoices. | 0.50 | |
| 03/29/19 | Correspond with property management re: invoicing. | 0.50 | |
| | $440.00   per hour x total hrs of | 9.25 | $4,070.00 |



*Invoice Activity*

## EXPENSES

### Admin

| | | |
|---|---|---|
| 04/05/19 | Administrative Expense | $975.00 |
| | Total | $975.00 |

### Business Meals

| | | |
|---|---|---|
| 03/12/19 | Meals - Travel Related - Alan Tantleff. Beverage during travel to Vermont for Hermitage meeting | $6.75 |
| 03/12/19 | Meals - Travel Related - Alan Tantleff. Lunch during travel to Vermont for Hermitage meeting | $5.40 |
| 03/13/19 | Meals - Travel Related - Alan Tantleff. Beverage during travel to Vermont for Hermitage meeting | $5.86 |
| 03/13/19 | Meals - Travel Related - Aaron Sherritt, Alan Tantleff.  Lunch during travel to Vermont for Hermitage meeting | $35.75 |
| 03/14/19 | Meals - Travel Related - Alan Tantleff. Lunch during travel to Vermont for Hermitage meeting | $10.51 |
| | Total | $64.27 |

### Lodging

| | | |
|---|---|---|
| 03/12/19 | Lodging - Alan Tantleff 03/12/2019 - 03/13/2019. Sales and occupancy tax | $12.54 |
| 03/13/19 | Tips - Hotel, Alan Tantleff.  Cash tip to hotel staff during travel to Vermont for Hermitage meeting | $4.00 |
| 03/13/19 | Lodging - Alan Tantleff 03/12/2019 - 03/13/2019. Hotel during travel to Vermont for Hermitage meeting | $104.49 |
| 03/14/19 | Lodging - Alan Tantleff 03/13/2019 - 03/14/2019. Hotel during Hermitage meeting | $204.94 |
| 03/14/19 | Lodging - Alan Tantleff 03/13/2019 - 03/14/2019. Room tax and resort fee | $31.47 |
| 03/14/19 | Tips - Hotel, Alan Tantleff.  Cash tip to hotel staff during Hermitage visit | $6.00 |
| | Total | $363.44 |

### Transportation

| | | |
|---|---|---|
| 03/12/19 | Parking - Alan Tantleff.  Parking during travel to Vermont for Hermitage meeting | $5.00 |
| 03/12/19 | Car Rental - Gas - Alan Tantleff.  Gas during travel to Vermont for Hermitage meeting | $33.50 |
| 03/13/19 | Tolls - Alan Tantleff.  Tolls during travel to Vermont for Hermitage meeting | $0.30 |
| 03/14/19 | Car Rental - Standard/Full Size, Alan Tantleff, 03/11/2019 - 03/14/2019.  Car rental for visit to Cornell University for real estate speech. Then driving to Vermont for Hermitage meeting. | $215.43 |
| 03/14/19 | Taxi - Alan Tantleff, White Plains Airport - Pleasantville, NY.  Taxi home after returning rental car at White Plains airport after Cornell trip and Hermitage trip | $11.40 |
| 03/14/19 | Car Rental - Gas - Alan Tantleff.  Gas during travel to Vermont for Hermitage meeting | $19.69 |
| | Total | $285.32 |

Case 19-10214  Doc  1682  Filed 05/24/19  Entered  05/24/19 09:22:45
Desc  Exhibit Exhibit Bank Exhibit N Page  35 of 38

Fifth Report of Receiver Alan Tantleff

EXHIBIT F

FTI
CONSULTING™

d.  Berkshire Bank Statement – April 30, 2019

# BERKSHIRE BANK

America's Most Exciting Bank™
P.O. Box 1308, Pittsfield, MA 01202

**Statement of Account**

**Last statement:** March 31, 2019
**This statement:** April 30, 2019
**Total days in statement period: 30**

**0200429883    Page 1 of 2**

Direct inquiries to:
800-773-5601    OR
BERKSHIREBANK.COM

FTI CONSULTING INC
ALAN TANTLEFF, AS RECEIVER
3 TIME SQ
NEW YORK NY 10036-6564

Berkshire Bank
PO Box 1308
Pittsfield, MA 01202-1308

0

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Business Checking 500 | 0200429883 | $35,763.96 |

## Business Checking 500

*Account number*
0200429883

| Date | Description | Additions | Subtractions | Balance |
|---|---|---|---|---|
| 03-31 | Beginning balance | | | $38,671.82 |
| 04-03 | #ACH Debit | | -106.72 | 38,565.10 |
| | SUBURBAN HEATING BILL PAYMT 051400501608376 | | | |
| 04-03 | #ACH Debit | | -309.31 | 38,255.79 |
| | SUBURBAN HEATING BILL PAYMT 051400501608375 | | | |
| 04-03 | #ACH Debit | | -638.22 | 37,617.57 |
| | SUBURBAN HEATING BILL PAYMT 051400501608373 | | | |
| 04-03 | #ACH Debit | | -4,194.82 | 33,422.75 |
| | SUBURBAN HEATING BILL PAYMT 051400501608370 | | | |
| 04-03 | #ACH Debit | | -5,021.09 | 28,401.66 |
| | SUBURBAN HEATING BILL PAYMT 051400501608371 | | | |
| 04-05 | #ACH Debit | | -25.00 | 28,376.66 |
| | BERK CLIENT BILL BEB FEES 190405 | | | |
| 04-09 | Check  118 | | -512.56 | 27,864.10 |
| 04-10 | #Deposit | 82,000.00 | | 109,864.10 |
| | TLR 102 BR 6120 561030/4130 | | | |
| 04-10 | Check  116 | | -41.95 | 109,822.15 |
| 04-10 | Check  115 | | -195.03 | 109,627.12 |
| 04-10 | Check  114 | | -1,253.97 | 108,373.15 |
| 04-11 | Check  110 | | -209.85 | 108,163.30 |
| 04-11 | #Wire Transfer-Out | | -253.17 | 107,910.13 |
| | OUTGOING WIRE BNF PAYCOM PAYROLLLLC;REF ;WIRE/OUT | | | |
| | - 20191010152800 | | | |
| 04-11 | #Direct S/C - Fee | | -15.00 | 107,895.13 |
| | DOMESTIC WIRE OUT | | | |

## IMPORTANT INFORMATION REGARDING THIS STATEMENT

PLEASE EXAMINE THIS STATEMENT AND ANY ENCLOSURES AT ONCE. This statement will be considered correct unless we are notified otherwise within 30 days from receipt of this statement.

NOTIFICATION OF CONSUMER CREDIT REPORT INACCURACY. The following is the address to which a consumer may write to notify the Bank of a dispute in completeness or accuracy of information reported by the Bank to a consumer credit reporting agency. Please include all details regarding the specific inaccuracy.

Berkshire Bank
Servicing Dept.
PO Box 1308
Pittsfield, MA 01202-1308

## BILLING RIGHTS SUMMARY

WHAT TO DO IF YOU THINK YOU FIND A MISTAKE ON YOUR STATEMENT OR NEED INFORMATION.
If you think there is an error on your statement or if you would like to request information regarding your account, write to us at:

Berkshire Bank
Loan Servicing Department
PO Box 1308
Pittsfield, MA 01202
In your letter, give us the following information:
- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing.
You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
  But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

COMPUTATION OF AVERAGE DAILY BALANCE AND INTEREST CHARGE. We figure the interest charge on your account by applying the periodic rate to the "average daily balance" of your account. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total number of days in the billing cycle. This gives us the "average daily balance".

## ERROR RESOLUTION NOTICE – CONSUMER ACCOUNTS ONLY

IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS, Telephone us toll-free in MA at 1-800-773-5601 or write us at BERKSHIRE BANK ATTN: ELECTRONIC BANKING, P.O. BOX 1308, PITTSFIELD MA 01202-1308, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you this FIRST statement on which the error or problem appeared.
- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

## TO BALANCE YOUR ACCOUNT

| OUTSTANDING DRAFTS | |
|---|---|
| NO. | AMOUNT |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Total Enter in Step 9 | |

1. Deduct from your checkbook balance any service charge or other charge originated by us.

2. If this is an interest bearing account, add interest posted on this statement to your checkbook balance.

3. Place a mark in your checkbook next to each paid check.

4. List in the "outstanding drafts" section at left any drafts issued by you and not yet paid by us.

5. Add to your checkbook Reddi-Cash deposits identified as "LOC LOAN" in the checking account portion of the statement.

6. Enter here the current balance as shown by bank statement.............

7. Enter here all deposits made not shown on bank statement.............

8. Add amount in "step 6" to amount in "step 7" and enter total here.......

9. Enter total amount of outstanding drafts.............................................

10. Subtract amount in "step 9" from amount in "step 8" and enter result (balance in "step 10" should agree with your check book balance).......

Member FDIC

**BERKSHIRE BANK**
America's Most Exciting Bank™
P.O. Box 1308, Pittsfield, MA 01202

**April 30, 2019**
0200429883   Page 2 of 2
FTI CONSULTING INC

| Date | Description | Additions | Subtractions | Balance |
|---|---|---|---|---|
| 04-11 | #Wire Transfer-Out | | -13,378.65 | 94,516.48 |
| | OUTGOING WIRE BNF PAYCOM PAYROLLLLC:REF ;WIRE/OUT - 20191010104400 | | | |
| 04-11 | #Direct S/C - Fee | | -15.00 | 94,501.48 |
| | DOMESTIC WIRE OUT | | | |
| 04-12 | Check  117 | | -1,136.81 | 93,364.67 |
| 04-12 | Check  113 | | -500.00 | 92,864.67 |
| 04-12 | Check  111 | | -652.76 | 92,211.91 |
| 04-15 | Check  112 | | -177.09 | 92,034.82 |
| 04-15 | Check  119 | | -250.00 | 91,784.82 |
| 04-16 | #ACH Debit | | -237.71 | 91,547.11 |
| | SUBURBAN HEATING BILL PAYMT 051400506980359 | | | |
| 04-16 | #ACH Debit | | -4,607.74 | 86,939.37 |
| | SUBURBAN HEATING BILL PAYMT 051400506980355 | | | |
| 04-19 | Check  124 | | -5,000.00 | 81,939.37 |
| 04-19 | Check  125 | | -5,301.92 | 76,637.45 |
| 04-23 | Check  123 | | -486.29 | 76,151.16 |
| 04-23 | Check  122 | | -1,384.43 | 74,766.73 |
| 04-23 | Check  120 | | -5,926.37 | 68,840.36 |
| 04-25 | #Wire Transfer-Out | | -14,846.95 | 53,993.41 |
| | OUTGOING WIRE BNF PAYCOM PAYROLLLLC:REF ;WIRE/OUT - 20191150166700 | | | |
| 04-25 | #Direct S/C - Fee | | -15.00 | 53,978.41 |
| | DOMESTIC WIRE OUT | | | |
| 04-25 | #Wire Transfer-Out | | -17,938.03 | 36,040.38 |
| | OUTGOING WIRE BNF FTI CONSULTINGINC:REF ;WIRE/OUT - 20191150088300 | | | |
| 04-25 | #Direct S/C - Fee | | -15.00 | 36,025.38 |
| | DOMESTIC WIRE OUT | | | |
| 04-26 | #ACH Debit | | -261.42 | 35,763.96 |
| | SUBURBAN HEATING BILL PAYMT 051400507254378 | | | |
| 04-30 | **Ending totals** | **82,000.00** | **- 84,907.86** | **$35,763.96** |

## CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 110 | 04-11 | 209.85 | 118 | 04-09 | 512.56 |
| 111 | 04-12 | 652.76 | 119 | 04-15 | 250.00 |
| 112 | 04-15 | 177.09 | 120 | 04-23 | 5,926.37 |
| 113 | 04-12 | 500.00 | 122* | 04-23 | 1,384.43 |
| 114 | 04-10 | 1,253.97 | 123 | 04-23 | 486.29 |
| 115 | 04-10 | 195.03 | 124 | 04-19 | 5,000.00 |
| 116 | 04-10 | 41.95 | 125 | 04-19 | 5,301.92 |
| 117 | 04-12 | 1,136.81 | *Skip in check sequence | | |