**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| In re: | ) ) ) | Chapter 7 Case No. 19-10214 |
| HERMITAGE INN REAL ESTATE HOLDING COMPANY, LLC | ) ) ) ) ) | (Jointly Administered) |
| Debtor. | ) ) | |
| In re: | ) ) ) | Chapter 7 Case No. 19-10521 |
| HERMITAGE INN LLC | ) ) ) | |
| Debtor. | ) ) | |

**OBJECTION OF HERMITAGE CLUB MEMBER GROUP, INC. TO TRUSTEE'S MOTION TO APPROVE BID PROCEDURES AND JOINDER TO LIMITED OBJECTION OF *AD HOC* COMMITTEE OF MEMBERS**

Hermitage Club Member Group, Inc., a Delaware corporation (the "Member Group"), respectfully submits the following objection (the "Objection") to the Motions (the "Motions") [Docket Nos. 324 and 325] of Raymond J. Obuchowski, as Chapter 7 Trustee (the "Trustee") of the bankruptcy estates of Hermitage Inn Real Estate Holding Company, LLC ("HIREHC") and Hermitage Club, LLC (the "Old Club" and collectively with HIREHC, the "Debtors"), for orders approving, among other things, bidding procedures and break-up fees for the Trustee's proposed sales of (a) certain real estate and other assets in Lot 1; (b) that certain Dopplemayr Barnstormer Chair Lift and other assets in Lot 2; and (c) Lots 1 and 2 combined in Lot 3. The Member Group further joins in, and supports, the Limited Objection to the Motions [Docket No. 347] filed by the

51197668.2

*Ad Hoc* Committee of Members of HIREHC and the Old Club.  In support of its Objection to the Motions, the Member Group states as follows:

1. The Member Group comprises a group of shareholders, led by a board of directors, all of whom are former members of the Old Club and are, therefore, creditors or potential creditors of the Debtors.  The Member Group was formed for the sole and express purpose of acquiring the Debtors' assets that are being sold under Lot 3.  As is self-evident from the Member Group's structure, all of the Member Group's constituents have a deep and abiding commitment to and affection for the ski resort, golf course, and other facilities owned and operated by the Debtors and are dedicated to, following their planned acquisition of Lot 3, forming a New Club that will operate the property successfully and enjoyably for all members over many years to come.

2. The Member Group is currently raising funds to support its purchase of Lot 3 and provide future operating capital so that the New Club can run on a successful footing.  Far from a "pipe dream," the Member Group is currently supported by 142 members, each of whom has subscribed for a share with a purchase price of $50,000 ($7.1 million in aggregate funding).  Also, within the next two weeks the Member Group will close an additional financing to provide further funding supporting its purchase of Lot 3 and future operating capital.  While this additional financing is being offered to all members, a core group of members has already committed to backstop this financing, thereby providing certainty for the funding.  Further evidence of its serious interest in bidding for Lot 3 is its investment of resources in counsel, which is filing this Objection on its behalf and will be traveling to attend the hearing on the Motions and represent the Member Group's interests.  Finally, the Member Group has all required funds and is willing to provide proof of sufficient funding to the Trustee or senior secured creditors on a confidential basis.

3. However, certain provisions of the Motions present an unreasonable and unnecessary barrier to the Member Group's submission of a bid for Lot 3, to the detriment of the Debtor's creditors, the Member Group, and the integrity of the sale process generally. Accordingly, the Member Group must object to the needlessly compressed and accelerated schedule for the proposed sale, as well as the excessive break-up fee for Lot 1 that is over twice the amount that is proper, according to legal standards for bankruptcy sales prevailing nationwide.

4. The Trustee filed the Motions on January 14, 2020. The Motions provided for an objection deadline that was the bare minimum fourteen-day period allowed for any motion under the Bankruptcy Rules, or January 28, 2020, with a hearing date for any objections scheduled on an expedited basis for January 31, 2020. Of course, this ignores that fact that Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice of a bankruptcy sale. Thereafter, the Motions contemplated a deadline of less than three weeks, or February 20, 2020 for the submission of competing bids along with a host of other documentation and financial requirements to be a Qualified Bidder. Finally, if any Qualified Bidders survived the daunting gauntlet presented in the Motions, the Trustee proposed a final auction for February 25, 2020.

5. The proposed accelerated schedule for bidding, set forth in the Motions, is not only unnecessary, but it presents an obstacle to bidding that will result in the Debtors' estates receiving a lower sale price on less favorable terms than they would under a more reasonable schedule. From the Member Group's perspective, the proposed accelerated schedule impedes their ability to conduct due diligence on the Debtors' wide-ranging properties and numerous liabilities, formulate a proper Asset Purchase Agreement, and submit a bid that will dramatically simplify the Trustee's proposed sale structure.

6. Accordingly, the Member Group proposes that the Court allow it until February 20, 2020 to submit a proposed stalking horse Asset Purchase Agreement for Lot 3 that would provide for a purchase price of not less than $8,250,000, with a 3% breakup fee (or $250,000), a deposit of $520,000, and bidding increments of $200,000. Furthermore, the Member Group proposes that, thereafter, competing bids for Lot 3 should be open for 25 more days, until March 16, 2020, and that an auction among any Qualified Bidders for Lot 3 would be held as soon thereafter as the Court's schedule would allow.

7. Finally, the proposal in the Motions for paying the stalking horse bidder for Lot 1 a $350,000 break-up fee, which represents a whopping 8.75% of the proposed $4,000,000 purchase price for Lot 1, is excessive, contrary to well-established law, and presents an additional and unreasonable obstacle to competitive bidding for the Debtors' assets. As the Court and all parties are aware, throughout this country the standard break-up fee in a bankruptcy sale is approximately 3% of the proposed purchase price. See 3 Collier on Bankruptcy, ¶ 363.02 (16th ed. 2019) ("Courts have adopted as a rule of thumb a limitation on a breakup or topping fee of about 3 percent of the consideration the buyer will pay for the assets . . . ."). See also In re HMX Acquisition Corp., No. 12-14300 (ALG) (Bankr S.D.N.Y. Nov. 29, 2012) (approving a breakup fee of approximately 3% of the purchase price); In re The Great Atlantic & Pacific Tea Company, Inc., No. 10-24549 (RDD) (Bankr. S.D.N.Y. May 2, 2011) (approving a breakup fee of 2.5% of the purchase price); In re BearingPoint, Inc., No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); In re Silicon Graphics, Inc., No. 09- 11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving breakup fee of approximately 2.8% of the purchase price); In re Steve & Barry's Manhattan LLC, No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving breakup fee of 2% of the purchase price).

8. Because the current proposed bidding procedures include the excessive break-up fee for Lot 1 as a component of the combined bid for Lot 3, that fee needlessly increases the amount of the Qualified Bid for Lot 3 and discourages such a bid. The only possible purpose behind a break-up fee that is completely incongruous with nationwide standards is to repel possible bidders, protect the existing stalking horse, and thereby prevent the estate's creditors from reaping the financial benefits of competitive bidding. The break-up fee for Lot 1 should be no more than $120,000, in conformity with nationwide standards.

9. The Member Group also joins in, and supports, the well-reasoned and persuasive Limited Objection of the *Ad Hoc* Committee of Members of HIREHC and the Old Club, for the reasons stated therein.

WHEREFORE, the Member Group respectfully requests that the Court deny the Motions and enter an Order granting them relief that will allow them to submit a competitive bid for the purchase of Lot 3, consistent with their legal and factual arguments set forth above.

*[Remainder of page left intentionally blank]*

| | |
|---|---|
| Date: January 28, 2020 | /s/ Andrew C. Helman<br>Andrew C. Helman<br>MURRAY, PLUMB & MURRAY<br>75 Pearl Street, P.O. Box 9785<br>Portland, Maine  04104-5085<br>(207) 773-5651 |
| Date: January 28, 2020 | /s/ Peter J. Haley<br>*Pro Hac Motion Pending*<br>Mass. Bar No. 543858<br>Nelson Mullins Riley & Scarborough LLP<br>One Post Office Square, 30th Floor<br>Boston, MA 02109<br>(617) 217-4714<br>(617) 217-4750 (fax)<br>peter.haley@nelsonmullins.com<br><br>*Counsel for Hermitage Club Member Group, Inc.* |

6