**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF VERMONT**

_____

In re:

HERMITAGE INN REAL ESTATE HOLDING
COMPANY, LLC, *et al.*,

Debtors

Case No. 19-10214 (CAB)
Substantively consolidated
Chapter 7

_____

**OBJECTION TO EMERGENCY MOTION OF JAMES R. BARNES
TO SET NEW DEADLINES FOR REGISTRATION OF QUALIFIED BIDDERS
AND FOR AUCTION OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

Now comes Barnstormer Summit Lift, LLC ("Barnstormer"), by and through its attorneys, Phillips, Dunn, Shriver & Carroll, P.C., and files this Objection to the Emergency Motion of James R. Barnes for the Entry of Orders (I) Setting New Deadlines for the Registration of Qualified Bidders and for the Submission of Bids, and (II) Setting New Dates for the Auction and the Hearing to Approve the Sale of All or Substantially All of the Debtors' Assets (the "Motion") and in support thereof states as follows:

**I.    Granting the Motion Could Result in Loss of the Stalking Horse Bidders.**

The existing Asset Purchase Agreements for the Land and the Barnstormer Lift contain outside approval and closing dates. If those dates were to be extended as a result of the Motion being granted, either or both Stalking Horse Bidders could attempt to terminate their obligations under the existing Asset Purchase Agreements. This is an unacceptable risk to Barnstormer, Berkshire Bank, and the Trustee.

Moreover, the Stalking Horse Bidder for the Barnstormer Lift anticipates removing the

1

lift and relocating it to another resort in the summer of 2020. If the Motion is granted and there are no further advances on the Barnstormer Lift, the Stalking Horse Bidder for the Lift may not have sufficient time to relocate the Lift this summer, which could provide another reason for them to attempt to terminate their obligations.

The Motion requests that unidentified potential bidders be given more time to consider whether to submit a bid, but offers no protection to the secured creditors that the existing Stalking Horse Bidders will be committed to fulfill their obligations under the existing Asset Purchase Agreements. There is no crystal ball that can project when or if economic conditions will change sufficiently so that these unnamed potential bidders will consider it prudent to submit a bid. Quite simply, granting the Motion would create substantial risks with no guarantee of any upside to any party, and the Motion should be denied for that reason.

## II.     The Affidavit of James Barnes Does Not Support the Motion.

The Motion states that the Affidavit of James Barnes (the "Affidavit") states that "two potential bidders" have withdrawn from the auction, yet the Affidavit identifies no potential bidders by name. Hearsay evidence is submitted as to only one bidder, and the e-mail is from an advisor, not the "potential bidder." Further, this e-mail states that this "potential bidder" has apparently decided not to submit a bid because "lending sources . . . are holding off on funding commitments for a [sic] least the next 60 day, (possible 90 days) until this [COVID-19] pandemic stabilizes." Apparently this potential bidder is dependent on financing, and any bid containing a financing contingency would not be a qualified bid pursuant to the Court's previous orders.[1]

Neither the Affidavit nor the Motion identifies potential bidders by name. The Motion

---

[1] The Affidavit also mentions an unnamed "multi-billion dollar U.S investment firm" as a potential bidder. If there is such a potential bidder, no evidence is offered to support the inability of such a well-endowed bidder to submit an opening bid of just over $8,000,000.00.

2

and Affidavit are submitted by James Barnes, who is not and could not be a qualified bidder due to his stated equity interest in the Debtors. The Affidavit does not state that Mr. Barnes represents or in any way is associated with the unidentified potential bidders. No bidder has filed a motion requesting postponement or a change to the bidding procedure. While a potential bidder could possibly have a legitimate purpose in requesting a change in bidding or auction procedures, James Barnes, as an unsecured subordinated creditor, has no legitimate purpose in making such a request.

### III.     No Unsecured Creditor Will Receive Proceeds from the Auction.

The Motion's stated reason for requesting the change in bidding procedures is that an auction under the current economic circumstances could diminish the value received at auction "to the detriment of all the Debtors' creditors and stakeholders."

Berkshire Bank has a filed a proof of claim in excess of $22,000,000, and its carrying costs which are secured by its Mortgage continue to mount each day. Barnstormer has filed a proof of claim in excess of $10,000,000. These two combined claims of well over $32,000,000 effectively negate the possibility of any distribution of excess proceeds to Debtor's unsecured creditors, as no one has indicated a belief that the Debtors' assets will net a sale price even approaching $20,000,000.[2]

Accordingly, the stated rationale for the requested relief fails on its face.

### IV.     The Affidavit is Not Credible on the Issue of Reopening the Resort.

In his Affidavit, Mr. Barnes states that a delay in a closing to June "would still provide sufficient time for a new owner to prepare Haystack operations for a full opening by October

---

[2] In addition, Mr. Barnes's economic standing in making this argument is limited because the subordinated promissory note evidencing approximately $54,000,000 of his claimed "debt" specifically states that in the event of a liquidation of all or substantially of HIREHCO's assets he is not to be paid any money on that "debt" until all 100 Club members are paid in full. This further subordinates his "debt" claim by several million dollars.

3

1st." This is apparently based on the knowledge he gained by investing (according to his claims) over $55,000,000 in the operation of Haystack and managing it into a Chapter 7 bankruptcy where substantially all of the assets are under contract to be sold for less than $8,000,000. Mr. Barnes completely ignores the real possibility that the Barnstormer Lift may be removed after a June closing and a new owner would have to purchase a new lift and have it installed and fully inspected after the removal of the Barnstormer Lift.

In addition, Mr. Barnes's Affidavit is not credible when it states "the incremental carrying costs to maintain the assets in good working order for the extra 60-90 days would likely be substantially exceeded by the higher price obtained if additional bidders are allowed time to participate in the auction." Given the vast amount of unpaid carrying costs accumulated by the Debtor pre-petition, it is unlikely that Mr. Barnes has a true understanding of what the actual carrying costs are. Berkshire Bank, through its funding of the state court receiver, can attest to the actual amount of those carrying costs. Second, it is unclear both whether any additional bids will be presented (as no potential bidder has committed to making any bid) and whether any bid would cover those incremental costs. As neither Mr. Barnes nor any potential bidder has proffered security to cover those costs (let alone the risk of losing the existing Stalking Horse Bidders), this unsupported statement should be given no credibility.

## Conclusion

Barnstormer respectfully suggests that not all emergencies require emergency relief from a bankruptcy court. Granting the Motion would create the real risk that existing Stalking Horse Bidders would attempt to terminate the Court approved Asset Purchase Agreements while providing no assurances or guaranties that any unnamed potential bidder would submit a qualified bid that would cover carrying costs or increase proceeds to the secured creditors or the

Estate.  For the foregoing reasons, Barnstormer respectfully requests that this Court deny the request by Mr. Barnes for an emergency telephone hearing and deny Mr. Barnes's Motion in all respects,

Dated at Brattleboro, Vermont this 17th day of March, 2020.

BARNSTORMER SUMMIT LIFT, LLC


__/s/ David N. Dunn_____
David N. Dunn, Esq.
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Ave
Brattleboro, VT 05301
(802) 257-7244 x112
ddunn@pdsclaw.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**DISTRICT OF VERMONT**

In re:

HERMITAGE INN REAL ESTATE HOLDING
COMPANY, LLC, *et al.*,

Debtors

Case No. 19-10214 (CAB)
Substantively consolidated
Chapter 7

**CERTIFICATE OF SERVICE**

    I hereby certify that, on the 17th day of March, 2020, a copy of the Objection to Emergency Motion of James R. Barnes to Set New Deadlines for Registration of Qualified Bidders and for Auction of Substantially All of the Debtors' Assets was served on all parties of record electronically via the Court's CM/ECF System.

    /s/ David N. Dunn
David N. Dunn, Esq.
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Ave
Brattleboro, VT 05301
(802) 257-7244 x112
ddunn@pdsclaw.com