**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

Filed & Entered
On Docket
03/19/2020

_____

In re

**HERMITAGE INN REAL ESTATE**　　　　　　　　　Case # 19-10214
**HOLDING COMPANY, LLC,**　　　　　　　　　　　Chapter 7 Cases
　　　　　　　　　　　Debtor.　　　　　　　　　　Substantively Consolidated

_____

**ORDER**
**DENYING MOTION TO SET NEW DEADLINES FOR BIDDING, AUCTION, AND SALE HEARING**
**AND SUSTAINING ALL OBJECTIONS TO THAT MOTION**

On January 13, 2020, Raymond Obuchowski, in his capacity as the chapter 7 case trustee (the "Trustee") in this consolidated set of cases, filed motions to sell substantially all assets in this case, establish bid procedures, and schedule the auction sale (doc. ## 324, 325). He set an initial hearing on those motions for January 31, 2020 (doc. # 328). The Trustee served notice of the initial hearing on all parties in interest (doc. ## 329–33), including the Debtor's founder, and purported general unsecured creditor, James Barnes (doc. # 331).

Mr. Barnes did not file any response to the sale motion or proposed bidding procedures or timeline for the auction sale prior to the January 31st hearing, and did not attend that hearing. At the January 31st hearing, the Court approved the bidding procedures with some modifications, modified the Trustee's proposed timeline for bidding and sale to provide additional time for potential bids, and scheduled the auction and sale hearing for March 20, 2020 (see docket entry dated January 31, 2020; see also doc. ## 397, 398). The Trustee served notice of the auction and sale hearing on all parties in interest (doc. ## 399–403), including Mr. Barnes (doc. # 402).

On the evening of March 16, 2020, three days prior to the scheduled sale, Mr. Barnes filed the instant motion for an emergency hearing to consider his request to set new, later deadlines for bids and to postpone the sale 60–90 days (doc. # 422, the "Motion"). In the Motion, Mr. Barnes argues (a) COVID-19 (the coronavirus) has materially impacted the business and finances of two potential bidders and necessitated their withdrawal from the auction, (b) proceeding with the sale as originally scheduled would likely depress bidding and result in a diminution of the proceeds available for the Debtor's estate

1

and its creditors, (c) new bidding deadlines and a later sale date are necessary to avoid irreparable harm to the Debtor's estate, (d) the incremental carrying costs during this 60-90 day period would likely be substantially exceeded by increased bid offers at the later sale, and (e) a delayed bid deadline and sale date would not preclude reopening of the Debtor's mountain in time for the 2020-2021 winter ski season.

The Court scheduled the Motion for an emergency telephonic hearing on the second business day following the filing of the Motion, on March 18, 2020 at 3:00 P.M. (doc. # 428). Several parties filed papers in opposition to the Motion: (i) Berkshire Bank, which holds a first mortgage lien on most of the real estate and first priority security interest in much of the personal property being sold (known as "Lot # 1") (doc. # 432); (ii) Barnstormer Summit Lift, LLC ("Barnstormer"), which holds a first priority security interest in the high speed ski lift being sold (known as "Lot # 2") (doc. # 426); (iii) Cold Brook Fire District, which holds tax liens on the real estate being sold (doc. # 434); (iv) the Ad Hoc Committee of Members (the "Ad Hoc Committee"), comprised of more than 187 individual members of the Debtor club (doc. # 430); (v) Hermitage Member Group, Inc. ("HMGI"), comprised of several individual members of the Debtor club who formed a corporation for the sole purpose of bidding on both Lot # 1 and Lot # 2 (known as "Lot # 3") (doc. # 431); and (vi) the Trustee (who has negotiated, among other terms, a significant carve-out payment from the sale proceeds for the bankruptcy estate) (doc. # 433).

The Court held the emergency telephonic hearing on the Motion on March 18, 2020, at which William Whittington, Esq., Janice Grubin, Esq., and Jeffrey Dove, Esq., appeared on behalf of the movant James Barnes; Elizabeth Glynn, Esq., appeared on behalf of Berkshire Bank; David Dunn, Esq., appeared on behalf of Barnstormer; Jack Kennelly, Esq., appeared on behalf of Cold Brook Fire District; Andre Bouffard, Esq., appeared on behalf of the Ad Hoc Committee; Andrew Helman, Esq., and Peter Haley, Esq., appeared on behalf of HMGI; Ray Obuchowski, Esq., appeared as the Trustee; Heather Cooper, Esq., appeared on behalf of Rainmaker Mountain, LLC (the stalking horse bidder for Lot # 1); Jacob Manheimer, Esq., appeared on behalf of Boyne USA, Inc. (the stalking horse bidder for Lot # 2); Robert DiPalma, Esq., appeared on behalf of the Chamonix Village Creditors (appearing as owners of townhomes in a development area owned by the Debtor); Elizabeth Hannon, Esq., appeared on behalf of the Vermont Department of Taxes, and Amy Ginsberg, Esq., appeared on behalf of the Office of the United States trustee.(the "UST").

At the hearing, Mr. Barnes reiterated the arguments in his papers and further argued, in response to the filed objections, that neither the stalking horses nor other potential bidders would abandon their intent to bid if the sale were delayed, injunctive standards are not applicable to the Motion, secured creditors Berkshire Bank and Barnstormer would benefit from postponing the sale, the carrying costs to Berkshire Bank for maintaining the real estate for an additional period would be lower than in previous months due to seasonal differences in cost, and HMGI might not be qualified to bid.

The six parties who filed written objections reiterated their positions and presented some further arguments in opposition to the Motion. Berkshire Bank argued there were significant carrying costs associated with a delay, and it had no reason to believe a delay would increase its net recovery. Barnstormer asserted Mr. Barnes' arguments at the hearing were not related to the COVID-19 pandemic and could have been raised at the January 31st hearing. The Cold Brook Fire District requested the Court overrule the Motion and permit the sale to proceed as scheduled. The Ad Hoc Committee expressed concern about whether Mr. Barnes had standing to file the Motion, as Mr. Barnes has proffered no evidence or argument that he has a pecuniary interest in the outcome or timing of the sale. The Ad Hoc Committee observed that while Mr. Barnes claimed to have status as a general unsecured creditor, it was undisputed the general unsecured creditors would not receive any distribution from the sale; it also pointed out that Mr. Barnes was not a bidder and had not articulated why other potential bidders had not filed such a motion on their own behalf. HMGI argued that while Mr. Barnes cited Berkshire Bank and Barnstormer as the creditors who would be negatively impacted by the current bid qualification and sale schedule, that argument was wholly unavailing since both of those creditors opposed the Motion. HMGI also emphasized that any delay of the sale would prevent the buyer from taking control of the property until later in the summer and would negatively impact the ability to open for the upcoming ski season. The Trustee underscored in his argument that Mr. Barnes was unaffected by the sale because he – like other general unsecured creditors – will not receive a distribution from the sale and the sale proceeding on time was crucial to the bankruptcy estate. In response to Mr. Barnes' position with respect to the HMGI bid, the Trustee clarified that HMGI had submitted a timely bid, he was evaluating it, and expected he would soon file a notice specifying whether he considered it to be a Qualified Bid (as defined in this Court's earlier orders, see doc. ## 397, 398). The Trustee also contended the stalking horse contracts included timing contingencies that required the sale to proceed as scheduled, the timing of removal and replacement of the ski lift was already precarious based on the current closing schedule, a delay could jeopardize any buyer's ability to resume operations for the 2020–21 ski season, and there could thus be a significant loss to both creditors and the estate if the Court authorized this further delay of the sale.

Some parties in interest who had not filed papers in response to the Motion presented their positions orally at the hearing: The Town of Wilmington stated it opposed the Motion for the reasons Berkshire, Barnstormer, the Ad Hoc Committee, and the Trustee had set forth. Similarly, the UST voiced his opposition to the Motion by stating the UST fully supported the Trustee's position.

As indicated in this Court's bench ruling at the March 18th hearing, the Court finds no merit in the Motion or Mr. Barnes' arguments at the hearing. Most of the arguments Mr. Barnes presented at the hearing are not pandemic-dependent and could have been raised at the January 31st hearing setting the

3

sale date and bid deadline. He had sufficient notice of the relief sought in the Trustee's detailed sale motion and did not appear or file papers in opposition.[1] Additionally, Mr. Barnes provided no evidence in support of his allegations that carrying costs would be lower at this time of year, the stalking horse and other potential bidders would proceed with a sale set for a later date, a delay would not impede plans to reopen the business in time for the winter ski season, or creditors and the Debtor's estate would benefit from such a delay. The stalking horse bidders entered into asset purchase agreements setting a sale in February and consented to a postponement to March 20th; they have consented to no additional delay in the sale. At the January 31st hearing, the parties argued, and the Court found, that time was of the essence in order to ensure the lift removal and replacement, and other necessary repairs and preparations, could be accomplished in time for the business to reopen for the 2020–21 winter ski season. The record supports the conclusion that a delay of the auction and sale hearing beyond March 20, 2020, would, in the words of several creditors, impose an actual and significant risk, with no guaranteed upside.

All secured creditors who will benefit from the sale – Berkshire Bank, Barnstormer, Cold Brook Fire District, and the Town of Wilmington – oppose the Motion.[2] Hence, the aspect of the Motion claiming a delay is in the best interest of creditors is unavailing.

Mr. Barnes has also failed to show how the delay would benefit the bankruptcy estate. There is no dispute there will be no distribution to the general unsecured creditors from this sale, the estate carve-out the Trustee has negotiated with the two largest secured creditors, in the context of a March 20th sale, and the Trustee also strongly opposes the Motion. This is particularly telling as the Trustee's role is to protect and maximize the bankruptcy estate's interest, and from that vantage point, he is perhaps in the most informed position to assess the full impact the timing and terms of this sale will have on all creditors and parties in interest. On all these grounds, Mr. Barnes' assertion that delaying the sale is in the best interest of the estate fails.

Finally, as the Court scrutinizes the impact of the COVID-19 pandemic on this case, it focuses on whether delaying or proceeding with the sale would be most likely to restore the Debtor's business to operational status, and thereby meet the financial needs of Vermont citizens and Vermont municipal entities, ensure the future viability and operations of this key regional enterprise, generate sales for local vendors, increase tourism, and expand employment opportunities for potential employees at the Debtor's ski slope, golf course and related businesses. Based on that scrutiny, the Court finds proceeding with the sale as scheduled is in the best interest of those community and municipal constituents – as well as the creditors and the bankruptcy estate.

---

[1] The Court will not address these issues now since it did not raise them at the hearing, but certainly this timing raises , questions about both Mr. Barnes' motives in filing the Motion at this time and the applicability of the laches doctrine.
[2] Reinhart Foodservice LLC will also receive a carveout from the sale in exchange for settlement of its objection to Berkshire Bank's security interest in the Debtor's personal property; it has not taken a position on the Motion (see doc. # 385).

Accordingly, as set forth in this Court's March 18th bench ruling, and based upon the record in this case and the representations at that hearing, IT IS HEREBY ORDERED Mr. Barnes' Motion to extend the bid deadlines delay the sale currently scheduled for tomorrow is DENIED and all filed objections are SUSTAINED.

IT IS FURTHER ORDERED the auction and sale hearing will proceed as scheduled on March 20, 2020, via telephone, pursuant to this Court's recent standing order regarding COVID-19.[3]

At the conclusion of the Court's bench ruling, Mr. Barnes indicated he would appeal the Court's ruling on the Motion and orally moved for a stay pending appeal. The Court denied that request for a stay and will enter a separate Order memorializing its bench ruling on that motion.

SO ORDERED.

March 19, 2020  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[3] The Court did not specifically address the Ad Hoc Committee's argument that Mr. Barnes lacks standing at the hearing, and having already denied the Motion on its merits, does not address that argument herein.

5