UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HERMITAGE INN REAL ESTATE | ) | 19-10214-cab |
| HOLDING COMPANY, LLC, et.al. | ) | *(Substantively Consolidated)* |
| | ) | Chapter 7 cases |
| Debtor. | ) | |

**OBJECTION OF HERMITAGE CLUB MEMBER GROUP, INC. TO MOTION OF
BERKSHIRE BANK TO COMPEL CLOSING
AND REQUEST FOR RELATED RELIEF**

Hermitage Club Member Group, Inc., a Delaware corporation (the "Member Group"), objects to the Emergency Motion of Berkshire Bank to Compel Closing [Docket No. 484] (the "Motion") and moves the Court to enter an Order granting related relief. In support of its Objection and request for related relief, the Member Group states as follows:

Introduction

1.      The Local Rules of this Court require that any motion be accompanied by a certification that counsel has conferred with the party against which it seeks relief. Vermont Local Bankruptcy Rules ("VLBR"), Rule 9013-1. The Motion fails to provide that certification[1]. The facts of this matter illustrate the importance of that requirement, not as a technical hurdle, but as a substantive mechanism for resolving disputes and avoiding the needless expenditure of time and resources by the Court and the parties to this matter. A phone call. An email. Any moment of common sense or courtesy would have avoided the need for this Motion or, at the very least, allowed the moving party to accurately state the facts.

---

[1] The Motion is styled as an "Emergency" in accordance with VLBR 9075-1, a standard it doesn't meet either. It is not clear that VLBR 9075-1 is meant to incorporate the notice requirements of VLBR 9013-1.

<u>Procedural History</u>

2.      The Member Group and the Trustee are parties to a written Real Estate and Asset Purchase and Sale Agreement (the "Agreement").

3.      On April 1, 2020, the Court entered an Order approving the Agreement between the Trustee and the Member Group and authorizing the sale of certain assets owned by the Debtors (the "Hermitage Assets") to the Member Group as provided for in the Agreement [Docket No.   462] (the "Sale Order").

4.      The Sale Order incorporates by reference, and attaches, the Agreement and authorizes the Trustee to perform in accordance with the terms of the Agreement.[Sale Order, ¶ 5, p. 14]

5.      Berkshire Bank (the "Bank") holds a first mortgage on the Hermitage Assets. The Bank assented to the terms of the sale and reviewed and approved the form of the Sale Order.

<u>Factual Background</u>

*The Bankruptcy Contingencies have not been Satisfied.*

6.      Subsequent to the entry of the Sale Order, on April 15, 2020, James Barnes filed a Notice of Appeal from the entry of the Sale Order. [Docket No. 469] (the "Barnes Appeal").  The Appeal is pending and has not been resolved.

7.      The Agreement provides that:

SECTION 2.20. - BANKRUPTCY CONTINGENCIES

A.      All of the agreements and obligations by and between the parties under this Agreement are subject to and contingent upon approval of the Court in the Bankruptcy Proceeding as and when set forth herein. The **transaction contemplated herein is subject to the entry of the Sale Order as a Final Order** by the Court authorizing the sale of the Assets to Buyer free and clear of all liens, claims and encumbrances pursuant to the terms of this Agreement and Section 363(b) and (f) of the Bankruptcy Code after notice to Debtor's creditors and parties in interest pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, and subject to the assignment and assumption of the Assigned Contracts, including the Glebe Lease.

Agreement, Section 2.20 (A), page 15 (emphasis added)

8.      "Final Order" is defined in the Agreement (page 3) as an order from which no timely appeal has been taken or from which an appeal has been taken and the appeal has been resolved.  The Sale Order is not a Final Order. The "Bankruptcy Contingencies" have not been satisfied.

*The Trustee is Unable to Deliver Title as Required by the Agreement*

9.      Section 2.2.1 provides that:

The Real Property is to be conveyed by Seller to Buyer by a good and sufficient quitclaim deed(s) that is immediately recorded with appropriate governmental authorities at the cost and expense of the Buyer (collectively, the "Deed") in the form mutually acceptable to Seller and Buyer and the Title Company (as hereinafter defined) conveying to Buyer good and clear record and marketable to the Real Property (as defined in Section 2.2.2)…

Agreement, 2.2.1(a), page 5.

10.      Section 2.2.2 defines "good and clear record and marketable" title as follows:

Title to the Real Property shall be considered good and clear record and marketable if either Seller or Buyer can obtain a title insurance commitment covering the Real Property from a title insurance company doing business in the State of Vermont, subject only to (i) the standard exclusions and exceptions, excluding mechanics liens (as to which Seller shall deliver a standard affidavit to the title insurance company sufficient to enable the title insurance company to delete from Buyer's title insurance policy any exception for mechanics liens arising through Seller), excluding the survey exception (only if Buyer has obtained an ALTA Survey acceptable to the Title Company for the survey exception to be deleted), (ii) the Permitted Exceptions, and (iii) real estate taxes, betterments, charges, Fire District charges and assessments, special or otherwise, which shall be adjusted as hereinafter provided in Section 2.6. Any matter which is the subject of a Vermont Title

3

Standard at the time for delivery of the Deed shall be governed by such Standard, to the extent applicable.

Agreement, Section 2.2.2, page 6-7

11.     In sum, the Trustee is required to deliver title that permits the Buyer to obtain a clean title commitment.  The Trustee has been unable to meet this standard because of the Barnes Appeal and because of four instances of notice deficiencies set forth in the draft title commitment, to wit:

a.      In favor of Thomas White and Elizabeth Armstrong: (a) Writ of Attachment recorded May 1, 2017 in Book 333, page 343 of the Wilmington, Vermont land records, and (b) Judgment Order recorded December 6, 2017 in Book 337, page 540 of the Wilmington, Vermont land records. (the "White Lien")

b.      Judgment Order in favor of Builder's Services, Inc. recorded March 20, 2018 in Book A9, page 247 of the Dover, Vermont land records. (the "Builders Services Lien")

c.      Writ of Attachment in favor of OpcoAmericas LLC dba Aethos Consulting Group recorded October 26, 2018 in Book 343, page 271 of the Wilmington, Vermont land records. (the "Opco Lien")

d.      Mechanic's Lien in favor of Horizon (or Horizon's) Engineering, Inc. recorded December 20, 2018 in Book 344, page 277 of the Wilmington, Vermont land records. (the "Horizon Lien")

Draft title commitment, Connecticut Attorneys Title Insurance Company, page 38 (collectively, the "Notice Deficiencies")

12.     The Trustee and counsel to the Buyer communicate daily. The Trustee is also in regular communication with Title Company counsel.

13.     Neither the Bank, nor its counsel, have spoken with counsel to the Member Group since the entry of the Sale Order.

14.     The Trustee advises that with respect to the White Lien, the Builder Services Lien and the Opco Lien, that service of the sale motion was provided to counsel for the parties in the underlying state court actions in which the liens were granted.  The title company has advised the Member Group that if the Court confirms the sufficiency of that notice it will remove the lien exceptions for the White Lien, the Builder Services Lien and the Opco Lien.

15.      The Trustee maintains that the Horizon lien has lapsed as a matter of law.

16.      The Member Group, in reliance upon the Court's finding that it is a good faith buyer in accordance with 11 USC § 363(m) and the absence of any facts that would allow any trier of fact to find otherwise, is prepared to accept the Barnes Appeal exception to title and waive the requirement for entry of a Final Order and this failure by the Trustee to provide marketable title as defined in the Agreement.

17.      The Member Group, through this pleading, seeks confirmation as required by the Title Company that the notice provided by the Trustee, as set forth above, is sufficient.

<u>Argument</u>

*The Factual Premise for the Motion is False*

18.      The Motion should be denied because it fails to meet the requirements of VLBR Rules 9013-1 and 9075-1.  The factual premise of the Motion, that there has been no reason for the failure to close or that the Trustee was not aware of that reason, are false.  The existence of the Barnes Appeal is a matter of record.  The Notice Deficiencies as cited by the Title Company have been communicated to the Trustee, including by email dated April 30, 2020 (11:46 am EST).

19.      The terms of the Agreement, as incorporated into the Sale Order, are uncontroverted.  The Trustee is unable to perform in accordance with the Agreement because of the Barnes Appeal and the Notice Deficiencies, both of which are noted as exceptions in the title commitment and prevent Trustee from meeting the title standard set forth in Section 2.2.2 of the Agreement.

20.      The Barnes Appeal prevents the Sale Order from being a Final Order and, as a result, the contingency defined in Section 2.20(A) of the Agreement has not been satisfied.

21.     It is the Trustee, not the Member Group, that cannot perform.

*Notice Provided to the White Lien, the Builder Services Lien and the Opco Lien Holders was Sufficient*

22.     In evaluating the sufficiency of notice, the court reviews both the statutory requirements and constitutional due process concerns. Section 363  provides that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

23.     The notice referred to in § 363(b)(1) is governed by Fed.R.Bankr.P. 6004(a), which requires the clerk of the bankruptcy court to give notice of the proposed sale to all lienholders not less than twenty days prior to the proposed sale, in the manner provided by Fed.R.Bankr.P. 2002(a)(2).  Rule 2002(c), refers to and makes itself subject to Rule 6004.

24.     Bankruptcy Rule 6004(c) requires that notice "shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold."

25.     Rule 9014 provides that "reasonable notice and opportunity for hearing shall be afforded any party against whom relief is sought" and instructs that the motion be served "in the manner provided for service of a summons and complaint by Rule 7004...." Rule 7004, governing process, incorporates salient portions of Rule 4 of the Federal Rules of Civil Procedure, but additionally permits service by first class mail under various circumstances. Fed.R.Bankr.P. 7004(b). When service is to be made on a corporation, service may be made by mailing a copy of the summons and complaint "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...." Fed.R.Bankr.P. 7004(b)(3).

26.     The due process clause of the Fifth Amendment requires that notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

27.     Rule 7004(b) authorizes services of process by service on a defendant's attorney, when the attorney has an agency relationship to the corporation. <u>In re Honigman</u>, 141 B.R. 76, 78 (Bankr.E.D.Pa.1992).   Even in absence of a notice of appearance in the underlying bankruptcy case, when an attorney appears in matter integrally related to the bankruptcy case, the attorney has implicit authority to accept notice and service on the attorney is sufficient. <u>See, Reisman v. First New York Bank for Business (In re Reisman)</u>, 139 B.R. 797, 801 (Bankr.S.D.N.Y.1992).

28.     Attorneys can be authorized to accept service of process implicitly as well as explicitly. <u>Beloit Liquidating Trust v. Beloit Walmsley Limited (In re Harnischfeger Industries, Inc.)</u>, 288 B.R. 79, 82–83 (Bankr.D.Del.2003) (citation omitted). "To find an implied agency, courts look at all the circumstances under which the defendant appointed the attorney to measure the extent of the authority that the client intended to confer." <u>Ms. Interpret v. Rawe Druck–und–Veredlungs—GmbH (In re Ms. Interpret)</u>, 222 B.R. 409, 416 (Bankr.S.D.N.Y.1998).

29.     In this instance the service made by the Trustee was made upon counsel who represented the lienholders in the underlying state court actions for purposes of establishing the liens.

30.     With respect to the White Lien and the Opco Lien, this was also the party who is listed as the notice recipient on the proof of claim. See, Proof of Claim No. 35 (White); Proof of Claim No. 74 (Opco).

31.     Counsel for the White Lienholder, Opco Lienholder and Builders Services Lienholders have subsequently written to the Trustee to acknowledge that:

> Ray,
>
> This is to acknowledge that this firm represents Thomas Whit Armstrong and Elizabeth Armstrong in the above-referenced matter [the bankruptcy proceeding] and received actual notice of the sale motion and entry of the attached sale order.
>
> Thank you,
> Celeste

Email message Celeste E. Laramie (Gravel & Shea PC) to Raymond Obuchowski, May 8, 2020 (4:14 pm EST).

32.     Counsel to the Opco Lienholder has similarly confirmed that:

> Ray,
>
> This is to acknowledge that until April 6, 2020, this firm represented claimant OpCoAmericas LLC d/b/a Aethos Consulting Group in the above-referenced matter [the bankruptcy proceeding], and, during such period of representation, received actual notice of the sale motion [ECF #324, 325] and entry of the attached sale order [ECF #462].
>
> Best Regards
>
> Adam

Email message Adam Waite (Costello, Valente & Gentry, P.C. ) to Raymond Obuchowski, May 8, 2020 (2:11 pm EST).

33.     Counsel to Builders Services has also confirmed that:

> Dear Ray
>
> This is to acknowledge that this firm represents  Builder's Services Inc. in the above-referenced matter [the bankruptcy proceeding] and received actual notice of the sale motion and entry of the attached sale order.
>
> Timothy J. Wells

Email message Timothy Wells (Wells Law Office) to Raymond Obuchowski, May 8, 2020 (2:05 pm EST).

34.     Notice to counsel in these circumstances meets all of the statutory requirements and constitutional due process requirements.

35.     The Horizon Lien is a mechanic's lien in favor of Horizon (or Horizon's) Engineering, Inc. recorded December 20, 2018 in Book 344, page 277 of the Wilmington, Vermont land records.  Under Vermont state law, the lienholder was required to commence an action and obtain an attachment prior to  June 18, 2019.  9 V.S.A. § 1921 et seq.  The intervening bankruptcy does not excuse this performance and the failure to perfect is fatal to the viability of the lien.  See,  Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re APC Const., Inc.), 112 B.R. 89, 108–16 (Bankr.D.Vt. 1990); In re Cusson, 412 B.R., 646, 655 (D.Vt.2009).  No such action was commenced and the lien is no longer perfected. Id.

*Relief Sought*

   a. *The Motion*

36.     The Motion fails to meet the most basic obligations of good faith.  The Bank's patience, cooperation and substantial financial commitment to the sale process are noteworthy.  Counsel to the Bank has been a material part of that effort.  That the Bank wishes to get paid, sooner rather than later, is both understandable and appropriate.  Nevertheless, a basic inquiry into the facts of the matter doesn't seem too much to ask.  Section 1927 of title 28, provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927

37.     The Member Group is a group of concerned stakeholders who wish to preserve the resort for the benefit of the public, the community and the membership.  They too have made a substantial commitment to the process.  The Motion is another impediment in a difficult process at a very difficult time.

38.     The Member Group does not seek sanctions from the Bank or counsel for filing the Motion, they are willing to acknowledge the good intentions of the Bank and counsel and to work cooperatively to a common end.  They will afford the Bank and counsel the benefit of the doubt and the professional accommodation and respect they are entitled to.  The Member Group simply asks that they be treated similarly.

39.     For the reasons set forth above, the Motion should be denied.

  *b.  The Notice Relief*

40.     The Notice provided by the Trustee was reasonable and met all of the applicable statutory and constitutional standards.  To enable the Trustee to meet the title standards set forth in the Agreement, the Member Group asks that the Court enter a supplementary order confirming that notice, as provided, was sufficient.

  *c.  The Horizon Lien*

41.     The Horizon Lien has lapsed as a matter of law. To enable the Trustee to meet the title standards set forth in the Agreement, the Member Group asks that the Court enter a supplementary order confirming that the lien has lapsed.

Wherefore, the Member Group prays that the Court deny the Motion, that the Court enter a supplementary order confirming that notice as provided was sufficient, that the Court confirm that the Horizon lien has lapsed, and that the Court grant such other and further relief as is just.

Hermitage Club Member Group, Inc.,

By its attorneys,

Date: May 11, 2020

/s/ Peter J. Haley_____
*Pro Hac Vice*
Mass. Bar No. 543858
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
(617) 217-4714
(617) 217-4750 (fax)
peter.haley@nelsonmullins.com

Andrew C. Helman
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, Maine 04104-5085
(207) 773-5651

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and to counsel as follows:

For the White Lienholders:

Celeste E. Laramie at claramie@gravelshea.com

For the Opco Lienholders:

Adam Waite at waite@cvglawoffice.com

For the Builders Services Lienholders:

Timothy Wells at  wellslawvt@aol.com

For Horizon:

Jon L. Warzocha, P.G, Chief Executive Officer at jwarzocha@horizonsengineering.com
Andrew Nadeau,  lienholder signatory, anadeau@horizonsengineering.com


Dated: May 11, 2020                    /s/ Peter J. Haley _____